# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **DEREK BLOCKHUS,** | ) | |
| | ) | |
| **Plaintiff, Appellant** | ) | |
| | ) | **Case No. 24-1043** |
| v. | ) | |
| | ) | **Judge Robert W. Gettleman** |
| **UNITED AIRLINES, INC.,** | ) | |
| | ) | **Magistrate Jeffrey I. Cummings** |
| **Defendant, Appellee** | ) | |

---

## BRIEF OF APPELLANT

**Derek Blockhus** *Pro se*
14689 Lee HWY #257
Gainesville, Va. 20156
(703) 606-1644
Derek7768@gmail.com

*Pro se* for Plaintiff-Appellant

Jill S. Vorobiev (6237734)
REED SMITH LLP
10 S. Wacker Dr., Suite 4000 Chicago, IL
60606 Tel: (312) 207-1000 Fax: (312) 207-
6400 Email: jvorobiev@reedsmith.com

Counsel for Defendant-Appellee

U.S.C.A. – 7th Circuit
RECEIVED

APR 1 6 2024

# TABLE OF CONTENTS

1. TABLE OF AUTHORITIES.................................................................3

2. STATEMENT OF THE CASE.............................................................4

3. INTRODUCTION...........................................................................5

4. ASSIGNMENT OF ERRORS.........................................................6-12

5. SUMMARY OF FACTS.............................................................12-17

6. ARGUMENT............................................................................18-24

**A).**The sheer amount of genuine material disputed facts outlined within this appeal is unprecedented and this drastic remedy was not proper  and should be receded as there is no doubt as to the existence of [triable] issues...........................................................................................................................18

**B).**Blockhus was never interviewed nor ever claimed to have sent the text messegas submitted by Lense...........18

**C).**United never substantiated nor validated Lenses' claim.............................................................18

**D)**That in fact Lenses' only motivation for her complaint was nothing more than to protect her employment with United.........................................................................................................................19

**E)**  That Lense maintains, she and Blockhus were always on friendly terms................................................19

**F.**Lense testified she was never asked to substantiate her accusations..................................................19

**G)**Lense admitted that she in fact would contact (harass) Blockhus regarding her "suspicions" about his relationship with Mindy Richard and told it with others...........................................................................................19

**H)**That Lense could not remember if her and Blockhus were intimate after the dates of the text messages she submitted in her case against Blockhus....................................................................................................20

**I)** That Lense could not come up with a reason nor could remember any argument that she would receive threating text from Blockhus...........................................................................................................................20

**J)**  Lense has a two year protection order awarded against her for harassing Blockhus that she later violated . When asked if she had ever contacted Blockhus since the protection order her reply was...........................................20

**K)**  Witness Mindy Richard complained to United about Lense that she was later force to retract from fear that she could be a victim of retaliation as Blockhus was and lose her job........................................................................20

**L)**  Mindy Richard testified she was force to withdraw her complaint against Lense for fear of retaliation................21

**M)** Blockhus' claims are not covered under the Railway Labor Act because adjudication of his claims does not require interpretation of the CBA...................................................................................................................21

**N)** Admissible evidence of discrimination under both the ADA and the ADEA demonstrates that summary judgment is improper.........................................................................................................................................21

**O)** Blockhus' claims meet the prima facie standard in McDonnell Douglas............................................21

**P)**United treated employees outside Blockhus' protected statuses differently......................................22

**Q)**Blockhus presented admissible evidence of FMLA interference and retaliation such that summary judgment is improper.........................................................................................................................................23

**R)**United interfered with Blockhus' use of FMLA leave when it required him to submit paperwork to substantiate his medical unavailability for the February 8, 2021, meeting because his unavailability and his need for FMLA leave were functionally the same...........................................................................................................................23

**S)** Functionally, there was no difference between the paperwork that substantiated Blockhus' need for FMLA and his unavailability for the February 8, 2021, meeting because the condition that caused both—his disabilities of severe anxiety disorder causing alcohol dependency— was the same...........................................................................23

**T)**United interfered with Blockhus' use of FMLA because it denied him a benefit to which he is entitled by terminating him based on the pretextual findings of its non investigation....................................................................23

7. CONCLUSION..........................................................................24

8. CERTIFICATE OF SERVICE.........................................................26

9. WORD COUNT and ORAL ARGUMENT.............................................26

## TABLE OF AUTHORITY

**Cases**

*Anderson v. Liberty Lobby,Inc.*, 477 U.S. 242 (1986)..................................................18

*Carlson v. CSX Transp.Inc.*, 758 F.3d 819 (7th Cir. 2014) ......................................*.(See* Ex.60)

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..........................................................18

*Dynegy Mktg. & Trade v. Multi Corp.,* 648 F.3d 506 (7th Cir. 2011) ..............................18

*Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681 (7th Cir. 2000)...............................24

Lilly v. United Ground Express, Inc., 19 C 7582, 2020 WL 3545615 (N.D. Ill. Jun 30, 2020) ..(See Ex.60)

Lowman v. United Airlines, Inc., 19 CV 5575, 2021 WL 2012236 (N.D. Ill. May 19, 2021)....*(See* Ex.60)

*Lutes v. United Trailers, Inc.*, 950 F.3d 359 (7th Cir. 2020) ........................................23

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)..............................................21

*Srail v. Village of Lisle*, 588 F.3d 940 (7th Cir. 2009) ..................................................18

*Tarochione v. Roberts Pipeline, Inc.*, 62 F.Supp. 3d 821 (N.D. Ill. 2014) ..........................24

*Turner v. Wexford Health Sources,Inc.*, No. 17-cv-0656-MJR-SCW, 2018 WL 3301818

(S.D.  Ill. July 5, 2018) ..........................................................................................18

*Van Slyck v. Gojet Airlines, LLC*, 16 C 11000, 2018 WL 11216393 (N.D. Ill. Apr. 3, 2018)...*(See* Ex.60)

**Statutes**

29 U.S. Code § 2601......................................................................................................6

29 U.S.C. § 2611(2)(A) and (D)....................................................................................23

29 U.S. Code § 2611(2)(4)..............................................................................................7

29 U.S.C. § 2612.........................................................................................................25

29 U.S.C. § 2612(a)(1)(D)............................................................................................24

29 U.S. Code § 2615 (a)(1)(2)(b)(1)(2)(3)........................................................................7

29 U.S. Code § 2617(a)(1)(A)(i)(I)(II)(ii)(iii)(B)(2)(A)......................................................7

45 U.S.C. § 151 *et seq* .................................................................................................21

**Rules**

Fed. R. Civ. P. 56 .........................................................................................................4

Local Rule 56.1 .............................................................................................................4

**Regulations**

29 C.F.R. § 825.104(a)..................................................................................................23

**Plaintiff Derek Blockhus, pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, opposes Defendant United Airlines, Inc's Motion for Summary Judgment**

This appeal arises from the granting of a summary judgment that had errors in its application of the law and in its assessment of the facts. There were a multitude of genuine disputed issues of material fact as clearly established in the assessment of error as well as the exhibits connected to this appeal that should precluded summary judgment. This case involved **(1)** FMLA interference, **(2)** ADA discrimination, **(3)** Age discrimination, **(4)** Wrongful Termination for an unsubstantiated, unverified accusation while out on approved FMLA leave.

On January 25, 2021 Blockhus left Lanse a voice message informing her that if she did not stop harassing him and another co-worker, Mindy Richard, they will report her to the company.*(See* Ex.29) Just moments later in a "race to open a case first", Lense contact United and opened a case against Blockhus stating he threatened her employment with United. Days later Lense submitted text messages dated from months earlier that included no year, claiming they were threating messages from Blockhus. In Lenses' rush to beat Blockhus to open a case, Lense submitted a text message with a phone number not belonging to Blockhus. In fact United had no knowledge who's number it belonged to before terminating Blockhus without cause while on approved FMLA. Blockhus has surrendered his phone history as well as his SIM card to United counsel were they were unable to link Blockhus to Lenses' false text messages. Just this one clear disputed meterial fact should have precluded summery judgment *(See* Ex.30 and 35) United's justification for terminating Blockhus' employment in ABSENTIA, while Blockhus was on approved FMLA leave, *(See* Ex.14, 45) without any due process, and violating their own collective bargaining agreement, and more importantly not affording Blockhus the opportunity to defend himself for the unsubstantiated, unverified claims brought against him by ex-girlfriend, Katherine Lense who only feared losing her job. This is in no way a legitimate reason to take away Blockhus 24 year career at United sight unseen.

Additionally, United also claims they closed this case the way they did due to a "time restraint", even though the case was agreed to be paused until April 5, 2021 when Blockhus was scheduled to return from FMAL. *(See* Ex.10,Ex.38,Ex.44,Ex.52)  Blockhus was never interviewed nor given due process, in fact at the time Blockhus was a patient in the Lake View Rehabilitation Center in Jacksonville, Fl. <u>Lense was in fact the only person</u> <u>interviewed and to have any input in this case.</u> United claimed to have only "reviewed" Lenses' information before making their decision to terminate Blockhus. United treated Blockhus in the most bias and discriminating way possible while he was in his most vulnerable state. On the contrary, Lense herself has been reported to United for **(1)** Retaliation, **(2)** Harassment, **(3)** Vandalism, **(4)** Posting disparaging statements about United on her Face Book, **(5)** Threating another employee on a Twitter post, **(6)** Receiving a two year protection order against her, **(7)** Violating that two year protection order **(8)** sending threating emails and text to Blockhus as well as harassing phone calls until Feb 2021, <u>yet Lense remains employed with United Airlines</u>. Blockhus was terminated over an accusation while in "absentia". Blockhus was a older senior top pay employee with a disability, while Lense is a junior less paid employee. The evidence is such that a reasonable jury could return a verdict against United Airlines in this case and summery judgment was not proper. This evidence was either overlooked or just not considered which does not support a legal reason for an award of summery judgement. Furthermore United, unsure about their own case against Blockhus had to go and acquire Blockhus' divorce documents in a "fishing trip" hoping to "uncover some kind of wrongdoing." this is hearsay(See United,02165 -02240) United has been less than truthful in this case *(See* Ex.61) Hester's termination letter sent to Blockhus was erroneous, and purposely deceptive. *(See* Ex.28)

# INTRODUCTION



Appellant Derek Blockhus ("Blockhus") (born June 1968) is a resident of Virginia who worked as a flight attendant at United for 24 years and based out of the Washington Dulles International Airport from approximately March 15, 1997 through to his wrongful termination on February 26, 2021. Blockhus who was at the time 53, and a 24 year, top pay career decorated employee with United Airlines, who, at all relevant times, met or exceeded United Airlines legitimate business expectations and routinely received praise from passengers, co-workers, and outstanding attendance performance. Other than having an expired French visa once and not finishing a CBT on time, Blockhus has never received a customer complaint or been disciplined at any point during his 24 years with United airline. (*See* Ex.41)

Blockhus did nothing to deserve to be treated by United's junior management with such discrimination and bias. United management showed no regard for Blockhus, his Union, nor the right to due process. Blockhus spend ten years serving his country and is a decorated Army veteran that should have been given the right to <u>due process</u> and have the opertunity to defend himself from false accusations by a younger co-worker who testified "*I didn't want anybody in trouble, I was simply trying to protect my job*" (*See* Ex.13, pg. 3) Employees have the right to be heard and to present their side of the story before any adverse action is finalized. This involves the opportunity to provide an explanation, present evidence, or respond to the full allegations. Blockhus was a model employee for United Airlines, a model citizen and soldier. The sad fact is that if only Blockhus just allowed Lense to continue to spread false and damaging lies and rumors about him and fellow employee, Mindy Richard and not attempt to pursued Lense to stop spreading her false and damaging accusations he would still be employed and not have been in the situation that he was put in with regards to his employment with United Airlines. The rumors that



Lense was spreading about him and fellow employee Mindy Richards within their workgroup could have very well ended Mindy's marriage. Blockhus' was only concerned was to protect their marriage. (*See* Ex.8pg.5) The timing of Lense case, immediately after learning she herself will be turned into the company should have



Lense in the car of Blockhus Oct 13, 2020
Just two days after date of "harassing text"

been strongly considered. (*See* Ex13,Ex.16,at34:14-35:4 and Ex34) In addition to the fact Lense and Blockhus continued a close and intimate relationship well into Dec 2020 should have been strongly considered. (*See* Ex.4,5(abc)6(ab),7)Blockhus file a retaliation claim against Lense but was dropped by United claiming, "*Corporate Security did not find Blockhus' claims that he felt threatened to be credible given he continued to contact Lense for months*". (See Ex.39,pg.7) Subsequently, after the date Lense claimed she was harassed by Blockhus in Oct11, Nov 16, she and Blockhus remain in a relationship until mid December 2020 and in touch until Jan 2021. (*See* Ex.4,5(abc)6,7Ex.16,at4:2-6(a,b), at6:1-2)

United did not maintain Blockhus' health benefits during FMLA leave under the same terms and conditions as if he were working. United was prohibited interference with, restraint, or denial of the exercise of any right provided to Blockhus under the FMLA, and discrimination or retaliation against Blockhus for exercising FMLA rights. (*See* 29 U.S. Code § 2601) Blockhus was an eligible employee and was entitled to maintain his group health insurance coverage during FMLA leave on the same terms as if they had continued to work. (*See* 29 U.S. Code § 2611(2)(4))

United was prohibited from interfering with, restraining, or denying the exercise of any rights provided to Blockhus under the FMLA. This includes preventing Blockhus from taking FMLA leave or discouraging him from exercising his rights under the law. Base manager, Monique Williams attempted to discourage and prevent Blockhus from exercising his right to be granted FMLA by requiring him only a 48 hour time frame to submit his request for FMLA. This can be categorized as blatant FMLA interference.(*See* Ex.10) United was prohibited from discriminating against or retaliating against Blockhus for exercising his rights under FMLA. This includes actions such as termination, or adverse employment actions taken against him on FMLA leave. This also provides Blockhus with the right to bring a civil action against United for violations of his FMLA. Employees in such a case may seek remedies such as reinstatement, lost wages or benefits, interest, and attorney's fees and court costs. (*See* 29 U.S. Code § 2615 (a)(1)(2)(b)(1)(2)(3))

Any employer who violates Code § 2615 of this title shall be liable to any eligible employee affected. (*See* 29 U.S. Code § 2617(a)(1)(A)(i)(I)(II)(ii)(iii)(B)(2)(A)

On June 22, 2022 the EEOC issued Blockhus a NOTICE OF RIGHT TO SUE.(*See* Ex.58) United engaged in the foregoing acts and conduct when it knew or should have known that its acts and conduct violated the FMLA and ADA. United 's willful and deliberate actions have caused Blockhus great mental anguish, humiliation, degradation, emotional pain and suffering, lost wages and benefits , and other consequential damages. Accordingly , the court should take immediate remedial action to repudiate this summery judgement. The Association of Flight Attendants (AFA) maintains that ;

*"Blockhus' termination should be rescinded on the grounds that the company knowingly and willfully violated Sections 21,23 and 29 of the JCBA and the Family Medical Leave Act of 1993. Blockhus was treated unfairly and was not given the opportunity to defend the allegations made against him. The company was opportunistic in their expeditious termination when Derek was most vulnerable. United demonstrated a disregard for his welfare by issuing directives that were unrealistic and prohibitive."*
(*See* Ex.31,Ex.57,pg.16)

## ASSIGNMENT OF ERRORS

1.  **The courts erred by not viewing all facts in light most favorable to the nonmovant and draw all reasonable inferences in it's favor.**

    The standard of viewing facts in the light most favorable to the nonmovant ensures that the party opposing the Summary Judgment motion gets the benefit of any reasonable inferences that can be drawn from the evidence. Based on the sheer amount of disputed material facts exhibited in this case, this approach was not considered. Based on this principle that, at the Summary Judgment stage, the court is not deciding the ultimate merits of the case and did not fully assessing whether there are factual disputes that require a trial. If the court is applying this standard, it would have consider the evidence, testimony, and documents in a way that is most favorable to the party resisting summary judgment, giving them the benefit of any doubt in the interpretation of the facts. This would have helped to protect the rights of the nonmoving party and ensures a fair and thorough examination of the case before deciding for Summary Judgement. The court viewed literally 100% of all disputed facts favorably for the Movant. The fact the courts and United turned a blind eye to the threating text and email messages Lense sent Blockhus should preclude this summary judgement. Lense remains employed. (*See* Ex.1)

2. **The courts erred by awarding summary judgement although there were clearly numerous genuine material disputed facts in this case.**

   For a court to grant summary judgment, there should be no genuine dispute of material facts in the case. Material facts are those that could affect the outcome of the lawsuit. If there are genuine disputes about important facts, the court should deny the motion for Summary Judgment.

3. **The courts erred by not considering any of Mindy Richard witness testimony supporting Blockhus and that she only retracted her complaint against Lense from <u>fear she to will get retaliated against and terminated like United did to Blockhus.</u>**(*See* Ex.21 at27:1-8, Ex.8)

4. **The courts erred by allowing United to act with a double standard regarding Lense when it was reported to them with clear and damming evidence that was submitted into record of her threating and inappropriate text and email messages she sent to Blockhus. Not only does she remain employed but was never even reprimanded in any way.** (See Ex.1)

   In Her deposition Lense testified that the phone number on the text messages sent to Blockhus was hers. United, nor the court gave this any consideration and only attempted to still incriminate Blockhus.(*See* Ex. 16, at20:4-12)

5. **The courts erred by allowing United to act with a double standard regarding Lense when they were made aware with clear and damming security camera footage of Lense in a United Uniform slashing all four tires of the vehicle belonging to Blockhus. *This is beyond dispute***

   

   In February of 2022 Lense was captured on a security camera were she is clearly seen slashing the tires of the vehicle belonging to Blockhus.
   (*See* Ex.2)

6. **The courts erred by not taking into consideration the fact that Blockhus was forced to request and was granted a two year protection order against Lense for harassment that she later violated.**(*See* Ex.3)

7. **The court erred when it stated as fact "*Neither Howell nor Hester knew that plaintiff would be unavailable to attend a teams meeting*" When United actually admitted to knowing.**
   (See Ex.61 pg.4#12, pg.5#16,17, pg.6 #28 pg.7 #30)**also** (*See* Ex.10,Ex.38,Ex.44,Ex.52)

8. **The court erred by not considering the fact that the text messages submitted by Lense claiming to be from Blockhus did not link to Blockhus own phone records that he submitted into discovery.**(*See* Ex.35)

9. **The court erred when it allowed a unconfirmed, unsupported, unverified accusation by Lense who herself was reported to the company for harassment and retaliation to be accepted as fact when Lense testified she can not even recall why she would have recieved the text messages nor offering any circumstantial evidence and that she and Blockhus have always been in "friendly terms" in Oct and Nov, until January 2021, nor can she remember if they were intimate after the date of the text messages. Aditionally, that during this time her only issue was that she was on furlough making no mention of harassment and that she never intended to report Blockhus to the company prior to Jan. 25, 2021.**
   (*See* Ex. 16 **at**3:16-19, **at**4:3-6, **at**8:6-11, **at**9:22-10:3, **at**11:7-11, 22-24, **at**12:1-3, 19-24, **at**13:1-14:13, **at**15:6-16, **at**16:17-20, **at**18:12-20, **at**24:9-14, **at**29:5-24, **at**31:10-13, **at**32:1-14, **at**34:14-24,**at**37:22-23)

10. The courts erred by not requiring Lense to submit any supporting evidence or background information in order to substantiate her incomplete text messages which she submitted to United.(*See* Ex.16, at39:22-40:8)

11. The court erred by not requiring United to have authenticated or verified the text messages submitted by Lense before taking adverse action against Blockhus.

As law dictates for admission of the evidence, it was United's burden to prove the authenticity of the text messages as being sent by Blockhus. Thus, United has no rationale explanation for the messages that was offered and no contextual clues in the texts are provided and was insufficient to provide authentication that these texts were sent by Blockhus. The messages do not show Blockhus telephone number as the sender or any consequential evidence. Blockhus submitted both his phone history and SIM card into evidence to "prove his innocence".(*See* Ex.35)

12. The courts erred by not taking into account both Blockhus and a co-worker, Mindy Richard filed complaints against Lense for harassment.(*See* Ex.8 pg.2-3)

13. The courts erred by not taking into account that in Lenses' testimony she continually perjured herself. In Lenses' interview with united concerning her case against Blockhus, she testified she filed a police report in the summer of 2020,(*See* Ex.34 pg.2#15,16)

In Lenses' deposition she testified she never made a police report in the summer of 2020. No police report was ever produced. (*See* Ex. 16 at38:13-22)

Lense testified she canceled their trip to Cancun when in fact Blockhus is heard on a recorded phone conversation as the one who canceled. This is perjury.(*See* Ex.4pg.8)

14. The courts erred by not taking into account that in Lenses' testimonies she continually perjured herself. Lense claimed she and Blockhus planed only one trip to Cancun, when Blockhus submitted records and recorded phone conversations supporting there were actually two Oct 26th, Nov 9th.(*See* Ex.4)

15. The court erred by not taking into account Lenses' own testimony admitting she would contact Blockhus regarding her issue with Mindy Richard and that she was "suspicious of they're relationship".
(See Ex.13, pg.4, Ex.16 at27:3-28:22, 29:8-10, 33:5-14)

16. The court erred by not taking into account Lense testified United never asked nor required her to supply any supporting evidence to substantiate her claims against Blockhus such as texting history.
(See Ex.16 at40:1-8)

17. The courts erred by not taking into account that Blockhus was a 24 year decorated career flight attendant.
Blockhus has never had any issues with United management, co-workers or customers ever.(*See* Ex.41)

18. The courts erred by not taking into consideration United's history of age discrimination.
The fact that Blockhus was a 53 year old top pay senior flight attendant and Lense is a 29 year old, basically a "new hire" at the lowest end of the pay scale.
Lense herself was recorded admitting and complaining about United's culture of age discrimination in the workplace.(*See* Ex.6b)

19. The court erred when it failed to interpret the voice mail left by Blockhus to Lense.(*See* Ex.29)
Both voice mails left to Lense by Blockhus clearly can be understood that Blockhus simply ask Lense to stop spreading damaging rumors about him and a co worker Mindy Richard or he would report her to the company. United airlines policy encourages their employee to reach out to each other for any interrelated issues before involving the company. When Blockhus stated "it would get ugly" he was referring if the company got involved nothing more.(*See* Ex.22, 14:5-19)

20. **The court erred by accepting all statements and evidence by Lense as fact with absolutely no supporting evidence, investigation or witnesses testimony or at the very least an interview of Blockhus.**

21. **The court erred by not taking into account that based on Judge Gettleman own statement,** *"Lense opened her case against Blockhus immediately after he informed her he and Mindy Richard would be reporting her to the company"*

    Timing is everything, just moments after Lense was informed by Blockhus, that she herself would be reported to the company by, he and Mindy Richard for harassment she immediately contacted United to open a "counter" claim, hoping to "block" any claims against her. If all you have to do when someone reports you the company is quickly open up a retaliatory case against your accuser, then this is indeed a dangerous precedent that United supports.(*See* Ex.8,pg.7,9)

22. **The court erred by not taking into account that Lense stated multiple times both in writing and verbally her only goal was** *"I only wanted to save my job"* **which demonstrates intent.**(*See* Ex.13,Ex.16,at34:14-35:4,Ex.34)

    Based on Lenses own testimony, she only incriminated Blockhus for no other reason then to keep her job with United, testifying *"I don't want anyone fired, I only want to "save my job"*(*See* Ex.13,Ex.34)

23. **The court erred by accepting as fact that the text messages submitted by Lense purported to be sent by Blockhus even though the only visible phone number was not that belonging Blockhus, in fact United never bothered to find out who it belonged to.**

    This fact under normal lawful circumstances should have rendered this case dropped. United and sadly the courts did not consider this undisputed fact and chose to incriminate Blockhus regardless. Furthermore, Blockhus surrendered his phone history and SIM card in discovery to United counsel were they could not substansiated Lenses' claim. (*See* Ex.35)

24. **The court erred by claiming** *"Plaintiff now denies that he sent text messages or that any part of the messages affirmatively identifies him or his cell phone number".*

    Blockhus has never "admitted" sending the alleged text messages purported by Lense, additionally, the only number visible did not belong to Blockhus. This number was not and could not be linked to Blockhus yet United and sadly the courts with knowledge of this fact still incriminated Blockhus.(*See* Ex.30, Ex.35)

25. **The court erred by not taking into consideration witness testimony by co-worker Mindy Richard both verbal and written.**

    (*See* Ex.8, Ex.21,4:1-19, 7:10-24, 8:12-20, 9:12-22, 12:7-17,13:5-18,14:9-15:18,22:3-12,Ex.36,Ex.37)
    Witness Mindy Richard made every attempt to set the record straight that Blockhus was the only one telling the truth, only to be told by management to *"not get involved"* Richard submitted no less then four written testimonies to United Management professing Blockhus' innocence only to be ignored with no response by management. This can only be interpreted as bias towards Blockhus.

26. **The courts erred by not considering the fact that Blockhus submitted into record his phone history as well as the SIM card to his phone.**(*See* Ex.35)

    United nor their counsel were able to substantiate any relation between the phone of Blockhus and the text messages submitted by Lense yet United and sadly the court chose to over look this undisputable fact.

27. The courts erred by not taking into account that Blockhus professed in his voice mails to Howell that the claims made by Lense against him were *"Ridiculous"* yet United in a bias attempt claims it was an admission of guilt. (*See* Ex.32)

28. The courts erred by not taking into consideration the fact that Blockhus' supervisor Kayla Howell advised him that *"because corporate security was involved, United already decided your guilt"* and advised him that if he wanted to keep his job, his only recourse would be to *"take responsibly"* *"apologies"* and submit a statement to that effect to United management. Blockhus was manipulated by his superior, someone that he though he could trust and was looking out for his benefit. Howell was later identified as an "activist" that has issue with the demographic that Blockhus belongs to(*See* Ex.43)
This explains why Blockhus submitted a statement to the entire management branch. Blockhus realizing this was nothing more than self incrimination, notified management to disregard any statements and he would send his "official" one shortly, however nowhere did Blockhus state he sent the text that Lense submitted.
(*See* Ex. 40pg.4)

29. The court erred by allowing Howell in a bias attempt to purposely misinterpret Blockhus voice mail to her that the "threat" mentioned in the voice mail was to report Lense to the company **NOT** the text messages Lense submitted. (*See* Ex.32)

30. The courts erred by not taking into consideration that Blockhus clearly stated in his voice mail to Ms. Howell, *"she was sending out rumors about me to United"* and *"I threatened to to go to HR and that's why she did this and I mean I threated"* (to report her to the company not the text messages) *to but I would never do that because I still care about her"*. (*See* Ex.32)

31. The courts erred by misinterpreting when Blockhus inquired how United would get involved with private lines, meaning phone call messages, not texting. (*See* Ex.32)

32. The courts erred by not recognizing based on the details of United's own actions and more importantly, they're inactions with this case and that Kayla Howell was indeed correct when she informed Blockhus on Feb 4th that United had already decided this case before he was ever even contacted.

33. The courts erred by not considering that Blockhus spoke of "arguments" but never claimed he sent the text messages submitted by Lense that even had someone else's phone number displayed on it. Blockhus also surrendered his phone history and SIM card. (*See* Exhibit 32, 35)

34. The courts erred when Judge Genttleman declared in his memorandum *"he never sent a "final statement"* as if this was support for summary judgement.
Blockhus was in the beginning stages of being processed into a medical facility for immediate treatment of his disability and was in no condition to nor able to send a final statement.(*See* Ex.14 Ex.57,pg.2)

35. The courts erred by omitting the fact that management and the Association of Flight Attendants made an agreement to postpone any action against Blockhus until he completed his treatment for his disability and his protected FMLA status. (See Ex.10,38,44,and52)

36. **The courts erred by agreeing that allegations of three month old text messages are too "serious in nature to wait". Lense testified she couldn't even remember what they were about or why she would have recieved them.** *(See* Ex. 16 at8:1-11,9:22-10:3)
**Lense testified she "never felt threatened" she was only concerned about loosing her employment with United.**(*See* Ex.16 at9;22-24, 10;1-3)

37. **The courts erred by accepting at face value that the company only proceeded to terminate Blockhus due to a "timeline" restraint when in fact it states in United's own policy that this "dead line" can be extended under the exact conditions regarding Blockhus FMLA leave.** *(See* Ex(s)10,38,44,52 pg.2,5)

38. **The courts erred by not questioning that if these allegations were so "serious in nature" then why was there not a full investigation completed?**
United made no attempt to verify or validate any of Lenses' claims against Blockhus even claiming the date of the text messages did not matter to them. *(See* Ex.18, at7:1-17)

39. **The courts erred by not taking into consideration that in Lense deposition testimony she "*could not recall*" if she and Blockhus were still having intimate relations after Oct or Nov of 2020, yet she testified "*she ended the relationship in the summer of 2020*"**
*(See* Ex.(s)4,5(a,b,c)6(a,b),7Ex.16 at12;19-24, 13;1-15, 14;1-13)

40. **The courts erred by describing actual FMLA interference by United against Blockhus by Hester and United Airlines, then not making any consideration for it.** *(See* Ex.14,23,31,38,44,45,52 )
Hester and Howell had knowledge of Blockhus protected FMLA status. Hester and Howell were delinquent at their duty and should have known not to violate Blockhus' FMLA status. Hester and Howell were representing United when they interfered in Blockhus federal protected FMLA status requiring him to answer emails and attend meetings or be "terminated". This was a clear violation of the rules of FMLA and the courts allowed this violation without question.
When United impeded on the protected FMLA status of Blockhus they also abandoned him in a medical facility in Florida with no benefits, and no means of flying home to his state of Virginia. This can be considered an act of cruel and unusual punishment.

41. **The courts erred when it did not consider that United removed the health care benefits from Blockhus without the required notification by United that he was eligible to transition to coverage under the COBRA ACT and the Department of Labor was forced to intervene, direction United to extend the COBRA benefit to Blockhus which they did not.**

42. **The courts erred by not inquiring why Blockhus "abandoned his arbitration"**
This was due to the fact of the overwhelming bias displayed by the arbitrator. In fact in between sessions the arbitrator was seen having inappropriate and personal conversations with United management about fishing trips, kids, and mutual friends.

**43.** The courts erred by not considering United disregard the fact that Lense was reported to the them, accompanied with evidence of her posting disparaging remarks about United airlines including comments from friends sugesting she take it down, as well as threating another employee. This offense warrant termination yet she remains employed. (*See* Ex 9)

**44.** The court erred by not considering that United dropped Blockhus' retaliation claim against Lense sighting, "*Corporate Security did not find Blockhus' claims that he felt threatened to be credible given he continued to contact Lense for months*" (*See* Ex.39 pg.7)
Lense maintained a relationship with Blockhus months past her alleged text messages. When McCormick was asked in the case against Blockhus, " *So did you ever ask Ms. Lense why she maintained a casual relationship with Mr. Blockhus after receiving what she claims are hateful text messages from Mr. Blockhus in October 2020?*" McCormick responded " *No, I did not ask her about the reason that she would have continued a casual relationship just for definition of their relationship, supposed after the text message were sent to her. I did not ask. **It was not relevant to my case**"* (*See* Ex.4,5(abc)Ex.18 at15;24-17;3) Between Oct 2020 through Feb 2021 Lense contacted Blockhus over **500** times. (See Ex.7)

*When a court considers a motion to drop a case before it can even go to trial, it must views the facts in the light most favorable to the non-moving party, which, in this case, is the Plaintiff, Blockhus. This means that the court, for the purposes of the motion, accepts the Plaintiff's version of the facts as true, assuming that all reasonable inferences are drawn in favor of the Plaintiff, Blockhus*

## SUMMARY OF FACTS

1. Blockhus and Lense were in an intimate relationship from Nov 2019 to Dec 2020 (*See* Ex. 4,5(abc)6(a,b),7)

2. In mid Nov 2020 Blockhus began to distance himself from Lense and began to spend more time with his friend Mindy Richard and her husband. (*See* Ex.8 pg.4-9)

3. Around this time Lenses' behavior started becoming harassing towards Blockhus accusing him and Mindy of having an affair. (*See* Ex.8pg.4-9, Ex.16 at 26:9-22, 27:3-19, 28:1-24, 29:5-16)

4. During the months of Nov and Dec 2020 Blockhus would be informed by fellow flight attendants that Lense saw them (Blockhus & Mindy) kissing at the airport and that they were having an affair. (*See* Ex.12,Ex.13,pg.4,Ex.16 at27:3- 29:10)

5. Blockhus and Mindy attempted to include Lense in all their activities in order to show her nothing was going between the however Lense would always decline. (*See* Ex.8, Ex.16 at26:23-24)

6. In the weeks that followed, Lenses' behavior escalated to harassment and Blockhus would receive threating email and text messages and phone calls from Lense yet she remains employed. (*See* Ex.1,7,12)

7. After a Dec 10th 2020 harassing phone conversation with Lense, Blockhus decided to end their romantic relationship. Lense testified she had this call in Dec 2020(*See* Ex.12,Ex.13pg.4,Ex.16at29:5-16)

8. After weeks of hearing rumors originating from Lense claiming Blockhus and Mindy were having "affair" Mindy began to panic that this false accusation would reach her husband and she discussed with Blockhus as how to put an end to it.(*See* Ex.8pg.5,7)

9. On January 7, 2021 Blockhus met with base manager Monique Williams on how to deal with Lense behavior. (*See* Ex.47)

**10.** Mindy and Blockhus decided to contact Lense to deal with this issue privately. (*See* Ex.8pg.5)

**11.** Blockhus left a voice message to Lense on Jan 24, 2021 and a second the next day on Jan 25, 2021@10:58 AM (*See* Ex.29)

**12.** In Blockhus voice messages he is clearly hear asking Lense to stop harassing him and Mindy with these false accusations and that he would rather come to a private solution then involve the company, however if she did not stop he and Mindy would report her to the company. (*See* Ex.29)

**13.** Literally minute later Lense calls United to open a complaint of her own before Blockhus and Mindy did. (*See* Ex.8 pg.7,9,Ex.33 pg.2)

**14.** Not mentioning anything in regards to threating text messages, Lense opens her case based on feeling her job was threatened by Blockhus' voice message. (*See* Ex.8 pg.7,9 Ex.13pg.3,4 Ex.16 at34:14-35:4, Ex.34).

**15.** Unknown to Blockhus that during the time Lense was secretly opening a case against him, he and Mindy were coordinating their case against Lense.(*See* Ex.59, pg.3)

**16.** By Jan 25,@ 11:52 AM United was already circulating emails about Lenses' complaint.(*See* Ex.33 pg.2)

**17.** Lense was directed to the Ethics and Compliance where she connected with Corporate Security Senior Manager, Harassment and Discrimination Investigations Kimberly Phillips and John McCormick.

**18.** McCormick encourages Lense to add more evidence for her case.

**19.** Later on Jan 29th Lense submits three month old text messages to McCormick dated Oct, 11. and Nov 16 however no year was shown and the phone number did not belong to Blockhus nor did McCormick care.

**20.** (*See* Ex. 18 at7:1-17) Also on Jan 29th Mindy Richard file a formal complaint against Lense to United HR (*See* Ex. 8 pg. 3).

**21.** In Lenses' rush to open a case before Blockhus could, Lense submitted text messages with a phone number not belonging to Blockhus and was suspiciously doctored by adding his name. (*See* Ex.30)

**22.** Contrary to the dates on the text messages Lense submitted claiming Blockhus was harassing her, Blockhus has submitted recorded phone conversations, home movies, car dashboard recordings as well as receipts for a romantic trip to Cancun , Mexico that they booked together for Oct 26th however that was subsequently canceled due to hurricane Zeta. (*See* Ex.4-7)

**23.** Lense and Blockhus then booked a second trip to Cancun for Nov 9, 2020 Blockhus and Lense are on a recorded line discussing their second trip together.(*See* Ex.4)

**24.** In Lenses' sworn deposition, she attempts to deny there were two booked trip to Cancun however Blockhus has provided receipts and recorded phone conversations with Lense that will prove she was committing perjury. (*See* Ex.4, Ex.16 at23:7-8)

**25.** On Feb 4, 2021 Blockhus noticed he was removed from his next trip and called his supervisor Kayla Howell.

**26.** In their phone conversation Howell made it known to Blockhus that he was now under investigation but she did not know why.

27. Later that day Blockhus was notified by a mutual friend that Lense had opened a case against him using text messages. Blockhus knowing Lense was doing this to hime for no other reason then him informing her she will be reported for harrassing him and Mindy Richard. Blockhus lest a note on her car. This was not against company polocy. (*See* Ex.13 pg.4)

28. When Blockhus returned home that day he found an email from United with a short description of the charges against him.

29. Blockhus remembering Howell did not know the reason, then called her to inform her of the details he was told, both by a mutual friend and in the email.(*See* Ex.32)

30. Blockhus was understandable confessed and in shock when he left a voice message to Howell. (*See* Ex.32)

31. In his voice message Blockhus is heard confused but still states that Lense claim is "***Ridicules***" and that he knew she was doing this because of his voice message to her on Jan 25. Blockhus is also heard saying that the only "threat" he made to Lense was to report her to the company if she did not stop harassing him and Mindy. (*See* Ex.32)

32. In a blatant act of bias, Howell claimed Blockhus' voice message was an admission of guilt claiming that he admitted sending threating text messages to Lense when he only admitted to reporting her to the company.(See Ex.32)

33. When the court listen to this voice message it will determine Howell's claim was inaccurate and the court should have cause to question every claim United makes against Blockhus.(*See* Ex. 32)

34. Later Howell call Blockhus back to discuss the charges against him. In their conversation Howell made it known to Blockhus that "***because corporate security was involves, United has already made their decision about you***" adding, "***your only recourse now if you want to keep your job is to send the company a statement taking responsibility***" (*See* Ex.40)

35. Blockhus ask Howell what he was supposed to say as none of this was true, Howell replied "***just base your statement on the information you were given***" which United admits (*See* Ex. 42 pg. 24 #31)

36. This explains why Blockhus submitted a statement to the entire management branch. Blockhus realizing this was nothing more than self incrimination, notified management to disregard any statements he made and he would send his "official" one shortly. (*See* Ex. 40 pg. 4)

37. Blockhus was attempting to make the statement that he was advised to do without even knowing the details of the case yet, as that would only be available to him days later.

38. Howell in turn disregard the fact that Blockhus declared his initial statements as inaccurate and not his official stance and attempted to use it against him in an act of bias.(*See* Ex.40 pg.4)

39. Blockhus would later be made aware by his Union this was not policy and he should have never been told by his supervisor to do so.

40.  Blockhus was manipulated by his superior, someone that he though he could trust and was looking out for his benefit but she was the one who wrote his letter of investigation with language that basically already declared him guilty, wording it as "**_Your_** text messages and voice messages sent to Lense" The term "alleged" which would have been appropriate was purposely omitted, suggesting that even before Blockhus was even contacted, Kayla Howell determined his guilt.

41.  Blockhus supervisor, Kayla Howell took advantage of her position of power and attempted to alter the case against Blockhus.(_See_ Ex.43)

42.  Kayla Howell it turns out is an <u>activist</u>, and has publicly denounce people in Blockhus' "demographic". (_See_ Ex.43)

43.  Blockhus maintains he has never sent threating text messages to Lense nor "admitted" to any wrong doing.

44.  On Oct. 18, 2022 counsel for United requested and received Blockhus phone history and SIM card. Even with all this information United could not link Blockhus to Lenses' text messages, yet chose to proceed to terminate him anyway.(_See_ Ex.35)

45.  Blockhus never saw United's case against him as United claims. Howell emailed it while Blockhus was on the road driving to the airport the morning he went on FMLA.

46.  Blockhus who suffers from severe anxiety that causes him dependence on alcohol reached a breaking point on Feb 8, 2021 due to Lense false case against him.(_See_ Ex.31,Ex.57 pg.2)

47.  Upon arriving at the airport for his meeting, a Union representative meeting Blockhus  immediately recognized his condition and put him in contact with the local employee assistance program (EPA)(_See_ Ex.57pg.2)

48.  Blockhus' Union representative then contacted United base manager Monique Williams  to notify her about Blockhus' condition.(_See_ Ex.10)

49.  Both Monique Williams and Howell agreed to postponed Lenses' case until Blockhus was medically available as long as she receives the proper paperwork by Feb. 11, 2021. 1700 EST stating "**_the company will recalculate the 30 day contractual deadline_**" Blockhus made this deadline (_See_ Ex.10, Ex.14, Ex.17 at84:6-18, Ex.20 at60:10-24 )

50.  Blockhus was then admitted into Lake View health Center in Jacksonville, Fl. were he was awarded FMLA status to receive treatment for his very serious disability until April 5, 2021. (_See_ Ex.14, 31,45)

51.  As early as Feb 10, 2021 an email was circulated to United management notification to all involved that Blockhus was not medically available until April 5, 2021. United agreed to pause the Lense case till then. (See Ex.10, Ex.20 at60:10-24 Ex.17at84:6-18)

52. Supervisor Kayla Howell was assigned as lead investigator for the Lense case however before she could begin any investigation Kayla went on a leave of absence and dropped the case on the desk of Frank Hester, who is now a flight attendant. (*See* Ex.20 at84:1-3, 85:14-18, 94:16-24)

53. Hester testified he contacted no one involved in the case and simply made his decision to terminate Blockhus based on Lenses' information. (*See* Ex.17 at86:8-13, 110:9-24, 113:18-22, 115:4-24)

54. In fact Lense was the only one that was interviewed or had any input in the case against Blockhus.

55. Hester testified he made sure all procedures were followed as to reflect an equal treatment for all employees however Blockhus was never given due process or interviewed before Hester terminated him.

56. Although Blockhus was awarded FMLA from United for 8 week to treat his disability from Feb 8-April 5th 2021, low level supervisor Hester,(who is now just a flight attendant) took it upon himself to reject United's agreement to postpone the Lense case and attempt to contact Blockhus while he was on approved FMLA status requiring him to attend his meeting or be disciplined up to termination.
(See Ex.10, Ex.20 at60:10-24 Ex.17at84:6-18)

57. Obviously Blockhus as a patient in a rehabilitation clinic had no contact with the outside world and never received Hester's directive were Hester then proceeded to terminate Blockhus in ABSENTIA.

58. Blockhus had no idea he had been terminated until he lost his medical benefits which was immediate and was required to discontinue treatment just three week into his eight week program to care for a very serious disability. (*See* Ex.14,31,45)

59. United had left Blockhus, a model employee of 24 years, stranded in a hospital with no insurance, in another state with no means to return home to Virginia. This should be considered cruel and unusual punishment

60. United failed to offer Blockhus supplemental COBRA insurance.

61. United Airlines awarded Blockhus eight weeks of federally protected FMLA in order for him to receive treatment for a very serious disability the just took it away three weeks later without cause.

62. On or about February 24, 2021, Blockhus filed a retaliation claim with United against Lense. The investigator assigned to investigate Blockhus' retaliation claim was Kim Phillips, the same investigator that declared Blockhus guilty with no evidence of harassing Lense.(*See* Ex.39)

63. This was an obvious conflict of interest to the Union and even to local United management. (*See* Ex. 46)

64. Phillips drop Blockhus' case against Lense sighting he and Lense remained "in touch" afterword's This was not even true as Blockhus and Lense no longer communicated after Dec 2020 and the Lenses' retaliation occurred on Jan 25th 2021.(*See* Ex.39 pg. 7)

65. Lense maintained not only communication but an intimate relationship with Blockhus long after she claimed to have been "threatened" by Blockhus, yet Philips reasoning does not apply with Blockhus. (*See* Ex. 4,5(abc)6, and 7)

66. On December 13, 2021 Blockhus attended an arbitration for his case. Due to the fact that the arbitrator showed extreme bias and at times joke around with United management talking about trips, kids, trips, and mutual friends, Blockhus felt it was time to contact an attorney and walked out of this bias arbitration.

67. On December 3, 2021, Blockhus filed a Charge against United of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of disability and age and retaliation, for which the EEOC issued a Notice of Right to Sue on June 22, 2022. (*See* Ex. 51)

68. On July 26, 2021 Lense attempted to further harass Blockhus by filing a fake protection order that was later found baseless and denied by the court. (*See* Ex.53)

69. On July 26, 2022, Blockhus filed a Complaint for his wrongful termination including claims of (1) disability discrimination under the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C.§ 12101 et seq. (Count I); (2) interference in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. (Count II); and (3) discrimination based on age in violation of the Age Discrimination in Employment Act~ ("ADEA"), 29 U.S.C. § 621 et seq. (Count III),. Wrongful Termination

70. Since Blockhus was removed from his treatment in Florida and returned home, Lense continued to harass and stalk him.(*See* Ex.2,3)

71. On Feb. 28, 2022 Lense was recorded on security camera in a United uniform slashing the tires of the vehicle belonging to Blockus. (*See* Ex.2)

72. Blockhus completed a police report and also filed a complaint with United's ethics and complaints. United did nothing and protected Lense claiming Blockhus claims can't be true also mentioning Lense denied attempt at securing a false protection order as if it was successful. (*See* Ex. 2,pg.6-11,Ex.53, Ex 54 pg. 5)

73. This security evidence was included in Blockhus Lawsuit but Lense remains employed. This is nothing more than discrimination in two tier justice system. (*See* Ex.2)

74. United also chose to drop this case sighting Blockhus never filed a police report. This was not true. (*See* Ex.2 pg.6,7)

75. United reasoning to not investigate Lense in a clear act of vandalism is that there needed to be a police report but did not require Lense to produce a Police report for her case against Blockhus.

76. On April of 2022 Blockhus was awarded an emergency protection order against Lense for harassment. Yet Lense remains employed.(*See* Ex.3)

77. On May of 2022 Lense violated her protection order Blockhus yet Lense remains employed. (*See* Ex.3 pg.6)

78. On Aug 19, 2022 Blockhus was awarded a two year protection order against Lense for harassment. Yet Lense remains employed.(*See* Ex 3)

**LEGAL STANDARD**

Under Illinois and federal law, summary judgment is proper only "if the admissible evidence considered, as a whole, shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See, eg., Turner v. Wexford Health Sources, Inc.*, No. 17-cv-0656-MJR-SCW, 2018 WL 3301818 at * 2 (S.D. Ill. July 5, 2018) (citing *Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, or information obtained via discovery—the lack of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On summary judgment, the Court considers the facts in the light most favorable to the nonmoving party and adopts reasonable inferences and resolves doubts in the nonmovant's favor. Srail v. Village of Lisle, 588 F.3d 940, 948 (7th Cir. 2009).

**ARGUMENT**

United's argument that it is entitled to Summary Judgment as a matter of law should be precluded. The sheer amount of genuine material disputed facts outlined within this appeal is unprecedented and this drastic remedy should have not been granted and was not proper as there is no doubt as to the existence of [triable] issues. Additionally, the fact that Blockhus himself has spent over one hundred and fifty thousand dollars, as well as the last three years of his life to seeking justice in this case. This is a significat life investment and not the actions of someone that United claims "*admitted guilt*". By United simply "declaring" Blockhus admitted guilt does not make it so. The presence of such a significant number of genuine disputed material facts in this case should indeed be considered in this legal proceeding. Simply putting someone name on a text message and declaring it was that person does not substantiate it's origin. Electronic evidence, including cellphone text messages, must be authenticated through witness testimony and circumstantial evidence. To prove a text message there must be sufficient facts to persuade the jury that the text was created and sent by the person who is alleged to have created it. Copies of text messages should: have dates, years, and times clearly shown on them. (the year of the text was unknown) Connect the phone number the messages came from to the another person who sent them and to whom they were sent and why. Blockhus' initial reaction and behavior to Lanses' false accusation coupled with the negative undue influence given to him from his supervisor, Kayla Howell cause Blockhus to make confusing and misleading remarks in his initial misguided effort to end this disgusting accusations against him. However at no time did Blockhus acknowledge that he sent the text messages Lense submitted to United. Uniteds termination letter sent to Blockhus was erroneous, and purposely deceptive. (*See* Ex.28)

In United's case, Blockhus was subjected to having to "**prove his innocence**" rather than United having the burden to "prove his guilt." The burden of proof rests with the United, which means they must prove the Blockhus' guilt beyond a reasonable doubt. This was never attempted as within the UAL corporation United management, regardless of any Union representation, or circumstance has the power to be judge, jury, and executioner with immunity while disregarding any rights of the employee. At the same time United can excuse an employee's illegal behavior if it suits them, such as with Lense. Blockhus, who was actually the victim of harassment by Lense turn in her threating text and email messages he received from her to United in this case, yet she remains employed. (*See* Ex.1)

Blockhus was terminated for simply being "accused" of a unverifiable, unsubstantiated harassment. Lenses' own testimony should have thrown doubt on this case. (See Ex.13,Ex.16 at 34:14-35:4 and Ex.34)

**I. That in fact Lenses' only motivation for her complaint was nothing more than to protect her employment with United.**

*"Before January 25th, no, I did not intended to report him to United for any kind of harassment or anything"* (*See* Ex.16, at34:14-19)

*"I didn't think anything of it until he brought the Company into it. I don't want him to lose his job."*(*See* Ex.34, pg.4)

*"The voicemail on January 25, yes, it was threatening about my job and I was getting ready to return to work from furlough. I had a lot of stuff already building up and so I just -- I felt threatened and I made a decision to report it, yes"* (*See* Ex.16, at34:20-35:4)

*"I didn't want anybody in trouble, I was simply trying to protect my job"*(*See* Ex. 13, pg. 3)

*"I was simply trying to protect my job"* (*See* Ex.13, pg.3)

*"Make it clear – I don't feel threatened for my life or anything like that but because my job was mentioned I am simply just protecting myself. Personally I know the report that is out there that is purposely doing that."* (*See* Ex.34, pg.2)

*"My biggest issue was that he threatened my job"* (*See* Ex.34, pg.3)

*"I didn't think anything of it until he brought the company into it"*(*See* Ex.34, pg.4)

*"I felt like I wanted to protect myself, went to company and told the company I was being accused of a hostile work environment . Previous message left on my phone also threatening my job that I didn't think I could go to the company because I wasn't in the company at that time "* (*See* Ex.13, pg.2)

**II. That Lense maintains, she and Blockhus were always on friendly terms.**

*"We were friends on Oct 11, 2020"*(*See* Ex.16, at10:8-11)

*"We remained friend until January 2021"*(*See* Ex.16, at5:18-20, 6:1-2)

*"We were still communicating as friends, we were still friends"* (*See* Ex.16, at27:22-23)

*"Yes I agree Blockhus and I were on friendly terms on Oct 13, 2020"* (*See* Ex.16, at16:17-20)

*"We communicated as friends in November 2020"* (*See* Ex.16, at24:9-14)

*"As of Dec 14, 2020 a friendly relationship with Blockhus"* (*See* Ex.4,5(abc)Ex.16, at31:10-13)

*"he was very, like, supportive for me, like with me, sorry to me"* (*See* Ex.16, at2:4-6)

*" Yes I wanted to go to Cancun with him after Oct 11, 2020"* (*See* Ex.16 at17:6-18)

*"He tried, like, helping me looking for jobs"* (*See* Ex.16, at32:7-10)

*"He tried to, like I mentioned before, he tried to help, like do something nice for me, to take me on a trip"* (*See* Ex.16, at32:11-14)

**III.Lense testified she was never asked to substantiate her accusations.**

*"I was never asked to provide a comprehensive list of a call log had made or received over any period of time"* (*See* Ex.16, at39:22-40:3)

*"I never provided United the complete history of my cell phone"* (*See* Ex.16, at40:7-8)

**IV.Lense admitted that she in fact would contact (harass) Blockhus regarding her "suspicions" about his relationship with Mindy Richard and told it with others.**

*"I had conversations with him and in the heat of the moment, I could have said, your are spending to much time with her (Mindy)"*(*See* Ex.13, pg.4)

*"Just that he needed to be careful because he's been hanging out so much with her (Mindy) lately and he needs to watch out"* (*See* Ex.16 at27:3-7)

*"No. I had the conversation with him on the phone back in Dec 2020"* (*See* Ex.12, Ex.16 at27:16-19)

*"Yes I told Mr. Blockhus that I thought he was having some kind of romantic relationship with Ms. Richards"* (*See* Ex.16 at27:23-28:3)

*"I suspected, yes, that's why I told him that he needed to be careful"* (*See* Ex.16 at28:7-8)

*"Probably in one of our phone conversations  I said they hanging out often."* (*See* Ex.16, at28:11-13)

*"I said I think you've been hanging out way too often with this person"* (*See* Ex.16, at28:18-22)

*"I only had a conversation with Derek and just girlfriends outside of work that I shared that, that I thought they might -- I was suspecting stuff."* (*See* Ex.16, at29:8-10, 33:5-14)

*"I spoke with him about it, he mentioned a friend of his, and I said he'd been spending a lot of time with them."* (*See* Ex.13, pg.4)

**V.That Lense could not remember if her and Blockhus were intimate after the dates of the text messages she submitted in her case against Blockhus.**

*"I don't remember"* (*See* Ex.16, at12:19-21 13:4-15)

*"I really don't remember if it was before or after"* (*See* Ex.16, at12:2-3)

*"I don't remember if it was after -- like if we were intimate."* (*See* Ex.16, at14:2-3)

*"I do not remember if we were intimate at that time."* (*See* Ex.16, at14:12-13)

*"Yes we had a trip planed to Cancun"* (*See* Ex.4, Ex.16, at22:1-3 )

**VI.That Lense could not come up with a reason nor could remember any argument that she would receive threating text from Blockhus.**

*"I can't remember for sure, but I do have like messages from him, but I don't remember exactly what it was all about."*

(*See* Ex.16 at8:6-11)

*"I don't remember exact the argument, what it led to"* (*See* Ex.16 at9:23-10:3)

*"There's nothing prior to them"* (*See* Ex.16 at11:7-11)

*"No, I do not recall what led up to these messages."* (*See* Ex.16 at11:23-12:3)

**VII.Lense has a two year protection order awarded against her for harassing Blockhus that she later violated . When asked if she had ever contacted Blockhus since the protection order her reply was;**

**Q. (Counsel)** *"Have you had any contact with Mr. Blockhus since the protection order was entered telling you not to?"*

**A. (Lense)** *"I'm sorry, but I really don't feel comfortable answering, talking about this, because this is "*

(*See* Ex.3,Ex.16, 42:15-20)

**VIII.Witness Mindy Richard complained to United about Lense that she was later force to retract from fear that she could be a victim of retaliation as Blockhus was and lose her job.**

*"Mindy Richard asked to see me* (McCormick) *and wanted to make some statement that she needed heard in RE to Derek Blockhus"*

(*See* Ex.8, pg. 6)

**Q.** (McCormick)*And then the notes say, "I submitted my report, but then retracted it due to fear of retaliation." Did you tell Ms. Phillips something like that?*

**A.** (Richard)*Yeah, I'm sure I did. Because then knowing that Derek was fired, then I was worried that I would get fired so I retracted mine. Yup, I remember this.* (*See* Ex.21 at 27:1-8)

**IX.Mindy Richard testified she was force to withdraw her complaint against Lense for fear of retaliation.** "*After seeing the extremes Ms.Lense took, in creating even more false accusations against Derek. I felt intimidated and in fear of her retaliating against me also, so, I withdrew my claim against Ms. Lense.*" (See Ex.8, McCormick notes Mindy interview pg. 5)

"*Derek was trying to protect my husband and I from embarrassing, false rumors, and in the end is at risk of losing his job*" (*See* Ex.8, McCormick notes Mindy interview pg. 5)

"*Derek was trying to protect her and me*" (*See* Ex.8, McCormick notes Mindy interview pg.7) (Ex.37 pg.2)

"*She* (Lense) *literally filed the complaint the moment Derek told her he was going to HR. I submitted my report but then retracted it due to fear of retaliation.*" (*See* Ex.8, McCormick notes Mindy interview pg.7)

In legal proceedings, the court is obligated to consider relevant and admissible testimony presented by both the prosecution and the defense in order to evaluates the credibility and reliability of the testimony to make informed decisions. After considering the testimony of both Mindy Richard and Lense herself, summery judgment could not have been proper. This case presented many triable issues that should be decided by a jury.

**Blockhus' claims are not covered under the Railway Labor Act because adjudication of his claims does not require interpretation of the CBA.** (See Ex.60)

## X.Admissible evidence of discrimination under both the ADA and the ADEA demonstrates that summary judgment is improper.

Blockhus shows clear evidence he was discriminated against based on his age and disabilities. Under both the McDonnell Douglas burden-shifting framework and the Rogers "sufficient evidence in the record" test (**the Rogers test**), Blockhus has established prima facie claims for discrimination under both the ADA and ADEA.

## XI.Blockhus' claims meet the prima facie standard in McDonnell Douglas.

To establish his discrimination claims under McDonnell Douglas, Blockhus must show (**1**) The is a member of a protected class; (**2**) he met the employer's legitimate performance expectations; (**3**) he suffered an adverse employment action; and (**4**) he was treated differently than other employees outside his protected class.

**XII.McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).** Blockhus is over 40 years old and suffers from the disabilities of alcohol dependency caused by severe anxiety disorder. (See Ex.14,Ex.31,Ex.57,pg.2). Blockhus suffered an adverse employment action when United terminated him on February 26, 2021. United contends that Blockhus was not meeting performance expectations and he cannot identify similarly situated United employees outside his protected classes who were treated differently, Blockhus disputes both United's facts and United's application of the law to his claims. Blockhus was meeting United's legitimate performance expectations and its assertions that he was not are pretext for discrimination. From his hire in 1997, Blockhus received only two performance warnings prior to February 2021(for having an expired French visa) the last of which was in 2014(for not completing a required CBT on time) which shows he was meeting United's legitimate expectations. (*See* Ex.62 at 3) (*See* Ex.17 at40:13-19).

In making its case that Blockhus was not meeting performance standards, United relies exclusively on the findings of its investigator, John McCormick, that Blockhus threatened and harassed Lense. The Court should reject this argument because (1) McCormick relied exclusively on Lense's evidence, (2) McCormick and United failed to take any step to authenticate or verify the documentary evidence Lense submitted to Corporate Security, and (3) McCormick, based on his own testimony, was unable adequately to assess Lense's credibility. *(See* Ex.18 at 6:13-17)

McCormick testified he only spoke to Lense on the phone during the investigation and he never interviewed Blockhus. McCormick relied exclusively on the information from Lense and would not have considered Blockhus' evidence regarding his relationship with Lense. McCormick testified that because Lense told him her relationship with Blockhus was a "casual friendship," the status of their relationship was not relevant to the investigation. After receiving the voicemails, text messages and emails Lense sent him, McCormick did not ask her to produce anything else because he left it to her to determine what was relevant. United cannot credibly claim that Blockhus was failing to meet its legitimate performance expectations when its factual findings were based on incomplete, biased information from an employee who admitted her only concern was for her job. *(See* Ex.13,Ex.16 at 34:14-35:4 and Ex.34)

McCormick failed to thoroughly investigate the evidence and gave United pretextual cover to discriminate against Blockhus based on his age and disabilities. McCormick made no effort to verify that any of the information Lense sent him was authentic. . In fact, McCormick never received any training on how to authenticate text messages and has never done it in any investigation. Id. When viewing the facts in the light most favorable to Blockhus, a reasonable jury could conclude that McCormick's failure to perform a thorough and unbiased investigation of Lense's allegations against Blockhus is evidence of pretext for discrimination against Blockhus. *(See* Ex.18 at7:18-8:22)

### XIII. United treated employees outside Blockhus' protected statuses differently.

United argues that Blockhus cannot point to any employees whom United treated differently who are not within Blockhus' same protected statuses. United is wrong. United treated—and continues to treat—Lense differently. When Blockhus submitted evidence of Lense's sexually explicit, harassing, and threatening messages—including messages that Lense would weaponized her status as a woman—during the EEOC investigation, United did, and continues to do, nothing. *(See* Ex.1)

When Blockhus, a seasoned, decorated employee with the Company for nearly 25 years who suffered from two disabilities,was accused of harassing a coworker, United terminated him without making even the most rudimentary effort to verify and authenticate the messages offered as evidence against him; when his accuser—a younger, non-disabled female employee—was accused of posting derogatory comments about United on social media, United consulted an expert inside the company. Perhaps worse still, McCormick was not trained on when or how to verify or authenticate evidence. *(See* Ex.9,Ex.18 at 7:18-8:22 16:4-17:3)

Viewing the facts in the light most favorable to Blockhus, a jury could find that United's different treatment of Lense is evidence of pretext for discrimination against Blockhus.

**XIV.Blockhus presented admissible evidence of FMLA interference and retaliation such that summary judgment is improper.**

For Blockhus to establish his claims for FMLA interference, he must show **(1)** he was eligible under the statute; **(2)** United is covered by the statute; **(3)** he was entitled to leave under the statute; **(4)** he satisfied the notice requirements under the statute; and **(5)** United denied him benefits to which he was entitled. Lutes, 950 F.3d at 363.

The evidence in the record in this case shows United interfered with Blockhus' use of FMLA leave. Blockhus was eligible under the statute because he had been employed by United for more than a year and met the requirements for airline flight crews (*See* 29 U.S.C.§2611(2)(A) United is covered by FMLA because it meets the definition of an "employer" in (29 C.F.R. § 825.104(a); Blockhus was entitled to use FMLA leave because he had "a serious health condition that [made him] unable to perform the functions" of a flight attendant for United (See 29 U.S.C. § 2612(a)(1)(D) and United admintted they interfered with Blockhus' use of FMLA and denied him FMLA benefits.(*See* Ex.62 pg.5 at28)

**XV.United interfered with Blockhus' use of FMLA leave when it required him to submit paperwork to substantiate his medical unavailability for the February 8, 2021, meeting because his unavailability and his need for FMLA leave were functionally the same.**

First, United attempted to interfere with Blockhus use of FMLA leave by requiring that he submit documentation substantiating his medical unavailability by 5:00 PM EDT on February 12, 2021. The email from United's Monique Williams to Blockhus' AFA union representatives made it clear that if Blockhus failed to submit paperwork substantiating his medical unavailability, the meeting would proceed without him on February 12, 2021. (*See* Ex.10)

**XVI.Functionally, there was no difference between the paperwork that substantiated Blockhus' need for FMLA and his unavailability for the February 8, 2021, meeting because the condition that caused both—his disabilities of severe anxiety disorder causing alcohol dependency— was the same.**

The statutory language of the FMLA does not impose a notice restriction for employees to submit supporting documentation substantiating their need for leave. (*See* 29 U.S.C. § 2612). In requiring that Blockhus submit this paperwork on a truncated timeline, United interfered with his use of FMLA because the only purpose for doing so to attempt to deny Blockhus his benefits under the statute. When the facts are considered in the light most favorable to Blockhus, a reasonable jury could find that United interfered with Blockhus' use of FMLA because it manufactured a consequence for any failure on his part to submit the paperwork—which was functionally indistinct from FMLA paperwork—to substantiate his medical unavailability for the February 8, 2021, investigatory meeting; and summary judgment is thus precluded.(*See* Ex.10)

**XVII.United interfered with Blockhus' use of FMLA because it denied him a benefit to which he is entitled by terminating him based on the pretextual findings of its non investigation.**

United claims it would have terminated Blockhus even if he was not on FMLA, but the bases for its purported legitimate non-discriminatory reason were entirely pretextual and based on the findings of an inadequate investigation. Blockhus was approved for FMLA leave retroactively to February 8, 2021, and Howell knew it. Monique Williams shared the same information about Blockhus' medical unavailability with both Hester and Howell. (*See* Ex.10,38,44,52)

Additionally, both McCormick—who conducted the investigation—and Hester—who made the decision to terminate Blockhus—knew, or should have known, Blockhus was on extended leave. Despite this knowledge, McCormick moved forward with the investigation and Hester ultimately terminated Blockhus based entirely on the pretextual investigation. A pretextual reason is "any dishonest explanation." Tarochione v. Roberts Pipeline, Inc., 62 F.Supp. 3d 821, 827 (N.D. Ill. 2014) (citing Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 685 (7th Cir. 2000). When the facts are considered in the light most favorable to Blockhus, a reasonable jury could find that United's reasons for terminating him were pretextual and, therefore, United interfered with Blockhus' use of FMLA when it terminated him. United admitted they illegally contacted Blockhus while he was on FMLA.
(*See* Ex.62 pg.4#16,17, pg.5 #28 pg.6 #30)

## CONCLUSION

There is substantial disagreement as to the facts in this case, particularly regarding **whether** Blockhus denied sending the text messages to Lense (or admitted to sending them); **When** Blockhus' relationship with Lense ended; **Who's** phone number was on the text and why did United not try to find out; **Why** after Blockhus surrendered his phone history and SIM card in discovery, clearly demonstrating he had no connection with the text messages Lense submitted that summary judgment was still granted; **Why** Lense testified she "*would have never reported Blockhus for anything until Jan 25, 2021*"; **Why** Lense testified she only opened her case against Blockhus to "*save her job*"; **Why** Lanse testified she "can't come up with a reason nor remember any argument why she would have received threating text messages from Blockhus; **Why** Lense testified, her and Blockhus were always on "*friendly terms*" until Jan. 25, 2021; **Why** Lense testified "*I can't remember if we were intimate after Nov 2020*"; **Why** Lense was never required to substantiate her accusations against Blockhus; **Why** Lense testified she would contacted Blockhus regarding his relationship with Mindy Richard leading to Blockhus filing a harassment claim to United; **Why** Lense testified she wanted to go to Cancun, Mexico with Blockus after the date she claimed Blockhus "threatened" her with text messages; **Why** Lense is heard upset in a recorded phone conversation with Blockhus when he wanted to cancel their second booked trip to Cancun on Nov 9, 2020; **Why** Lense contacted Blockhus over 500 times from Oct. 2020 to Feb. 2021; **Why** Lense was in Blockhus' car recorded on his dashboard camera for months after the date she claimed she recieved "threating" text from Blockhus asking him if she was his "*girlfriend*" and for him to "*stay the night with her*" and going on multiple dates; **Why** Lense was not disciplined for sending threatening messages to Blockhus that she later testified had her phone number on them; **Why** Lense was not disciplined after being recorded on a security camera slashing the tires of the vehicle belonging to Blockhus;

**Why** Lense was not disciplined for violating Blockhus' two year protection order against her; **Why** Lense was never disciplined for posting disparaging remarks about United Airlines on her Face Book, that even included comments from other people encouraging her to remove the post; **Why** Lense was not disciplined for posting a threat against a fellow employee on her twitter page; **Why** did both Mindy Richard and Blockhus file a harassment compaint against Lense; **Why** did Mindy Richard testify she was later force to retract it from fear that she *"could be a victim of retaliation from Lense as Blockhus was and lose my job"* **Why** all of witness, Mindy Richard's letters and testimony supporting Blockhus was ignored and hidden away by United management; **Whether** the case against Blockhus was actually to be paused until the end of his FMLA on April 5, 2021; **Why** United was unable to describe what they actually did to conduct an investigation against Blockhus while he was out on FMLA leave; **Whether** Blockhus had the ability to access the outside world while at the Lakeview treatment facility to the extent that he could participate in an investigatory interview; **Whether** United interfered in Blockhus' protected FMLA status when they sent him a notice to attend their meeting or be disciplined up to termination; **Whether** the decision maker in Blockhus' termination—Hester— credibly denied having information regarding Blockhus' age, disabilities, and medical leave even though this would be displayed on the first page of his company profile additionally, there were several emails that circulated on his medical status. Again, Lense herself was reported to the company for harassment, prohibited post on social media that included threats to another employee, vandalism, receiving a two year protection order against her, and later violating her protection order yet she remains employed. All disputed material facts must be viewed in the light most favorable to Blockhus. Here, based on the facts in the record, Blockhus has established at a minimum a prima facie case for wrongful termination, and for interference with his use of his entitled leave under the FMLA. United has failed to show that there are no genuine issues of material fact such that it is entitled to summary judgment. Based on the facts presented, United has failed to substantiate the allegations against Blockhus. The evidence provided by Ms. Lense was unsubstantiated, United failed to adequately investigate or authenticate the evidence, and it instead retaliated against Blockhus for his disability. Moreover, United fails to show that Blockhus' claims meet the "minor disputes" requirement to be subject to mandatory arbitration under the RLA. Bottom line, the Court should deny United's motion for summary judgment and set the schedule for expert discovery regarding Blockhus' damages and his reinstatement to recover the loss of his 24 year career with United Airlines. Blockhus was treated in the most vial and discriminatory fashion by a team of junior supervisors that went against the directive of the base manager Monique Williams to postpone the Lense case until Blockhus returned from receiving treatment for a very serious disability while on FMLA. Hester's claim he was under a "time restraint" was not credible and should have conducted an actual investigation when Blockhus returned from his FMLA leave on April 5, 2021.

(The court is strongly encouraged to review audio and video from Ex.4,5(abc), and 6(ab) in full before a fair judgement in this case is made.)

## CERTIFICATE OF ORAL ARGUMENT AND WORD COUNT OR PAGE LIMIT

I do want oral argument.

My brief has 13,000 words, 26 pages

Dated: March 30, 2024

*Derek Blockhus*

Respectfully submitted,

*/s/ Derek Blockhus Pro se*
14689 Lee Hwy suite 257
Gainesville, Va. 20156
703-606-1644
derek7768@gmail.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 30, 2024, a true and correct copy of the foregoing was served via electronic mail upon:

Jill S. Vorobiev, Esq.
Reed Smith LLP
10 S. Wacker Dr., Suite 4000
Chicago, IL 60606
Tel: (312) 207-1000
Fax: (312) 207-6400
jvorobiev@reedsmith.com

*Derek Blockhus*

*/s/ Derek Blockhus Pro se*
14689 Lee Hwy suite 257
Gainesville, Va. 20156
703-606-1644
derek7768@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEREK BLOCKHUS,                                )
                                               )
                          Plaintiff,           )        Case No.   22 C 3867
                                               )
        v.                                     )
                                               )        Judge Robert W. Gettleman
UNITED AIRLINES, INC.,                         )
                                               )
                          Defendant.           )

## MEMORANDUM OPINION AND ORDER

Plaintiff Derek Blockhus has sued his former employer, United Airlines, Inc., claiming that his employment was terminated in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et. seq (Count I), the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(2)(A) (Count II), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621 et. seq. (Count III).   Defendant has moved under Fed. R. Civ. P. 56 for summary judgment on all counts.   For the reasons described below, defendant's motion is granted, and judgment is entered in its favor.

## BACKGROUND

Plaintiff worked as a flight attendant for defendant from approximately March 15, 1997, until his termination on February 26, 2021.   His employment was governed by a collective bargaining agreement ("CBA") between defendant and the Association of Flight Attendants – CWA.   In November 2019 plaintiff entered into an intimate/sexual relationship with another flight attendant, Katherine Lense.   At that time Lense was unaware that plaintiff was married.

In early January 2021 plaintiff reached out to Human Resources Manager Vanessa Beiro to complain about a flight attendant who was allegedly creating a hostile work environment for

him.   He withdrew that complaint when he learned that other flight attendants did not want to be

involved as witnesses.   On January 25, 2021, he again reached out to Beiro stating, "Hi again

Vanessa, unfortunately I have a new case, her name is Katherine Lense and this time I will

provide names and file numbers.   I will have the report to you by tomorrow."

Plaintiff and Beiro arranged for a call for February 1, 2021.   Plaintiff did not make that

call, and the following day he wrote to Beiro stating that he was "coordinating with another

flight attendant who plans to register a complaint against the same person and we should be

submitting them very soon."   During this time, plaintiff had heard that Lense was claiming that

she saw plaintiff and another married flight attendant, Mindy Richards "smooching at the

airport," and

that plaintiff and Richards were having an affair.   Plaintiff also claims to have heard that there

was a rumor that he had tried to break into Lense's apartment, and that Lense had to physically

fend him off.   Lense denies saying any of that.

Lense claims that her relationship with plaintiff ended in late summer/fall and they

remained friends until early January.   Plaintiff claims that the relationship ended sometime in

December 2020, and that he ended it.

On January 24, 2021, plaintiff left Lense (who was returning to work after a furlough) a

voicemail message:

> Hey Katherine, this is Derek.   Hope you're doin' OK.   Just heard
> some stuff.   You're saying that I'm stalking and stuff like that and
> also about Mindy, which is scary, but anyways I don't care about
> any of that stuff.   But I just want you to know that's what I heard,
> I heard you were saying that stuff and I don't care.   But I hope
> you're doing good and hope we can just talk.   That'd be nice.
> I'm on a trip right now but I just don't like to, you know, have this
> weird relationship.   It's just not – I mean – not that we have to be

2

friends or nothing but definitely don't want to hear stuff on the line about things like that.  Like I'm stalking you and I was trying to break into your apartment.  Believe it or not I heard that.  That's what people are saying that you're saying.  It's unbelievable. Anyway, that's fine.  Hope you're doin' good, and welcome back to United.  Maybe I'll hear from you, I don't know.  Bye.

When he did not hear from Lense, plaintiff left her another message:

Hey, Katherine. This is Derek. I was really hoping you were going to answer the phone. So, here's the deal. You've pretty much created a hostile working environment for me and, you know, people are calling me crazy and whatnot. It's all because what you are saying about me and I was hoping you and I could talk about it and you did create a hostile work environment for me. I gotta stop it, man, just, I can't take it no more. It's more than a couple people that are talking about it and they're all saying it's you. So, I was hoping we could talk about it. I would rather talk to you about it, not HR, cause HR would open a disciplinary investigation against you and bring in all your friends and no one's gonna be happy hearing that. And, on top of that, you're trying to ruin Mindy's marriage at work and she might file charges against you, as well, so, just call me. Let's get this over with because it's gonna get ugly. And, everybody's says it's you and they're gonna bring in people like Karen Martinez, especially her. A lot of people are talking and, like I said, I can't come to work this way. It's affecting my job. HR, if they get involved, it's not gonna get good and you are just coming back to work and I don't think you want to come back to work under investigation, so, please call me. I don't want Mindy to press charges either. So, let's get this cleared up. Thanks. Bye.

After receiving that message, Lense felt shaken and considered it threatening in relation to her job.  She contacted her Base Manager who directed her to Ethics and Compliance.  She spoke with Corporate Security Senior Manager, Harassment and Discrimination Investigations, Kimberly Phillips.  She sent Phillips screenshots of text messages she stated were sent by plaintiff, as well as the January 25th voicemail.  Included in the screenshots of text messages were:

3

Not a good way to be known for any longer with united
I'll f*** you for a trip
[***]
You w[an]t[] to make sure everyone at United know you'll f***
for a trip
[***]

Sun, Oct 11[,] [2020]
Call me right now or I'm going to do something that will horrify
you
5
4
3
2
[***]
I'm going to give you one more chance to answer my call.
One more
Then your dad will hear from me with pics
[***]

[January 25, 2021]
Katherine, going to call you in about 30 min and it's very
important you answer.
This call is in regards to your job with United
[***]
Be ready to be horrified
Better call me right now
[***]
Here's what[']s going out [t]o your family
[***]
I[']m going to call you one more time, you don't answer, [I']m
texting a video to your dad[']s
friend
[***]
Call me right now
Done with being nice
You do realize, your dad and all his friends are going to get nudes
of you? Because you
treated my like sh**. You better call me because I'm sick of this
bullsh**.
10
[***]
I'll be there tomorrow with a big box and I want it all back. Done
with the disrespect.

4

Give it all back, or well you know
[***]
Call me now or I will be there when I land tomorrow and I want
everything
Ok put everything in a box [I']ll be there tomorrow
Airpods and all
No one uses me
No one uses me

Mon, Oct 12, 5:53 AM
Sorry about the threats but unfortunately that[']s [the] only way
you will answer my call or text these days.

Plaintiff now denies that he sent the text messages or that any part of the messages

affirmatively identifies him or his cell phone number.   On the morning of February 4, 2021,

plaintiff spoke with Performance Support Supervisor Kayla Howell because he had learned that

he was under investigation.   That same day he received an email sent by Performance

Supervisor Frank Hester including a Letter of Investigation ("LOI") for Performance prepared by

Howell, informing plaintiff that in accordance with the Flight Attendant Agreement, a meeting

would be conducted on Monday, February 8 at 11:00 a.m. via Microsoft Teams to investigate the

text messages.   The letter included examples of the texts listed above.

After receiving the LOI plaintiff went home because he was placed "out of service."   He

left a voicemail for Howell stating:

> Hey Kayla. This is Derek. I just got the email saying the
> reason why I'm being investigated. It's ridiculous. That's an ex-
> girlfriend I used to date, who we had a weird relationship, and she
> was like – I mean, it's completely – I can explain this whole thing,
> my text message. There's a reason --- anyways. I am so glad – I am
> so relieved that this what it is. I can't imagine what else it could
> have been. So anyway – so, basically, I threat – she was ending –
> sending out rumors about me to United, and I threatened to go to
> HR, and that's why she did this. And I – I mean, I threatened, but I
> would never do that because I do still care about her. And because

5

> I threatened, I don't know if that's why she did it. I have witnesses,
> and I have voice recordings of myself and messages with her
> saying that, please, don't talk –make – spread rumors about me and
> – me and another flight attendant and things of that nature. And I
> did mention to her I was going to go to HR, because she was
> putting things into United. Those messages between me and her
> were private, you know, in our private line. So I don't know how
> that works with United. And there's a – there's a huge back story
> to that. So this is easily fixed. Thank you very much.

On February 5, 2021, the day after receiving the LOI, plaintiff filed a complaint against

Lense.   He and Richards collaborated on and emailed similar statements to Beiro indicating that

after he tried to reach out to Lense about the rumors, "she immediately dug up an old text from

an argument they had a few months ago and tried to now claim harassment against me to HR."

Two days later he wrote to Beiro withdrawing his case against Lense effective immediately"

stating:

> We believe [Lense] … dug up information from a horrible alcohol
> and passion fueled argument we had about three months ago that I
> had no idea existed. I do feel I need to explain that text, I have no
> recollection of writing or sending it, in fact I could not even read it
> as it made my stomach nauseous. However, I do see how it could
> have been constru[]ed. . . . Again, this night was completely
> regrettable, reckless and out of control. This was an absolutely
> regretful and painful night of which I have since sought help with
> my primary caregiver . . . .

On February 8, 2021, plaintiff sent a written statement to members of the Union, as well

as Beiro, Base Manager Bell and others at United stating:

> I am painfully aware that the preconception of me coming into this
> hearing today is not good, and in fact dreadful. Any exchange of
> words that night three months ago between Ms. Lense and myself
> were strictly out of anger and frustration during a heated alcohol
> fueled argument and absolutely, not an attempt to sexually harass
> my dear friend M[s]. Lense. Ms. Lense and I did have a fight that
> night, I did say ugly regretful things, and I acted like a stupid
> teenager . . . In no way do I condone any form of sexual

harassment. I now do realize the dangers of word choice. I admit I
regretfully used a poorest choice of word while arguing with Ms.
Lense that
night however I categorically would never sexually harass anyone.

I do feel I should address the text message submitted with the
complaint as it is so very disturbing. I could not even finish
reading it as it made my stomach nauseous. This was three months
ago and though I have no recollection of sending it, I do see how it
could have been constru[]ed. I do realize the seriousness of the
charges
brought on to me by Ms. Lense and I pray the committee will
consider all mitigating circumstances. Both the timing of the clime
[sic] and the fact that we remained good friends long after that
night. I am only human and sometimes even at age 52, being under
the influence of too much alcohol or elevated emotions we can say
the
most adolescent, senseless and regretful things we do not mean
during a passionate argument.

Ms. Lense is an amazing flight attendant with an incredible work
ethic and has a bright f[u]ture. I am pleading to Ms. Lense for the
forgiveness of my poor choice of words; the remorse I feel is
incomprehensible.

A few hours later, plaintiff sent another email to the same people, stating "Im sorry

Please disregard, I will send you a final draft shortly.   Sorry I have not slept in 4 days and it is

difficult to concentrate."   He never sent a "final statement."

To prepare for the scheduled February 8 LOI meeting, Howell sent plaintiff and the

Union   a packet of exhibits that included the LOI, the January 25 voicemail provided by Lense,

plaintiff's statement and request to withdraw his complaint against Lense, and information about

Senior Investigator, Harassment & Discrimination Investigations John McCormick having been

assigned the investigation into Lense's complaint.   Plaintiff claims he never saw this email.

Plaintiff met with the Union before the scheduled LOI meeting.   He was very anxious

and having bad anxiety attacks, so the Union connected him with the Employee Assistance

7

Program ("EAP").   He told the EAP he suffered from alcoholism, so it connected him with a

rehab facility in Florida.   He checked into that facility on February 10, 2021.   Before checking

in he suggested to Richards that she withdraw her complaint against Lense, which she did.

After receiving Richard's message as well as a voicemail message from plaintiff, the Employee

Relations Department informed Biero that it was closing the investigation into plaintiff's

complaint.

On February 11, 2021, Lense sent McCormick additional information about further

contact plaintiff had initiated while under investigation, including a handwritten note plaintiff

left on Lense's car on February 4th stating "Katherine Please I am about to be fired because of

your report.   Please I beg you to retract it.   I will lose my job! Please! Help me! Sorry to contact

you this way."

Lense also provided McCormick with text messages plaintiff sent to her similar to the

handwritten note asking her to retract her report, a voicemail left on February 5th from an

attorney hired by plaintiff stating he wanted to see if they could resolve their differences, and an

email sent to her on February 8th at her United email address from plaintiff's wife with the

subject line "Derek's wife" and providing her telephone number if she wanted to "chat for a bit."

The following day, February 11, Hester sent emails to plaintiff and the Union

enclosing:1) a letter from Howell directing plaintiff to refrain from contacting Lense and to

provide United Medical with documentation substantiating his medical inability to attend the

February 8 meeting and to attend a rescheduled meeting set for February 15th via Teams; and 2) a

revised LOI letter rescheduling the meeting to February 15 to discuss the February 4 LOI as well

as plaintiff's attempts to contact Lense after receiving the LOI.   Neither Howell nor Hester

knew that plaintiff would be medically unavailable to attend a Teams meeting.   Plaintiff was not

checking his United email while in rehab and did not receive the emails or attend the meeting.

On February 16, United Medical approved plaintiff's FMLA leave.

Defendant proceeded with the investigation claiming that the serious nature of the

allegations and CBA deadlines required it to do so.   On February 22, 2021, McCormick

prepared a Statement Of Findings, concluding that plaintiff had sent threatening and harassing

communications via text and voicemail to Lense, admitted threatening Lense in a voicemail to

Howell and sending the texts in his statement, as well as contacting Lense after being informed

of the LOI.   On February 26, 2021, Hester informed the Union that defendant was proceeding

with plaintiff's termination.   On March 3rd Hester sent plaintiff a letter explaining how his

conduct violated the "Working Together Guidelines" and defendant's Harassment and

Discrimination Policy, and terminating plaintiff's employment effective February 26th.

The Union grieved plaintiff's termination, arguing that plaintiff had not been able to

attend an investigatory meeting.   The grievance was pursued into arbitration, at which time

plaintiff abandoned it.   After plaintiff completed rehab, Phillips interviewed him in relation to

his complaint against Lense and concluded that Lense had credibly brought her concerns to the

company based on the messages she had received and not in retaliation for plaintiff having filed

a complaint against her.

## **DISCUSSION**

Defendant has moved for summary judgment on all counts.   Summary judgment is

appropriate when "the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The movant bears

the burden, and the court must view all facts in the light most favorable to the nonmovant and draw all reasonable inferences in its favor.   See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).   But the nonmovant must do more than raise "some metaphysical doubt as to the material facts."   Id. at 586.   Rather, the nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

Defendant first argues that all of plaintiff's claims are preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq.   The RLA, which governs railroads and airlines, was passed to provide for "the prompt and orderly settlement" of labor disputes in those industries. Carlson v. CSX Transp., Inc., 758 F.3d 819, 831 (7th Cir. 2014).   The RLA requires that so called "minor disputes" be resolved in arbitration before an adjustment board established by the employer and union.   Id.   Minor disputes are those that grow "out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions."   Id.   Put more simply, minor disputes are those that are grounded in a collective bargaining agreement.   Id.   The Supreme Court has held that a claim based on a right that is independent of a collective bargaining agreement is not subject to mandatory arbitration.   A claim is independent if it cannot be conclusively resolved by interpreting the collective bargaining agreement.   Id. (citing Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 263 (1994)). Further, even if a claim does not arise under a collective bargaining agreement, the RLA may still preclude it if "its resolution depends on the disputed meaning of or requires interpretation of contract terms."   Rabe v. United Air Lines, Inc., 636 F.3d 866, 872 (7th Cir. 2011).

10

In the instant case, defendant argues that plaintiff's claims are preclude because each is dependent on an allegation that defendant failed to properly investigate the claims and failed to allow him to appear at an investigatory meeting, which is governed by the CBA. It is true that much of plaintiff's complaint is based on allegations of a faulty investigation. The introduction to his brief provides that "United failed to conduct a thorough investigation . . .", and "United, based on an incomplete and biased investigation that did not even include an interview of [plaintiff] . . .." Nonetheless, the court disagrees with defendant's assertion that the claims are precluded by the RLA. Resolution of the claims does not require an interpretation of the CBA, and a conclusion that defendant complied with the provisions of the CBA governing investigations would not resolve the claims. Even if defendant complied with all the provisions governing the investigation, it could still have terminated plaintiff based on his age, disability, or having taken FMLA leave. The issue is whether defendant took the actions it did because plaintiff was an older worker, had a disability, or in retaliation for having taken FMLA leave, not whether the investigation was complete. Those claims require inquiry into defendant's motive, not any provision of the CBA. See e.g. Coleman v. Soo Line Railroad, 2022 WL 4465902 at * 4-5 (ND. Ill. Sept. 26, 2022) ("In short, Plaintiff's claims as pled derive from Title VII rather than from any rights he had under the CBA and they turn on a factual inquiry into Defendant's motives for its adverse actions.").

Next, defendant argues that plaintiff has failed to present any evidence of discrimination under either the ADA, or ADEA. The court agrees. At the summary judgment stage, the court asks whether a reasonable jury could conclude that plaintiff's age or disability was the cause of his termination. Ortiz v. Werner Enters., Inc., 834 F.3d 760, 764 (7th Cir. 2016). He can rely

11

on two separate frameworks to show discrimination.   Under what has become known as the

holistic approach, plaintiff "can point to sufficient evidence in the record, whether called direct,

indirect, or circumstantial, from which a reasonable jury could conclude that defendant fired him

because of his age or disability."   Rogers v. Chi. Bd. of Educ., 261 F. Supp. 3d 880, 888-89

(N.D. Ill 2017) (citing Ortiz, 834 F.3d at 764).   Under the burden-shifting framework set out in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), plaintiff must first establish a prima

facie case for discrimination, which requires evidence that plaintiff was meeting defendant's

legitimate expectations.   The burden then shifts to defendant to present a "legitimate non-

discriminatory reason" for its decision.   If defendant presents a legitimate reason, the burden

shifts back to plaintiff to show the proffered reason is a pretext for discrimination.   Bless v.

Cook County Sheriff's Office, 9 F.4th 565, 574 (7th Cir. 2021).   "The defense bears the burden

of articulating the justification, but the plaintiff bears the burden of showing that the justification

is a pretext."   Sterlinski v. Catholic Bishop of Chi., 934 F.3d 568 571 (7th Cir. 2019).

   If the employer raises the employee's performance as the reason for the employment

decision, the court can skip the prima facie analysis, and proceed directly to pretext, because the

issue of satisfactory performance and pretext overlap. Bragg v. Munster Med. Rsch. Found. Inc.,

58 F.4th 268, 271 (7th Cir. 2023).   "Pretext does not require that plausible facts presented by the

defendant not be true, only that they not be the reason for the employment decision."   Hasham

v. California State Bd. of Equalization, 200 F.3d 1035, 1045 (7th Cir. 2000).

   Plaintiff first relies on the McDonnel Douglas framework to establish a prima facie case

of discrimination.   Defendant does not dispute that plaintiff is over 40 years old and suffers from

the disabilities of severe alcohol dependency and generalized anxiety disorder.   He obviously

suffered an adverse employment action when he was terminated from his position.   Defendant

does dispute, however, that plaintiff was meeting defendant's legitimate performance

expectations, or that he was treated differently than other employees outside of the protected

classes.

Plaintiff argues that the fact that from the time of his hire in 1997 until February 2021 he

had received only two performance warnings shows that he was meeting defendant's legitimate

expectations.   As defendant points out, however, the question is not whether he ever satisfied

defendant's expectations, but whether he was meeting defendant's expectations at the time of the

adverse action.   Zayas v. Rockford Mem'l Hosp., 740 F.3d 1154, 1158 (7th Cir. 2014).   And

defendant has never argued that plaintiff's actual performance as a flight attendant suffered.

Instead, defendant terminated plaintiff because of his failure to comply with the requirements of

defendant's Working Together Guidelines and Harassment and Discrimination Policy.

Plaintiff argues that the court should ignore McCormick's finding that plaintiff threatened

and harassed Lense because McCormick relied exclusively on Lense's evidence, failed to take

any steps to authenticate or verify the documentary evidence (texts) that Lense submitted, and

was unable to assess Lense's credibility because he spoke to her only over the telephone.   But,

although he now denies sending the threatening texts to Lense, plaintiff admitted sending them in

his voicemail to Howell and his February 28, 2021, written submission.   Thus, there was really

no reason for McCormick to go to lengths to verify what plaintiff had already admitted.

Moreover, even if plaintiff could somehow establish that he was meeting defendant's

expectations, there is no evidence that defendant's reason for terminating plaintiff was a pretext

for either age or disability discrimination.   There is simply no doubt that based on the

13

information it had, defendant had a legitimate reason for its actions, and plaintiff has presented

nothing to suggest that the reason is "a lie, specifically a phony reason for some employment

action."  Hasham, 200 F.3d at 1045.

Plaintiff argues that McCormick's failure to thoroughly investigate is evidence of pretext

for discrimination.   But there is simply no evidence to suggest that defendant did not have an

honest belief that plaintiff had threatened and harassed Lense, something he admitted doing.

Consequently, the court concludes that plaintiff has failed to carry his burden under the

McDonnell Douglas framework.

Moreover, although plaintiff has not attempted to rely on the holistic approach, there is

simply no evidence in the record, direct, indirect, or circumstantial, from which a reasonable jury

could conclude that plaintiff was terminated because of his age or disability.   He has failed to

identify any ageist remarks by anyone, let alone Hester, who was the final decision-maker.   The

same is true regarding his disabilities.   Indeed, there is no evidence that Hester had any

knowledge of or the severity of plaintiff's disabilities.   He knew only that plaintiff was

"medically unavailable" for the scheduled meetings.   Additionally, both McCormick's

investigation and Hester's decision to terminate were reviewed by a Corrective Investigation

Committee comprised of individuals from Inflight Management, Human Resources, Labor

Relations, Legal, and Internal Audit, whose function is to ensure the defendant is consistent in

issuing discipline.   There is no evidence that the committee based its decision on plaintiff's age

or disabilities.   Consequently, the court grants defendant's motion for summary judgment on

Counts I and III.

In Count II plaintiff alleges that defendant denied him FMLA benefits by terminating him while he was on FMLA leave. He also alleges that he was terminated because he exercised his rights under the FMLA. As defendant points out, however, although termination can constitute a denial of FMLA benefits, see Nicholson v. Pulte Homes Corp., 690 F.3d 819, 827 (7th Cir. 2012), an employer may rebut such a claim with evidence that the employee would have been terminated regardless of whether he took leave. Pagel v. TIN Inc., 695 F.3d 622, 629 (7th Cir. 2012). "Thus, employers may fire employees for poor performance if they would have fired them for their performance regardless of their having taken leave." Ogborn v. United Food and Comm. Workers Union, Local No. 881, 305 F.3d 763, 768 (7th Cir. 2002). That is precisely what the undisputed evidence shows in the instant case.

Finally, there is no evidence that defendant terminated plaintiff in retaliation for taking leave. An FMLA retaliation claim requires plaintiff to present evidence that: 1) engaged in protected activity; 2) suffered an adverse action; and 3) a causal connection exists between the two. Lutes v. United Trailers, Inc., 950 F.3d 359, 368 (7th Cir. 2020). Evidence of a causal connection may include suspicious timing, ambiguous statements or behavior towards other employees in the protected group, evidence, statistical or otherwise that similarly situated employees outside the protected group systematically received better treatment, and evidence that the employer offered a pretextual reason for the action taken. Rowlands v. United Parcel Ser. Fort Wayne v. United Parcel Ser. Fort Wayne, 901 F.3d 792, 801-02 (7th Cir. 2018).

Plaintiff argues that his termination during his FMLA period is evidence of a causal connection. But, as noted above, the FMLA does not prohibit termination during an employee's leave if it is otherwise appropriate. Anderson v. Nations Lending Corp., 27 F.4th 1300, 1306 (7th

15

Cir. 2022).   That is precisely what the evidence shows in the instant case, particularly since

plaintiff was issued the LOI before he started leave.   In short, the record is devoid of any

evidence that plaintiff was terminated for having applied for and taken FMLA leave.

Consequently, the court grants defendant's motion for summary judgment on Count II.


## CONCLUSION

For the reasons described above, defendant's motion for summary judgment [40] is

granted.


ENTER:


Robert W. Gettleman
United States District Judge

DATE:    December 19, 2023

16

## IN THE UNITED STATES DISTRICT COURT
### FOR THE
### NORTHERN DISTRICT OF ILLINOIS

DEREK BLOCKHUS,

Plaintiff,

v.

UNITED AIRLINES, INC.,

Defendant.

Case No.  22 CV 3867

Judge Robert W. Gettleman

### JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐　　　in favor of plaintiff(s)
　　　and against defendant(s)
in the amount of $

　　　　　　which ☐ includes  pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

---

☒　　　in favor of Defendant (s), UNITED AIRLINES, INC.,

　　　and against Plaintiff (s)  DEREK BLOCKHUS,

Defendant(s) shall recover costs from plaintiff(s).

---

☐　　　other:

---

This action was *(check one)*:
☐ tried by a jury with Judge　　presiding, and the jury has rendered a verdict.
☐ tried by Judge　　without a jury and the above decision was reached.
☒ decided by Judge Robert W. Gettleman on a motion.

Date:  12/19/2023

Thomas G. Bruton, Clerk of Court

Claire E. Newman, Deputy Clerk