No. 24-1043

---

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

DEREK BLOCKHUS,

<div align="right">Plaintiff-Appellant,</div>

    v.

UNITED AIRLINES, INC.,

<div align="right">Defendant-Appellee.</div>

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
Case No. 22 cv 3867
The Honorable Robert W. Gettleman, Judge Presiding

————

## BRIEF OF DEFENDANT-APPELLEE

————


REED SMITH LLP
Jill S. Vorobiev
M. Patrick Yingling
Attorneys for the
Defendant-Appellee


10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606
(312) 207-1000

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-1043

Short Caption: Derek Blockhus v. United Airlines, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

United Airlines, Inc.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Reed Smith LLP

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

      United Airlines Holdings, Inc.

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      United Airlines Holdings, Inc.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: Jill S. Vorobiev     Date: January 17, 2024

Attorney's Printed Name: Jill S. Vorobiev

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☑   **No** ☐

Address: 10 South Wacker Drive, 40th Floor

Chicago, Illinois 60606

Phone Number: (312) 207-1000      Fax Number: (312) 207-6400

E-Mail Address: jvorobiev@reedsmith.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-1043

Short Caption: Derek Blockhus v. United Airlines, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

United Airlines, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Reed Smith LLP

(3)    If the party, amicus or intervenor is a corporation:

     i)       Identify all its parent corporations, if any; and

         United Airlines Holdings, Inc.

     ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         United Airlines Holdings, Inc.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: M. Patrick Yingling       Date: April 30, 2024

Attorney's Printed Name: M. Patrick Yingling

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 10 S. Wacker Dr., 40th Fl., Chicago, IL 60606

Phone Number: (312) 207-1000       Fax Number: (312) 207-6400

E-Mail Address: mpyingling@reedsmith.com

rev. 12/19 AK

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................... 1

JURISDICTION ...................................................................................... 2

ISSUES PRESENTED ............................................................................. 3

STATEMENT OF THE CASE ................................................................... 4

A.     Factual Background ................................................................... 4

  1.     Blockhus's Role at United ................................................ 4

  2.     The Collective Bargaining Agreement ............................. 5

  3.     Complaints ........................................................................ 6

B.     Procedural Background ............................................................ 15

  1.     Commencement of the Case ............................................ 15

  2.     Summary Judgment ......................................................... 15

SUMMARY OF ARGUMENT ................................................................ 18

ARGUMENT .......................................................................................... 19

I.     STANDARD OF REVIEW ........................................................... 19

II.    THE DISTRICT COURT PROPERLY ANALYZED BLOCKHUS'S AGE
       AND DISABILITY DISCRIMINATION CLAIMS AND GRANTED
       SUMMARY JUDGMENT .............................................................. 20

  A.     Applicable Legal Standard..................................................... 20

  B.     Blockhus Cannot Meet the *McDonnell Douglas* Test ........... 21

    1.     Blockhus Cannot Make Out a Prima Face Case of
           Discrimination ................................................................ 21

    2.     Blockhus Cannot Overcome United's Legitimate,
           Nondiscriminatory Reasons for Terminating Blockhus or
           Show They are Pretextual................................................ 25

  C.     Blockhus's Evidence as a Whole is Insufficient ................... 28

**TABLE OF CONTENTS**
**(Cont.)**

**Page**

III.    THE DISTRICT COURT PROPERLY GRANTED UNITED'S MOTION
        FOR SUMMARY JUDGMENT ON BLOCKHUS'S FMLA
        INTERFERENCE CLAIM .................................................................................. 30

IV.    THE DISTRICT COURT PROPERLY GRANTED UNITED'S MOTION
        FOR SUMMARY JUDGMENT ON BLOCKHUS'S FMLA
        RETALIATION CLAIM .................................................................................. 32

CONCLUSION ............................................................................................................. 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adebiyi v. S. Suburban Coll.*,
No. 22-2516, --- F. 4th ---, 2024 U.S. App. LEXIS 9293 (7th Cir. Apr. 17, 2024) ................................................................................................ 22

*Anderson v. Nations Lending Corp.*,
27 F.4th 1300 (7th Cir. 2022) ............................................ 30, 31, 33, 34

*Betco Corp. v. Peacock*,
876 F.3d 306 (7th Cir. 2017) ........................................................... 32

*Black v. Wrigley*,
997 F.3d 702 (7th Cir. 2021) ........................................................... 32

*Blise v. Antaramian*,
409 F.3d 861 (7th Cir. 2005) ........................................................... 25

*Boss v. Castro*,
816 F.3d 910 (7th Cir. 2016) ........................................................... 19

*Boston v. U.S. Steel Corp.*,
816 F.3d 455 (7th Cir. 2016) ........................................................... 25

*Brooks v. Avancez*,
39 F.4th 424 (7th Cir. 2022) ................................................ 20, 26, 29

*Chatman v. Bd. of Educ. of Chi.*,
5 F.4th 738 (7th Cir. 2021) ............................................................. 25

*Davis v. Time Warner Cable of Se. Wis., L.P.*,
651 F.3d 664 (7th Cir. 2011) ........................................................... 26

*Ellis v. UPS, Inc.*,
523 F.3d 823 (7th Cir. 2008) ........................................................... 23

*Fortier v. Ameritech Mobile Commc'ns, Inc.*,
161 F.3d 1106 (7th Cir. 1998) ................................................... 21, 22

*Greenbank v. Great Am. Assur. Co.*,
47 F.4th 618 (7th Cir. 2022) ........................................................... 31

*Hall v. Bodine Elec. Co.*,
276 F.3d 345 (7th Cir. 2002) ........................................................... 23

**TABLE OF AUTHORITIES**
**(Cont.)**

*Harris v. City of Harvey,*
  No. 12 C 10370, 2014 U.S. Dist. LEXIS 142939 (N.D. Ill. Oct. 8, 2014) ................................................................................................ 22

*Hasham v. Cal. State Bd. of Equalization,*
  200 F.3d 1035 (7th Cir. 2000) .................................................... 16, 25

*Igasaki v. Ill. Dep't of Fin. & Prof'l Regul.,*
  988 F.3d 948 (7th Cir. 2021) ............................................................ 21

*Khungar v. Access Cmty. Health Network,*
  985 F.3d 565 (7th Cir. 2021) ............................................................ 34

*Kidwell v. Eisenhauer,*
  679 F.3d 957 (7th Cir. 2012) ............................................................ 34

*Luster v. Ill. Dep't of Corr.,*
  652 F.3d 726 (7th Cir. 2011) ............................................................ 26

*Lutes v. United Trailers, Inc.,*
  950 F.3d 359 (7th Cir. 2020) ...................................................... 32, 33

*Marshall v. Ind. Dep't of Corr.,*
  973 F.3d 789 (7th Cir. 2020) ............................................................ 26

*McDonnell Douglas Corp. v. Green,*
  411 U.S. 792 (1973) .................................................................*passim*

*Ogborn v. United Food and Comm. Workers Union, Local No. 881,*
  305 F.3d 763 (7th Cir. 2002) ............................................................ 30

*Ortiz v. Werner Enterprises, Inc.,*
  834 F.3d 760 (7th Cir. 2016) .............................................. 15, 20, 28

*Packer v. Trs. of Indiana Univ. Sch. of Med.,*
  800 F.3d 843 (7th Cir. 2015) ............................................................ 20

*Radue v. Kimberly-Clark Corp.,*
  219 F.3d 612 (7th Cir. 2000) ...................................................... 22, 23

*Richards v. Wilkie,*
  No. 18 C 354, 2020 U.S. Dist. LEXIS 177187 (N.D. Ill. Sep. 27, 2020) ................................................................................................ 33

*Rowlands v. United Parcel Serv. – Fort Wayne,*
  901 F.3d 792 (7th Cir. 2018) ............................................................ 33

# TABLE OF AUTHORITIES
## (Cont.)

*Russell v. Acme-Evans Co.,*
  51 F.3d 64 (7th Cir. 1995) ................................................. 26

*Sanchez v. City of Chi.,*
  880 F.3d 349 (7th Cir. 2018) ............................................ 32

*Scott v. Edinburg,*
  346 F.3d 752 (7th Cir. 2003) ............................................ 23

*Shipley v. Chi. Bd. of Election Comm'rs,*
  947 F.3d 1056 (7th Cir. 2020) .......................................... 28

*Skiba v. Ill. Cent. R.R. Co.,*
  884 F.3d 708 (7th Cir. 2018) ............................................ 29

*Stockwell v. City of Harvey,*
  597 F.3d 895 (7th Cir. 2010) ............................................ 25

*Vaughn v. Vilsack,*
  715 F.3d 1001 (7th Cir. 2013) .......................................... 26

*White v. City of Chi.,*
  829 F.3d 837 (7th Cir. 2016) ............................................ 20

## Statutes

28 U.S.C. § 1291 ................................................................. 3

28 U.S.C. § 1331 ................................................................. 3

29 U.S.C. § 621 ............................................................... 3, 15

29 U.S.C. § 2601 ............................................................. 2, 15

42 U.S.C. § 12101 ........................................................... 2, 15

## INTRODUCTION

This case involves the claims of Derek Blockhus, a former flight attendant at United who was terminated for admittedly sending threatening messages to another flight attendant in violation of United's Working Together Guidelines and Harassment policy. Blockhus sued United for age and disability discrimination and violations of the Family and Medical Leave Act.

The district court correctly found that Blockhus failed to adduce sufficient evidence to support his claims of age and disability discrimination. Blockhus admitted in a voicemail to his supervisor and in a written submission to United that he had sent threatening texts to flight attendant Katherine Lense. While he now disputes that he sent the text messages, at the time of United's investigation into the claims he did not. Moreover, Blockhus has no evidence that United treated anyone differently under similar circumstances; nor can he refute the legitimate, nondiscriminatory reasons he was terminated. There is no evidence of ageist remarks or that his supervisor had any knowledge of his purported disabilities. The decision to terminate was reviewed by a full committee whose purpose is to ensure United is consistent in issuing discipline. On appeal, Blockhus argues that his employment record was virtually unblemished prior to his termination, but the relevant inquiry is whether Blockhus was meeting United's expectations at the time of his termination, which he was not.

With respect to Blockhus's FMLA interference claim, Blockhus argues that the mere fact that he was terminated while on FMLA leave proves unlawful interference. However, as the district court properly found, the FMLA does not

prohibit termination of employment during an employee's leave if termination is otherwise appropriate. Because it is undisputed that Blockhus admitted sending threatening messages to Lense, termination in this case was appropriate.

The district court also properly entered summary judgment in United's favor on Blockhus's FMLA retaliation claim because the record was "devoid of any evidence that [Blockhus] was terminated for having applied for and taken FMLA leave." R. 60 at 16. While Blockhus emphasizes that his termination occurred while on FMLA leave, the investigation into his activities began before he started FMLA leave, and his termination was based on inappropriate admitted conduct. Moreover, Blockhus forfeited this claim by failing to develop it before the district court.

In sum, the district court properly granted United's motion for summary judgment because Blockhus failed to adduce sufficient evidence to support his discrimination, interference and retaliation claims. This Court should affirm the district court's grant of summary judgment in United's favor as to all of Blockhus's claims.

## JURISDICTION

Blockhus's jurisdictional statement is not complete and correct, although United does not contest Blockhus's statement that both the district court and this Court have proper jurisdiction.

Blockhus filed a three-count complaint against United alleging employment discrimination claims pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*; the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*;

and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq. See* R. 1.[1]
The district court had jurisdiction over Blockhus's claims pursuant to 28 U.S.C.
§ 1331. R. 11 at ¶ 1.

United is incorporated in the state of Delaware and has its principal place of
business in Illinois. R. 11 at ¶ 5.

On December 19, 2023, the district court granted summary judgment to
United on all of Blockhus's claims. *See* R. 60-61. On January 10, 2024, Blockhus
filed a notice of appeal from the December 19, 2023 order granting summary
judgment to United. *See* R. 63.

This Court has jurisdiction over the appeal from a final judgment pursuant to
28 U.S.C. § 1291.

### ISSUES PRESENTED

1.      Whether the district court correctly entered summary judgment in
United's favor on Blockhus's age and disability discrimination claims where
Blockhus failed to adduce sufficient evidence that his age or disability caused his
termination.

2.      Whether the district court correctly entered summary judgment in
United's favor on Blockhus's FMLA interference claim where the undisputed

---

[1] Blockhus filed an appendix that lacks any indication of whether and where
the documents contained within the appendix were filed in the district court. The
appendix also lacks consecutive numbering. For ease of reference, United cites to
the district court docket entries in the form of "R. __," with the inserted number
corresponding to the ECF number in the district court. United cites to Blockhus's
brief to this Court as "Br. at __."

evidence showed that Blockhus would have been fired regardless of Blockhus having taken leave.

3.     Whether the district correctly entered summary judgment in United's favor on Blockhus's FMLA retaliation claim where there is no evidence that Blockhus was terminated for having applied for and having taken FMLA leave.

## STATEMENT OF THE CASE

### A.     Factual Background

#### 1.     Blockhus's Role at United

Blockhus (born June 1968) worked as a flight attendant at United out of the Washington Dulles International Airport in Dulles, Virginia from approximately March 15, 1997 through his termination on February 26, 2021. R. 55-1 at ¶ 1.[2] Other than being given performance warnings in 2009 and 2014, Blockhus received satisfactory performance marks at United until his termination. R. 57 at ¶ 2. United terminated Blockhus's employment after Blockhus admitted to sending threatening and harassing communications via text and voicemail to a female flight attendant (Katherine Lense) with whom he had been romantically involved and, after having been informed of an investigatory meeting, sent text messages to Lense and left a note on her car windshield requesting that she retract her complaint about him, in violation of United's Working Together Guidelines in the areas of

---

[2] United cites to its Response to Plaintiff's Statement of Additional Material Facts (R. 57) and Plaintiff's Response to United's Statement of Material Facts as to Which There is no Genuine Issue (R. 55-1) for all undisputed facts.

Responsibility, Dignity and Respect and Professionalism, as well as United's

Harassment and Discrimination Policy. R. 55-1 at ¶ 57.

### 2.     The Collective Bargaining Agreement

Blockhus's employment was governed by a collective bargaining agreement

between United and the Association of Flight Attendants (the "AFA" or "Union")

("CBA"). R. 55-1 at ¶ 6. Section 23(A), Investigations & Grievances, of the CBA

provides, inter alia:

> 1. When the Company conducts an investigation which may lead to disciplinary action or discharge, the Flight Attendant shall be entitled to Union representation, if reasonably available (or representation by another employee if requested by the Flight Attendant), and *an opportunity to present information* relevant to the investigation.
>
> 2. In the event of any action or inaction by a Flight Attendant that may reasonably lead to discharge, the Flight Attendant shall be notified in writing of the precise charges being investigated, the Flight Attendant's right to have a Union representative or other employee present during *any* meetings to discuss the charges, and the Flight Attendant's right to respond to the charge(s) and present information relevant to the investigation.
>
>> a. The Company *shall* schedule an investigatory meeting to be held within ten (10) days of the notification in writing. At the Flight Attendant's request, if necessary for the Flight Attendant to secure the presence of a Union representative, witnesses and information to respond to the charge(s), the meeting *may* be rescheduled. Except by mutual agreement, the meeting *shall not* be rescheduled to later than fifteen (15) days after the initial notification in writing.
>
> [***]
>
> 7. A Flight Attendant shall not normally be disciplined later than thirty (30) days from the time Inflight management has reasonable first knowledge of the incident giving rise to the discipline. In the event a Flight Attendant requests to postpone an investigatory meeting, or is on leave of absence, furlough or vacation of more than fourteen (14) days, during this thirty (30) day period, such thirty (30) day period *may be*

*extended* by a period equal to the length of the meeting postponement, leave of absence, furlough, or vacation.

R. 55-1 at ¶ 7 (emphasis added). The CBA does not require an investigatory meeting be held. *Id*. at ¶ 8.

### 3.     Complaints

In November 2019, Blockhus and Lense (approximately 30 years old at the time) started dating while Blockhus was married to someone else, unbeknownst to Lense. R. 55-1 at ¶ 15. Lense claims her relationship with Blockhus ended in late summer/fall 2020 and that they remained friends until early January 2021, while Blockhus claims he ended the relationship in December 2020. *Id*. at ¶ 18.

Blockhus and Lense stopped communicating in early 2021. R. 42 at ¶ 18. Around this time, Blockhus heard rumors that Lense had told another flight attendant that Blockhus was having an affair with a married flight attendant (Mindy Richards) and that he had tried to break into Lense's apartment. R. 55-1 at ¶ 17. Lense denies these claims. *Id.*

On January 24, 2021, Blockhus left Lense—who was returning to United after having been on furlough—a voicemail message because he wanted to start a dialogue with her about what he was hearing, which stated:

> Hey Katherine, this is Derek. Hope you're doin' OK. Just heard some stuff. You're saying that I'm stalking and stuff like that and also about Mindy, which is scary, but anyways I don't care about any of that stuff. But I just want you to know that's what I heard, I heard you were saying that stuff and I don't care. But I hope you're doin' good and hope we can just talk. That'd be nice. I'm on a trip right now but I just don't like to, you know, have this weird relationship. It's just not – I mean – not that we have to be friends or nothing but definitely don't want to hear stuff on the line about things like that. Like I'm stalking you and I was trying to break into your apartment. Believe it or not I heard that. That's what

people are saying that you're saying. It's unbelievable. Anyway, that's fine. Hope you're doin' good, and welcome back to United. Maybe I'll hear from you, I don't know. Bye.

R. 51-1 at ¶ 19.

Not having connected with Lense, on January 25, 2021, Blockhus left Lense

another voicemail message stating:

> [...] *I would rather talk to you about it, not HR, cause HR would open a disciplinary investigation against you and bring in all your friends and no one's gonna be happy hearing that.* And, on top of that, you're trying to ruin Mindy's marriage at work and *she might file charges against you*, as well, so, just call me. *Let's get this over with because it's gonna get ugly.* And, everybody's says it's you and they're gonna bring in people like Karen Martinez, especially her. A lot of people are talking and, like I said, I can't come to work this way. It's affecting my job. *HR, if they get involved, it's not gonna get good and you are just coming back to work and I don't think you want to come back to work under investigation*, so, please call me. I don't want Mindy to press charges either. So, let's get this cleared up. Thanks. Bye.

R. 51-1 at ¶ 20 (emphasis added).

Lense was "shaken" when she received the message and perceived it as

threatening her job at United. R. 51-1 at ¶ 21. She reached out to her Base Manager

(Monique Williams) who directed her to Ethics and Compliance where Lense spoke

with Corporate Security Senior Manager, Harassment and Discrimination

Investigations Kimberly Phillips. *Id*. Lense sent Phillips screenshots of messages

she stated were sent by Blockhus as well as the January 25, 2021 voicemail. *Id*. at

¶ 22. Included in the screenshots were the following texts Lense received from

Blockhus in October 2020 stating:

> Not a good way to be known for any longer with united
>
> I'll f*** you for a trip
>
> [***]

You w[an]t[] to make sure everyone at United know you'll f*** for a trip

[***]

Sun, Oct 11[,] [2020]

Call me right now or I'm going to do something that will horrify you

5

4

3

2

[***]

I'm going to give you one more chance to answer my call.

One more

Then your dad will hear from me with pics

[***]

[January 25, 2021]

Katherine, going to call you in about 30 min and it's very important you answer. This call is in regards to your job with United

[***]

Be ready to be horrified

Better call me right now

[***]

Here's what[']s going out [t]o your family

[***]

You got two choices

I[']m going to call you one more time, you don't answer, [I']m texting a video to your dad[']s friend

[***]

Call me right now

Done with being nice

You do realize, your dad and all his friends are going to get nudes of you? Because you treated me like sh**. You better call me because I'm sick of this bullsh**.

[***]

I'll be there tomorrow with a big box and I want it all back. Done with the disrespect

Give it all back, or well you know

[***]

Call me now or I will be there when I land tomorrow and I want everything

Ok put everything in a box [I']ll be there tomorrow

Airpods and all

No one uses me

No one uses me

Mon, Oct. 12, 5:53 AM

Sorry about the threats but unfortunately that[']s [the] only way you will answer my call or text these days

R. 42 at ¶ 23.

Also on January 25, 2021, Blockhus reached out to Human Resources Manager Vanessa Beiro stating that he would have a report to her the next day about a complaint involving Lense. R. 42 at ¶ 14. Blockhus did not submit the complaint so they arranged a call for February 1, which Blockhus did not make. *Id.* at ¶ 16. On February 2, 2021, Blockhus wrote to Beiro stating that he was coordinating with another flight attendant—Mindy Richards—who also had a complaint against Lense. *Id.*

The morning of February 4, 2021, Blockhus spoke to then-Performance Support Supervisor Kayla Howell (who reported to Williams) because he had learned that he was under investigation. R. 55-1 at ¶ 24; *see also id.* at ¶ 13 (identifying Williams). That same day, he received an email sent by Performance Supervisor Frank Hester including a Letter of Investigation ("LOI") prepared by Howell informing Blockhus that in accordance with the CBA, a meeting would be

conducted on Monday, February 8, 2021 at 11:00 a.m. via Microsoft Teams to investigate the text messages cited above. *Id.* at ¶ 25.

After receiving the LOI on February 4th, Blockhus went home as he had been placed out of service and left a voice message for Howell stating:

> Hey Kayla. This is Derek. I just got the email saying the reason why I'm being investigated. It's ridiculous. That's an ex-girlfriend I used to date, who we had a weird relationship, and she was like – I mean, it's completely – I can explain this whole thing, *my text message*. There's a reason --- anyways. I am so glad – I am so relieved that this what it is. I can't imagine what else it could have been. So anyway – so, basically, I threat – she was ending – sending out rumors about me to United, and *I threatened to go to HR*, and that's why she did this. And I – *I mean, I threatened*, but I would never do that because I do still care about her. *And because I threatened*, I don't know if that's why she did it. I have witnesses, and I have voice recordings of myself and messages with her saying that, please, don't talk – make – spread rumors about me and – me and another flight attendant and things of that nature. And I did mention to her I was going to go to HR, because she was putting things into United. Those messages between me and her were private, you know, in our private line. So I don't know how that works with United. And there's a – there's a huge back story to that. So this is easily fixed. Thank you very much.

R. 55-1 at ¶ 26 (emphasis added).

On February 5, 2021, the day after receiving the LOI, Blockhus filed a complaint against Lense. R. 55-1 at ¶ 28. He collaborated with Richards and they emailed similar statements to Beiro stating they believed Lense "immediately dug up an old text from an argument they had a few months ago . . . ." *Id.* Two days later, he wrote to Beiro withdrawing his complaint against Lense "effective immediately," stating:

> We believe [Lense] . . . dug up information from a horrible alcohol and passion fueled argument we had about three months ago that I had no idea existed. . . . I do feel I need to explain that text, I have no recollection of writing or sending it, in fact I could not even read it as it made my

stomach nauseous. However, I do see how it could have been constru[]ed.
. . . Again, this night was completely regrettable, reckless and out of
control. This was an absolutely regretful and painful night of which I
have since sought help with my primary caregiver . . . .

*Id.* at ¶ 29.

On February 8, 2021, Blockhus sent a written statement to the Union as well

as Beiro, Senior Base Manager Janene Bell, Hester and others at United stating:

> I am painfully aware that the preconception of me coming into this
> hearing today is not good, and in fact dreadful. . . . Any exchange of
> words that night three months ago between Ms. Lense and myself were
> strictly out of anger and frustration during a heated alcohol fueled
> argument and absolutely, not an attempt to sexually harass my dear
> friend M[s]. Lense. . . . Ms. Lense and I did have a fight that night, I did
> say ugly regretful things, and I acted like a stupid teenager . . . In no
> way do I condone any form of sexual harassment. I now do realize the
> dangers of word choice. . . I admit I regretfully used a poorest choice of
> word while arguing with Ms. Lense that night however I categorically
> would never sexually harass anyone.
>
> I do feel I should address the text message submitted with the complaint
> as it is so very disturbing. I could not even finish reading it as it made
> my stomach nauseous. This was three months ago and though I have no
> recollection of sending it, I do see how it could have been constru[]ed. . .
> . I do realize the seriousness of the charges brought on to me by Ms.
> Lense and I pray the committee will consider all mitigating
> circumstances. Both the timing of the clime [sic] and the fact that we
> remained good friends long after that night. . . . I am only human and
> sometimes even at age 52, being under the influence of too much alcohol
> or elevated emotions we can say the most adolescent, senseless and
> regretful things we do not mean during a passionate argument.
>
> Ms. Lense is an amazing flight attendant with an incredible work ethic
> and has a bright f[u]ture. . . . I am pleading to Ms. Lense for the
> forgiveness of my poor choice of words; the remorse I feel is
> incomprehensible.

R. 55-1 at ¶ 30.

A few hours later, Blockhus sent another email to the same distribution list

stating "I[']m sorry[.] Please disregard, I will send you a final draft shortly. Sorry I

have not slept in 4 days and it is difficult to concentrate." R. 55-1 at ¶ 33. Blockhus

never sent a final statement. *Id.*

In preparation for the 11:00 a.m. February 8, 2021 LOI meeting at

approximately 9:30 a.m., Howell sent Blockhus and the Union a packet of exhibits

that included the LOI, excerpts from the WTG, texts, the January 25, 2021

voicemail provided by Lense, Blockhus's revised statement, Blockhus's request to

withdraw his complaint against Lense, and information about Senior Investigator

John McCormick being assigned the investigation into Lense's complaint by Phillips

(to whom he reported). R. 55-1 at ¶ 35. Blockhus met with the Union before the

meeting, at which time he was very anxious, so the Union connected him with its

Employee Assistance Program ("EAP"). *Id.* at ¶ 36. He told the EAP he suffered

from alcoholism, so they connected him with Lakeview (a rehabilitation facility in

Florida), which he checked into on February 10, 2021. *Id.* Before checking in, he

suggested to Richards that she withdraw her complaint against Lense, which she

did. *Id.* at ¶ 37. After receiving Richards's withdrawal and a voicemail from

Blockhus on February 10 stating he did not have information to share about the

complaint, the investigation into Blockhus's complaint against Lense was closed. *Id.*

at ¶ 38.

On February 11, 2021, at McCormick's request, Lense sent McCormick

additional information about further contact Blockhus had initiated while under

investigation including a handwritten note left on her car at her personal residence

on February 4 stating: "Katherine Please I am about to be to be fired because of

your report[.] Please I beg you to retra[ct] it. I will lose my job! Please! Help me! ☹

Sorry to contact you this way ☺[.]" R. 55-1 at ¶ 39. She also provided McCormick with a text message to a similar effect from Blockhus, a voicemail left on February 5 from an attorney representing Blockhus, and an email from Blockhus's wife with "Derek's wife" in the subject line and providing her telephone number if she wanted to "chat for a bit." *Id*.

The following day, February 12, Hester sent emails to Blockhus and the Union enclosing a letter from Howell directing Blockhus to refrain from contacting Lense and to provide United Medical with documentation substantiating his alleged medical inability to attend the February 8 meeting and to attend a rescheduled meeting set for February 15 over Teams, as well as a revised LOI letter rescheduling the February 8 meeting to February 15 to discuss the original LOI as well as Blockhus's attempts to contact Lense after receiving the LOI. R. 55-1 at ¶ 41. Neither Howell nor Hester knew Blockhus would be medically unavailable to attend a Teams meeting. *Id*. at ¶ 46. On February 16, 2021, United Medical approved Blockhus's FMLA leave. *Id*. at ¶ 49.

McCormick determined that he had sufficient information to complete his investigation and reach findings. R. 55-1 at ¶ 53. On February 22, 2021, McCormick prepared a Statement of Findings concluding that Blockhus sent threatening and harassing communications via text and voicemail to Lense relating to her job at United, admitted threatening Lense in a voicemail to Howell, and after being informed of a meeting with Corporate Security, sent text messages to Lense, left a note on her windshield requesting that she retract her complaint and had a lawyer leave a voicemail on her personal phone regarding an employment dispute. *Id*. at

13

¶ 52. On February 26, 2021, Hester informed the Union that United was proceeding with Blockhus's termination. *Id*. at ¶ 56.

On March 3, 2021, Hester sent Blockhus a letter explaining his decision to terminate Blockhus's employment based on Blockhus having sent threatening and harassing communications via text and voicemail to Lense, admitted threatening Lense in a voicemail to Howell, and after being informed of a meeting with Corporate Security, sent text messages to Lense and left a note on her windshield requesting that she retract her complaint, in violation of United's Working Together Guidelines in the areas of Responsibility, Dignity and Respect and Professionalism, as well as United's Harassment and Discrimination Policy. R. 55-1 at ¶ 57. McCormick's investigation and Hester's decision to terminate Blockhus's employment were reviewed by a Corrective Investigation Committee comprised of individuals from Inflight management, Human Resources, Labor Relations, Legal, and Internal Audit, whose function is to ensure that United is consistent in issuing discipline. *Id*. at ¶ 58.

The Union grieved the termination, arguing Blockhus had not been able to attend an investigatory meeting. R. 55-1 at ¶ 75. The grievance was denied by the Company. *Id*. The Union pursued the grievance to arbitration at which time Blockhus abandoned it. *Id*. at ¶ 77.

Blockhus—while claiming he was unable to participate in an investigatory meeting while in rehab, R. 55-1 at ¶ 48—was able to reach out to United through his caseworker to renew his complaint against Lense, *id*. at ¶ 62. When he left rehab, Phillips interviewed him and concluded that Lense had credibly brought her

concerns forward based on the messages she had received from Blockhus and not in retaliation for Blockhus having initiated a complaint against her. *Id.* at ¶¶ 65-66.

## B.    Procedural Background

### 1.    Commencement of the Case

On December 3, 2021, Blockhus filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of disability and age and retaliation. R. 55-1 at ¶ 3. On June 22, 2022, the EEOC issued a Notice of Right to Sue. *Id.*

On July 26, 2022, Blockhus filed a Complaint asserting claims of (1) disability discrimination under the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.* (Count I); (2) interference in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* (Count II); and (3) discrimination based on age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count III). R. 55-1 at ¶ 4; *see also* R 1.

### 2.    Summary Judgment

On June 15, 2023, United moved for summary judgment on all counts in the Complaint. R. 40. On December 19, 2023, the district court granted the motion. R. 60 at 16.

In its decision, the district court analyzed whether Blockhus provided sufficient evidence to support a verdict by a reasonable jury that he was the victim of age or disability discrimination, as required by *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). R. 60 at 12-14. Even though Blockhus only cited

the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and not a holistic approach, the district court applied both. *Id.*

Under *McDonnell Douglas,* the district court found Blockhus could not meet his burden. *See* R. 60 at 11-14. Blockhus was not meeting legitimate expectations when he failed to comply with the requirements of United's Working Together Guidelines and Harassment and Discrimination Policy. *Id.* at 13. While Blockhus argued that he had only received two performance warnings from the time of his hire until February 2021, the district court concluded that the question was not whether Blockhus ever satisfied United's expectations, but rather whether he was meeting United's expectations at the time of his termination—which he was not. *Id.*

The district court also dismissed Blockhus's challenges to McCormick's investigations and Blockhus's claims that he did not send threatening text messages to Lense, finding that Blockhus admitted sending the text messages in his voicemail to Howell and in his written submission. R. 60 at 13.

Even if Blockhus somehow could establish he was meeting United's expectations, the district court concluded that there was no evidence that United's reason for terminating his employment was a pretext for either age or disability discrimination. R. 60 at 13. In the words of the district court: "There is simply no doubt that based on the information it had, [United] had a legitimate reason for its actions, and [Blockhus] has presented nothing to suggest that the reason is a 'lie, specifically a phony reason for some employment action.'" *Id.* at 14 (quoting *Hasham v. Cal. State Bd. of Equalization*, 200 F.3d 1035, 1045 (7th Cir. 2000)).

As to Blockhus's argument that McCormick's alleged failure to thoroughly investigate was pretext for discrimination, the district court concluded that there simply was no evidence to suggest that United did not have an honest belief that Blockhus had threatened and harassed Lense, "something he admitted doing." R. 60 at 14. Thus, the district court concluded that Blockhus failed to carry his burden under the *McDonnell Douglas* framework. *Id.*

The district court then addressed Blockhus's age and disability discrimination claims under the holistic standard, even though Blockhus failed to rely on this approach. R. 60 at 14. The district court concluded that Blockhus failed to identify any ageist remarks by anyone, and that Hester had no knowledge of Blockhus's alleged disabilities and only knew that Blockhus was "medically unavailable" to attend a meeting. *Id.* The district court also noted that Hester's termination decision went before a Corrective Investigation Committee comprised of individuals from Inflight Management, Human Resources, Labor Relations, Legal and Internal Audit—whose function is to ensure that United is consistent in issuing discipline—and that there was no evidence that the committee based its decision on Blockhus's age or disabilities. *Id.* Thus, considering all of the evidence as a whole, the district court could not find a triable fact. *Id.*

The district court then turned to Blockhus's FMLA interference claim. The district court noted that while termination can constitute a denial of FMLA benefits, an employer may rebut such a claim with evidence that an employee would have been terminated regardless of whether he took leave. R. 60 at 15. In other words, an employer can fire an employee for poor performance if the employer

would have fired them for their performance regardless of them having taken leave. *Id*. The district court concluded: "That is precisely what the undisputed evidence show[ed] in the instant case." *Id*.

Finally, the district court entered summary judgment on Blockhus's retaliation claim, noting that the FMLA does not prohibit termination during an employee's leave if it is otherwise appropriate. R. 60 at 15. The district court concluded that was "precisely what the evidence show[ed] in the instance case, particularly since [Blockhus] was issued the LOI before he went on leave." *Id*. at 15-16. The district court found that the record was devoid of any evidence that Blockhus was terminated for having applied for and taken FMLA leave. *Id*. at 16.

Blockhus appealed. On appeal, Blockhus challenges the district court's decision granting summary judgment in United's favor.

## SUMMARY OF ARGUMENT

Blockhus's claims alleging age and disability discrimination fail to adduce evidence showing a genuine issue of material fact. His arguments lack legal support and often rely on facts that have no evidentiary support or were not presented to United prior to his termination.

Blockhus contends the district court erred by concluding that there was no evidence of age or disability discrimination. Not so. As evidenced in the district court's opinion, a thorough review of the record shows Blockhus failed to adduce any admissible evidence from which any inference of discrimination on the basis of age or disability could be drawn against United. Indeed, Blockhus admitted engaging in

18

the conduct for which he was discharged and makes no attempt to argue that such conduct did not violate United's guidelines and policies.

As to his FMLA interference claim, the fact that Blockhus was on FMLA leave does not grant him greater privileges to reinstatement than he would have if he were not on FMLA leave. In that regard, it is clear that Blockhus would have been terminated for his actions regardless of whether he took leave. Thus, his interference claim fails.

Finally, with respect to his FMLA retaliation claim, Blockhus forfeited this argument before the district court. Moreover, he presented no evidence that his leave had anything to do with the reason for his termination, namely the harassing and threatening behavior in which he admittedly engaged.

For all these reasons, the Court should affirm summary judgment in United's favor.

## ARGUMENT

Blockhus repeatedly failed to elicit evidence creating a genuinely disputed issue of material fact regarding any of his theories or claims of discrimination. Blockhus rests his appeal upon facts that are not relevant to the claims at issue and misstatements of the correct legal standard. This Court should affirm.

## I.     STANDARD OF REVIEW

This Court reviews the grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party, and may affirm for any reason supported by the record. *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). "[T]he obligation of the party opposing summary judgment is to demonstrate that

there are one or more . . . factual disputes . . . by identifying admissible evidence that would permit the trier of fact to make a finding in the non-movant's favor as to any issue as to which it bears the burden of proof." *Packer v. Trs. of Indiana Univ. Sch. of Med.*, 800 F.3d 843, 847 (7th Cir. 2015). Non-movants are only entitled to reasonable inferences in their favor—not speculative ones. *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

Blockhus cites to the standard the district court must apply when deciding summary judgment decisions and to Illinois law—which technically are not applicable here. Br. at 18.

## II. THE DISTRICT COURT PROPERLY ANALYZED BLOCKHUS'S AGE AND DISABILITY DISCRIMINATION CLAIMS AND GRANTED SUMMARY JUDGMENT

### A. Applicable Legal Standard

The singular question in a discrimination case is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [age or disability] . . . or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765; *see also Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022) (applying *Ortiz* standard to age- and disability-discrimination claims). Applying *Ortiz*, the district court properly concluded that Blockhus failed to present evidence that would allow a reasonable juror to find that United discriminated against him based on his age or purported disabilities. R. 60 at 11-14.

**B.     Blockhus Cannot Meet the *McDonnell Douglas* Test**

Blockhus relies on the burden-shifting framework of *McDonnell Douglas* to attempt to show that discrimination was present. Br. at 21-22. Under that framework, Blockhus must first make a prima facie showing that (1) he is a member of a protected group, (2) he met United's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated persons outside the protected group were treated more favorably. *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts to United to show "[a] legitimate, non-discriminatory reason for the [employer's action]", after which Blockhus must establish pretext. *McDonnell Douglas*, 411 U.S. at 802. Blockhus cannot—and did not—make this showing.

The district correctly concluded that Blockhus is unable to meet the *McDonnell Douglas* test on his disability and age discrimination claims. R. 60 at 12-14. He is unable to show that he met United's legitimate expectations or that or that he was treated less favorably than similarly situated employees. *Id*. at 12-13. Nor is there any evidence that United's legitimate, nondiscriminatory reasons for its actions are a pretext for discrimination. *Id*. at 13-14.

**1.     Blockhus Cannot Make Out a Prima Face Case of Discrimination**

The district court properly held that Blockhus was unable to show that he was meeting United's legitimate expectations. R. 60 at 13. In an attempt to demonstrate otherwise, Blockhus first points to his past performance—the receipt of only two performance warnings prior to his termination. Br. at 21. In so doing, as the district court held, Blockhus ignores clear Seventh Circuit precedent holding

that evidence of meeting an employer's expectations in the past is "largely irrelevant" and insufficient on its own to demonstrate adequate performance. *Igasaki v. Ill. Dep't of Fin. & Prof'l Regul.*, 988 F.3d 948, 959 (7th Cir. 2021); *see also Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998) (holding "earlier evaluations, cannot, by themselves, demonstrate the adequacy of performance at the crucial time when the employment action is taken"). What is relevant, instead, is Blockhus's performance at the time of his termination. *Igasaki*, 988 F.3d at 959; *see also Adebiyi v. S. Suburban Coll.*, No. 22-2516, --- F. 4th ---, 2024 U.S. App. LEXIS 9293, at **12-13 (7th Cir. Apr. 17, 2024) ("As a general matter, we focus on an employee's conduct at the time she was fired and through the eyes of her supervisors at the time.") (citation and quotation marks omitted).

Nor can Blockhus show that any similarly situated individual outside his protected classification was treated more favorably. Blockhus claims that Lense is a comparator because United treated Lense differently for allegedly comparable conduct. Br. at 22. "[I]n disciplinary cases . . ., a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000) (internal citations omitted). Typically, this involves showing that the employees shared the same supervisor, performance standards, and "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 617-18.

Blockhus fails to sufficiently demonstrate similarity between himself and Lense. To begin, Blockhus has failed to introduce any evidence regarding Lense's

employment history, performance, or qualifications. *See Harris v. City of Harvey*, No. 12 C 10370, 2014 U.S. Dist. LEXIS 142939, at *14 (N.D. Ill. Oct. 8, 2014) ("[Plaintiff] names officers who he claims were treated more favorably, but he provides no information about their duties, supervisors, or job performance."). Furthermore, Blockhus has failed to allege that he and Lense shared the same supervisor or that the same decision-maker was involved in their investigations. *See Radue*, 219 F.3d at 618 (when "'different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects'") (internal citations omitted). To the contrary, McCormick investigated Lense's harassment complaint against Blockhus and Hester made the decision to terminate Blockhus, whereas Phillips investigated Blockhus's retaliation complaint against Lense and even different individuals were involved in the investigation into the social media posts. *See* R. 55-1 at ¶ 52 (McCormick investigating Lense's complaint), ¶¶ 56-57 (Hester concluding termination appropriate), ¶ 65 (Phillips investigating Blockhus's complaint); R. 55-17 (investigative report regarding social media allegations); *see also Ellis v. UPS, Inc.*, 523 F.3d 823, 826 (7th Cir. 2008) ("to be similarly situated," a proffered comparator "must have been treated more favorably by the same decisionmaker").

Moreover, Blockhus has failed to introduce any admissible evidence that Lense engaged in similar conduct. Blockhus argues that he submitted certain social media messages he attributes to Lense during an EEOC investigation following his termination, but he provides no support in the factual record that this was done, let alone that United ever received the messages. *See Hall v. Bodine Elec. Co.*, 276 F.3d

345, 354 (7th Cir. 2002) ("conclusory allegations … without support in the record, do not create a triable issue of fact"); *see also Scott v. Edinburg*, 346 F.3d 752 (7th Cir. 2003) ("To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)…"). In fact, in his deposition Blockhus testified that he never gave these to United. R. 43-1, Blockhus Dep. at 328:24-329:3. And, even if United had received these messages, this does not render Blockhus and Lense similarly situated, because Lense denies sending the messages to Blockhus, *see* R. 43-7, Lense Dep. at 41:4-48:14, while—as the district court found—Blockhus admitted sending threatening messages to Lense in his voicemail to Howell and February 28, 2021 written statement. R. 60 at 13.

Blockhus next argues that when United received an anonymous report that Lense posted derogatory comments about United on one of her social media accounts, United referred the investigation to technical experts at the Company to determine their authenticity, which, Blockhus argues, was not done on the texts submitted by Lense. Br. at 22. However, unlike the text messages submitted by Lense, the social media messages appeared on their face to be photoshopped, and, unlike Blockhus, Lense denied making the posts. R. 57 at ¶ 18; R. 55-17. As above, Blockhus further argues that McCormick was not trained on when or how to verify digital evidence. Br. at 22. Yet, again, this claim is misplaced as McCormick testified that he had no basis to question the authenticity of the text messages because—as the district court appropriately concluded—Blockhus admitted to sending them in his voicemail to Howell and his February 28, 2021 written

submission. R. 60 at 13; R. 43-8, McCormick Dep. at 107:10-20, 109:3-7; R. 57 at
¶ 12.

In sum, Blockhus has thus failed to make out a *prima facie* case of
discrimination or to create a genuine issue of material fact regarding same.

### 2. Blockhus Cannot Overcome United's Legitimate, Nondiscriminatory Reasons for Terminating Blockhus or Show They are Pretextual

Even if Blockhus has made out a prima facie case for discrimination—which
he has not—his fleeting references to pretext, Br. at 22, are insufficient to overcome
the legitimate, nondiscriminatory reasons for his termination. United terminated
Blockhus because he failed to comply with the requirements of United's Working
Together Guidelines and Harassment and Discrimination Policy. R. 60 at 13. As the
district court properly held, "[t]here is simply no doubt that based on the
information it had, defendant had a legitimate reason for its actions and plaintiff
has presented nothing to suggest that the reason is 'a lie, specifically a phony
reason for some employment action.'" *Id.* at 13-14 (citing *Hasham*, 200 F.3d at
1045).

Because United had legitimate, non-pretextual reasons for its decisions, it is
not for this Court to second-guess. *See Boston v. U.S. Steel Corp.*, 816 F.3d 455, 465
(7th Cir. 2016) ("[I]f an employer acted in good faith and with an honest belief, [this
Court] will not second-guess its decisions.") (quoting *Green v. Nat. Steel Corp.,
Midwest Div.*, 197 F.3d 894, 899 (7th Cir. 1999)); *Stockwell v. City of Harvey*, 597
F.3d 895, 902 (7th Cir. 2010) (stating "courts are not 'superpersonnel department[s]'

charged with determining best business practices") (quoting *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005)).

At best, Blockhus attacks United's investigation into Lense's complaint against him, Br. at 22, and, in so doing, misapprehends the standard for a pretext showing. Pretext means a "phony reason" for some action. *Chatman v. Bd. of Educ. of Chi.*, 5 F.4th 738, 746 (7th Cir. 2021) (citing *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995)). In a court's evaluation of pretext with respect to an investigation, an employer's honest belief, not the sufficiency of the company's investigation, is the relevant issue. *See Brooks*, 39 F.4th at 436 ("[T]he only question is whether the employer honestly believed it had a non-discriminatory reason for termination—that is, that [plaintiff] made threats."); *Marshall v. Ind. Dep't of Corr.*, 973 F.3d 789, 793 (7th Cir. 2020) (challenges to company investigations are "generally misspent"); *Vaughn v. Vilsack*, 715 F.3d 1001, 1008 (7th Cir. 2013) ("[The plaintiff] knew about these accusations to management but never denied them. He even acknowledged his 'obsessive/compulsive contacts' with [his co-worker]. This information amassed by management renders baseless [the plaintiff's] charge of a sham investigation."); *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 733 (7th Cir. 2011) (finding no pretext because, "[a]fter a reasonable . . . investigation, the [defendant] believed [the complainant's] allegations"); *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 674 (7th Cir. 2011) (noting the fact that plaintiff was not interviewed during course of a pre-termination investigation was not enough, by itself, to raise inference of pretext).

As the district court appropriately held, R. 60 at 12-13, Blockhus has not developed any material evidence, either direct or indirect, to show that United did not hold an honest belief that Blockhus had threatened and harassed a co-worker in violation of United's policies.

Even if Blockhus's complaints regarding the sufficiency of the investigation were relevant, however, the undisputed material facts make clear that McCormick undertook a reasonable investigation. For example, although Blockhus asserts that McCormick relied "exclusively" on evidence from Lense during his investigation, this claim is without factual basis. Blockhus does not dispute that McCormick completed his findings based on Blockhus's February 8, 2021 written statement as well as the voicemails Blockhus had left for Howell and Lense, *see* R. 55-1 at ¶ 53; nor does he dispute that Hester relied on those same materials to support his termination decision, *id.* ¶ 57. Blockhus further argues that McCormick did not verify (or know how to verify) whether the text messages were authentic, Br. at 22; however, as the district court properly held, McCormick testified that he had no basis to question the authenticity of the text messages because Blockhus admitted to sending them in his voicemail to Howell and in his February 8, 2021 written submission. R. 60 at 13; *see* R. 55-1 at ¶ 30.

Also, Blockhus's argument that McCormick was unable to assess Lense's credibility because he had only spoken to her on the phone, Br. at 22, misconstrues McCormick's testimony: McCormick testified he had no reason to question Lense's truthfulness because Blockhus's own statement and voicemails corroborated the

27

information she had provided and that there are many ways to assess credibility. R. 57 at ¶ 13.

Blockhus's remaining arguments similarly misconstrue McCormick's testimony or otherwise lack record support. *See* Br. at 22. Blockhus argues that McCormick failed to consider evidence of Blockhus's relationship with Lense, Br. at 22, but McCormick testified at his deposition that Blockhus and Lense's relationship status was not relevant because (1) McCormick was not investigating how or when the relationship ended, but, rather, whether Blockhus had harassed and threatened Lense before and as she returned to work; and (2) Blockhus admitted to threatening Lense and sending messages, substantiating Lense's statements. R. 57 at ¶¶ 14-15. Additionally, Blockhus's argument that McCormick "did not ask [Lense] to produce anything else because he left it to her to determine what was relevant," Br. at 22, misconstrues McCormick's testimony: all McCormick testified to was that complainants are permitted to provide whatever materials they believe is necessary to support their complaint, R. 57 at ¶ 9, and, in fact, McCormick at one point asked Lense to provide additional documents and information regarding Blockhus's further contact with her, which she did, R. 55-1 at ¶ 39.

For these reasons, the district court correctly held that Blockhus could not meet his burden under the *McDonnell Douglas* test.

## C.     Blockhus's Evidence as a Whole is Insufficient

The district court correctly concluded that even when considering all of Blockhus's evidence at once, there was no triable fact. R. 60 at 14.

Blockhus makes a single reference to the "Rogers 'sufficient evidence in the record'" test, Br. at 21, which is an apparent reference to *Ortiz*. Yet, Blockhus fails to develop any argument under this test, instead focusing on the *McDonnell Douglas* burden-shifting method. *Id*. at 21-23. Blockhus has thus forfeited any argument that United's actions do not pass muster under *Ortiz*. *See Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) (undeveloped arguments are forfeited).

Even if Blockhus did not forfeit this argument, Blockhus fails to address United's fundamental contention that he cannot and has not shown that his disabilities or age were the "but for" cause of his termination, as both the ADA and ADEA require. *See Brooks*, 39 F.4th at 440. Blockhus admits that no one at United, including Hester, ever made any direct comments to him regarding his age or disabilities. R. 55-1 at ¶ 61. His speculation about the reasons for his termination are unsupported and inadmissible. *See Skiba v. Ill. Cent. R.R. Co*., 884 F.3d 708, 718 (7th Cir. 2018) (holding that inferences supported only by speculation or conjecture will not suffice). And, only United Medical—not McCormick or Hester— had knowledge of the reason for his leave, which Lakeview only listed as anxiety. R. 42 at ¶ 55. As the district court properly found, "there is no evidence that Hester had any knowledge of the [disabilities] or the severity of plaintiff's disabilities. He only knew that [Blockhus] was 'medically unavailable' for the scheduled meetings." R. 60 at 14. Blockhus himself in his brief acknowledges that the only information Hester had was in relation to his "medical unavailability." Br. at 23.

As the district court noted, the evidence also shows that the decision to terminate Blockhus's employment was reviewed by a Corrective Action Committee comprised of individuals from Inflight Management, Human Resources, Labor Relations, Legal and Internal Audit. R. 60 at 14. There was no evidence in the record that this committee based its decision on Blockhus's age or disabilities. *Id.*

In sum, even though Blockhus has forfeited any attempt to rely on the holistic approach, even when considering this theory, "there is simply no evidence in the record, direct, indirect, or circumstantial, from which a reasonable jury could conclude that [Blockhus] was terminated because of his age or disability." R. 60 at 14.

Based on the foregoing, this Court should affirm the district court's decision granting summary judgment in United's favor on Blockhus's age and disability discrimination claims.

## III. THE DISTRICT COURT PROPERLY GRANTED UNITED'S MOTION FOR SUMMARY JUDGMENT ON BLOCKHUS'S FMLA INTERFERENCE CLAIM

The district court correctly granted summary judgment in United's favor on Blockhus's FMLA interference claim. R. 60 at 15.

With respect to his termination, Blockhus argues that United admitted that it interfered with his use of FMLA and denied him FMLA benefits such that the district court erred in granting summary judgment in his favor. *See* Br. at 24. Yet, the reference cited by Blockhus is to United's answer to a request for admission in which United simply admitted that Blockhus was terminated while he was on FMLA leave—not an admission of "interference."

Nor does the fact that United terminated Blockhus while he was on FMLA leave constitute a violation of the FMLA—contrary to Blockhus's argument. Indeed, Blockhus was entitled to no greater protection under the FMLA than he would have received had he not exercised his rights under that statute. *See Anderson v. Nations Lending Corp.*, 27 F.4th 1300, 1305-06 (7th Cir. 2022) (holding "[a]n employee is not entitled to return to her prior position if she would have been terminated regardless of whether she took FMLA leave"). The district court correctly noted that an employer can rebut a claim that a termination constitutes a denial of FMLA benefits with evidence that the employee would have been terminated regardless of whether he took leave. R. 60 at 15 (quoting *Ogborn v. United Food and Comm. Workers Union, Local No. 881*, 305 F.3d 763, 768 (7th Cir. 2002) ("Thus, employers may fire employee for poor performance if they would have fired them for their performance regardless of their having taken leave.")). In granting summary judgment, the district court found "[t]hat is precisely what the undisputed evidence shows in the instant case." R. 60 at 15.

As set forth *supra* Section III.B.1, it is undisputed that Blockhus's employment would have been terminated regardless of the fact that he was on FMLA leave based on his conduct. *See Anderson*, 27 F.4th at 1304. Thus, the district court properly entered summary judgment in United's favor on Blockhus's FMLA interference claim with respect to his termination.

Blockhus also argues that United interfered with his use of FMLA leave when it required him to submit paperwork to substantiate his medical unavailability because his unavailability and need for FMLA leave were

"functionally the same." Br at. 23. Yet, it is undisputed that when United requested documentation to support a missed meeting, United had no knowledge of the nature of Blockhus's medical unavailability or that he would later request FMLA leave. R. 42 at ¶¶ 45-46. His conclusory argument that United only did this to attempt to deny him benefits is unavailing. *See Greenbank v. Great Am. Assur. Co.*, 47 F.4th 618, 629 (7th Cir. 2022) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority are waived").

Moreover, Blockhus suffered no injury as a result. He submitted the medical paperwork and was never denied leave for not providing it. R. 55-1 at ¶ 44. And, he does not claim he was required to submit the actual FMLA paperwork for his FMLA leave period on a truncated timeline or that his leave was not approved. Thus, there can be no FMLA violation. *See Lutes v. United Trailers, Inc.*, 950 F.3d 359, 363 (7th Cir. 2020) ("Violation of the FMLA is not enough to establish injury… [the plaintiff] must show he was prejudiced by [the defendant's] violation.").

In sum, this Court should affirm the district court's decision granting summary judgment in United's favor on Blockhus's FMLA interference claim.

## IV. THE DISTRICT COURT PROPERLY GRANTED UNITED'S MOTION FOR SUMMARY JUDGMENT ON BLOCKHUS'S FMLA RETALIATION CLAIM

Blockhus has forfeited any appeal of his FMLA retaliation claim because he did not sufficiently develop his FMLA retaliation argument before the district court. R. 55 at 11; *see Black v. Wrigley*, 997 F.3d 702, 709 (7th Cir. 2021) ("[A] party cannot complain of errors which it has committed, invited, induced the court to

make, or to which it consented.") (quoting *Sanchez v. City of Chi.*, 880 F.3d 349, 360 (7th Cir. 2018)).

Blockhus's brief in response to United's motion for summary judgment only mentioned the word retaliation in a heading, did not set forth the elements of FMLA retaliation, did not develop any facts with respect to FMLA retaliation, and did not respond to any of United's arguments concerning a potential claim for FMLA retaliation. R. 55 at 11; *see* R. 41 at 14-15. Therefore, Blockhus forfeited any claim for FMLA retaliation he may have had. *See Betco Corp. v. Peacock*, 876 F.3d 306, 309 (7th Cir. 2017) (noting that "this [C]ourt has 'long refused to consider arguments that were not presented to the district court in response to summary judgment motions'" and that, "[w]hen a party presents an underdeveloped or conclusory argument below, the party does not preserve its claim for appeal") (quoting *Laborers' Int'l Union v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999)).

Even if Blockhus had not forfeited this claim before the district court, the district court correctly found that there was "no evidence that [United] terminated [Blockhus] in retaliation for taking leave." R. 60 at 15. For a FMLA retaliation claim, Blockhus must show: (1) he engaged in protected activity; (2) he suffered an adverse action; and (3) a causal connection exists between the two. *Lutes*, 950 F.3d at 363. As he has no direct evidence, Blockhus must demonstrate a causal link through circumstantial evidence. *See Rowlands v. United Parcel Serv. – Fort Wayne*, 901 F.3d 792, 801-02 (7th Cir. 2018). This may include: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees

outside of the protected group systematically received better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action. *Id.*

Blockhus claims his termination during his FMLA leave is evidence of a causal connection, Br. at 24, but the FMLA does not prohibit termination during an employee's leave. *See Anderson*, 27 F.4th at 1305-06 (termination appropriate where employer discovered performance deficiencies during leave period). This is the case here, particularly where—as the district court found, R. 60 at 15—Blockhus was issued the LOI before he started leave. R. 42 at ¶¶ 25, 42; *see Richards v. Wilkie*, No. 18 C 354, 2020 U.S. Dist. LEXIS 177187, at *49 (N.D. Ill. Sept. 27, 2020) (plaintiff appropriately terminated during leave that began during disciplinary process).

Further, timing is insufficient on its own to overcome summary judgment on causation, *see Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 578-79 (7th Cir. 2021), and this Court has warned that a plaintiff's "own aberrant actions or other intervening circumstances" undermines any suspicious timing argument, *see Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012), and "an employee is not entitled to return to her former position if she would have been fired regardless of whether she took leave," *Anderson*, 27 F.4th at 1304. Blockhus's actions can be fairly characterized as aberrant and an intervening circumstance for his termination that would have occurred regardless of whether he took leave. *See* Section III, *supra.*

Also, the record is devoid of any ambiguous statements or behavior by United towards other employees in the protected group, and Blockhus has put forth no evidence, statistical or otherwise, that any similarly situated employees outside of his protected group systematically received better treatment. To the contrary, Richards also utilized FMLA and remains employed. R. 55-1 at ¶ 78. Lastly, as set forth *supra* Section II.A.2, Blockhus has not shown pretext.

Thus, this Court should affirm the district court's holding in United's favor on Blockhus's FMLA retaliation claim.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

<div style="margin-left:40%">

Respectfully submitted,
United Airlines, Inc.

By:   /s/ Jill S. Vorobiev
Jill S. Vorobiev
M. Patrick Yingling
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, IL 60606
Tel: (312) 207-1000
jvorobiev@reedsmith.com
mpyingling@reedsmith.com

</div>

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(B)(i) and CIRCUIT RULE 32(c)**

I hereby certify that this brief complies with the type-volume limit of Federal Rules of Appellate Procedure 28(a)(10) and 32(g)(1), along with Circuit Rule 32(c), because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 9,474 words as counted by the word-processing software used to create the brief. I further certify that this document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), along with Circuit Rule 32(b), because it has been prepared using Word 2016 in Century Schoolbook 12-point font.

By:    /s/ Jill S. Vorobiev
          Jill S. Vorobiev

## CERTIFICATE OF SERVICE

The foregoing Brief of Defendant-Appellee has been electronically filed on May 1, 2024. I certify that I have caused the Brief of Defendant-Appellee to be served on *pro se* plaintiff-appellant via the CM/ECF system on May 1, 2024.

By:     /s/ Jill S. Vorobiev
        Jill S. Vorobiev