# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**DEREK BLOCKHUS,**            )
                              )
**Plaintiff, Appellant**        )          **Case No. 24-1043**
                              )
                              )          **Judge Robert W. Gettleman**
**v.**                          )
                              )          **Magistrate Jeffrey I. Cummings**
**UNITED AIRLINES, INC.,**      )
                              )
**Defendant, Appellee**         )

---

### APPELLANT REPLY BRIEF

COME NOW, your Appellant, DEREK BLOCKHUS has put a considerable effort into responding to United extraordinary amount of unsupported claims. This level of effort is essential in legal proceedings to ensure that all relevant points are addressed and that the appellant's position is effectively conveyed to the court. By carefully considering each of United's claims and providing detailed responses, Mr. Blockhus has taken a proactive approach to defending his case and advocating for his rights. Given the length and depth of United's assertions, it's understandable that a thorough response would require a substantial amount of detail. Due to the volume of United's unsubstantiated claims, Mr. Blockhus has included an appendix to his reply brief. This will allow the court to thoroughly examine his counter to each claim, ensuring that no aspect of the case is left unaddressed. By providing additional arguments, evidence, and clarifications in a appendeix, Mr. Blockhus can strengthen his defense and effectively challenge United's assertions and important explanations. Furthermore, if the courts nor United can not identify the origin or year of Ms. Lense's text messages or point to were they claim Mr. Blockhus "*admitted guilt*" then his termination was unlawful and summary judgement was not proper. Due to the restrictions, Mr. Blockhus can not address all of United's claims. Aditionally even if contacting the employee was a mistake, requiring them to attend a company meeting while they are on FMLA leave is still considered an FMLA violation. The key factor is the action interferes with Mr. Blockhus's rights under the FMLA.

**Page**

INTRODUCTION ........................................................................................................... iii

JURISDICTION............................................................................................................... 2

ISSUES PRESENTED ...................................................................................................... 3

STATEMENT OF THE CASE........................................................................................... 4

A.    Factual Background........................................................................................... 4

     I.    United Repetitive False Claims that Mr. Blockhus *"Admitted Guilt"*.................. 4

     II.    Blockhus Voicemail to Ms. Howell................................................................ 4

     III.    Blockhus Retracted Initial Statement............................................................ 5

     IV.    Ms. Lense Threating Text & Email to Blockhus............................................. 5

B.    Procedural Background ..................................................................................... 7

     I.    Judge Genttleman's Memorandum................................................................ 7

     II.    Hester's Termination Letter ...................................................................... 10

SUMMARY OF ARGUMENT ........................................................................................ 12

ARGUMENT ................................................................................................................ 13

I.    STANDARD OF REVIEW ................................................................................ 13

II.    THE DISTRICT COURT IMPROPERLY ANALYZED BLOCKHUS'S AGE AND
    DISABILITY DISCRIMINATION CLAIMS AND GRANTED.................................... 13

    A.    Applicable Legal Standard........................................................................ 13

    B.    Blockhus Can Meet the *McDonnell Douglas* Test ................................... 13

       1.    Blockhus Can Make Out a Prima Face Case of
          Discrimination ................................................................................... 14

       2.    United cannot overcome their nondiscriminatory reasons for
          terminating Blockhus or demonstrate that
          it was not pretextual.......................................................................... 14

Statutes

*42 U.S.C. § 12101 et seq.;* ........................................................................................ 2

*29 U.S.C. § 2601 et seq.;*.......................................................................................... 2

*28 U.S.C. § 1291* ..................................................................................................... 3

CONCLUSION.................................................................................. ...................... 15

# INTRODUCTION

The case at hand involves United's wrongful termination of Mr. Blockhus, an act that they have carried out without proven cause. Simultaneously, United's actions have violated and interfered with Mr. Blockhus's federally protected Family and Medical Leave Act (FMLA) status which they have also admitted to.

(*See* Appellant Brief Exhibit 61 pg. 5 #16,17 pg. 6#28, pg.7 #30

This case raises significant legal and ethical questions regarding United's treatment of Mr. Blockhus and its compliance with federal labor laws. Terminating an employee without proven cause can have serious repercussions, especially if it interferes with the individual's FMLA rights. By terminating Mr. Blockhus without proven cause and interfering with his FMLA status, United's actions have violated both federal employment laws and Mr. Blockhus's rights. United's attempt to cover up the termination of Mr. Blockhus by falsely claiming harassment against another employee with no proof is indeed significant. This suggests a deliberate effort to conceal the true reasons for Mr. Blockhus's termination and to shift the blame onto him unfairly. United can not point to were they claim Mr. Blockhus "*admitted guilt*" nor have they identified the origin of Ms. Lense's text messages yet when Blockhu took FMLA he was terminated three weeks later in absentia.

United's repetitive claims that Mr. Blockhus "*admitted guilt*" without providing any actual quote or evidence to support this assertion is indeed significant. Making such a claim without substantiation raises serious questions about the credibility and integrity of United's position. In legal proceedings, assertions of guilt must be supported by concrete evidence or statements directly attributable to the individual accused. Simply repeating the assertion of guilt without providing specific quotes or documentation undermines the fairness and transparency of the process. When evidence was produced showing that Ms. Lense maintained an intimate relationship with Mr. Blockhus long after her supposed threatening text messages, and her testimony indicated that they were always on "*good terms until January 2021,*" it became clear that her claims against Mr. Blockhus were unfounded. In fact, Ms. Lense's testimony never mentioned being threatened or harassed by Mr. Blockhus. Her reasoning for their breakup was simply, "*I just did not want to continue.*" This clearly suggests that her claims against Mr. Blockhus were baseless. Despite this, United simply terminated him as soon as he took FMLA leave. This action highlights the unjust and discriminatory nature of Mr. Blockhus's termination.  In legal proceedings, the burden is on the employer to demonstrate that the termination was based on legitimate, nondiscriminatory reasons. United fails to provide actual evidence to support their claim of legitimate reasons for Mr. Blockhus's termination, their assertion should be viewed as unsubstantiated and lacking credibility.

United's belief that simply making statements and claims without providing substantiating

evidence is sufficient for the court is not consistent with legal standards. It's not enough for United to rely on mere statements; they must provide evidence to support their claims, especially in cases involving significant legal issues such as wrongful termination. Their failure to do so does not meet the burden of proof required in legal proceedings. *(Appellee Brief pg. 1)* Ms. Lense initiated the termination proceedings against Mr. Blockhus just minutes after he informed her that he intended to report her to the company for harassment, this raises concerns about potential retaliation and the fairness of the termination process. Mr. Blockhus has demonstrate that Ms. Lense's decision to initiate termination proceedings against him was influenced by his intent to report her for harassment and can support his claim of retaliation. It's essential for the court to carefully consider the timing of events and any evidence of retaliatory actions when evaluating Mr. Blockhus's claims. *(Appellee Brief pg. 1)*

Ms. Lense's initial complaint stemmed from feeling that her employment was threatened, especially in light of the charges against her, it's understandable. However, the addition of unrelated months-old text messages that did not involve Mr. Blockhus and the failure of United to verify the origin of these messages raises significant questions about the validity of her complaint.  This oversight further suggests that the reasons behind the investigation may be pretextual particularly when they did not pertain to Mr. Blockhus and the visible phone number did not belong to him, also suggests a lack of diligence in the  investigation process. Aditionally, the statement from United that "*he would have been terminated anyways*" indeed aligns with this scenario, suggesting a predisposition to terminate Mr. Blockhus regardless of the circumstances surrounding the alleged misconduct. United makes this claim seven times in their brief.

*(Appellee Brief pg. 1,4,17,19,31,34)*

Mr. Blockhus was not available during the "investigation" and was never interviewed, despite concerns about the fairness and thoroughness of the investigation process. Interviewing the individual accused of misconduct is a <u>fundamental</u> aspect of any investigation, especially when disciplinary action is being considered. Failing to interview Mr. Blockhus deprives him of the opportunity to provide his perspective, refute allegations, and present evidence in his defense.

*(Appellee Brief pg. 1)*

Mr. Blockhus did not limit his complaint to "the mere fact that he was terminated while on FMLA" the courts need look no further than the Appellant's Brief and exhibits submitted into docket. United admitted to attempting to discourage Mr. Blockhus from taking FMLA leave by imposing limitations on the timeframe for submitting supporting documents, and raises serious concerns about their compliance with  (FMLA). Aditionally, their attempting to contact him and requiring him to attend meeting or he would be disciplined "*up to  termination*" along with imposing unreasonable restrictions or deadlines on the submission of supporting

 In fact United argues that Mr. Blockhus had the ability to communicate with United while he was on FMLA but "*chose not to*". United had a legal obligation to comply with FMLA regulations and ensure that Mr. Blockhus was able to exercise his FMLA rights without fear of retaliation or interference and United has admitted to this violation. *(See* Appellant Brief Exhibit(s) 10,14,23,31,38,44)(61 pg. 4#12, pg. 5 #16,17)

United's repeated use of terms like "undisputed" and "admitted" in their legal arguments suggests that they believe their claims are beyond question or challenge by the court. However, in legal proceedings, the mere assertion of a claim does not absolve the party from providing evidence or substantiation to support their assertion. That United asserts that certain facts are "*undisputed*" in their arguments against Mr. Blockhus, should not mean that the courts will automatically accept those facts without further examination. United repeats these claims twenty-four times in their brief, seemingly believing that repetition will make their argument more convincing. Simply put, United had twenty-four opportunities to pinpoint exactly where they claim Mr. Blockhus "*admitted guilt*," yet they have failed to do so all twenty-four times. *(Appellee Brief pg. 1,2,3,4,13,14,16,17,18,19,24,27,28,30,31,32)*

## JURISDICTION

Following United's wrongful termination of Mr. Blockhus, who was 53 at the time and a 24 year top pay model employee who met or exceeded United's expectations, filed his complaint against United for his wrongful termination, employment discrimination pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.; the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.; United claimed it terminated Mr. Blockhus for allegedly sending threatening text messages to another employee. However, no evidence linking Mr. Blockhus to the text messages was ever produced. In fact, circumstantial evidence, including Mr. Blockhus's phone records, SIM card and Ms. Lense's own statements, suggests he did not threaten her. United's adverse actions against Mr. Blockhus can only suggest their desire to remove an older, top pay flight attendant from their payroll. This is evident in the fact that although there was a directive to wait until Mr. Blockhus returned from his FMLA so a full and proper investigation could be initiated, junior supervisor, Frank Hester who represents United, took it upon himself to not only interfere with Mr. Blockhus's FMLA but not follow the company directive to postpone any actions. There were communications from higher management, which indicates that United was aware of and condoned the supervisor's actions or that this behavior was part of a larger

pattern within the company. This was nothing more than a termination of opportunity that

3
Case: 24-1043    Document: 16    Filed: 08/21/2024    Pages: 20

was wrongful. This Court has jurisdiction over the appeal from a final judgment pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED

United's failur to adduce sufficient evidence to substantiate why they terminated Mr. Blockhus with cause and has not substantiated that he was in fact, in violation of United's Working Together Guidelines and Harassment policy can only suggest that age and disability discrimination is viable. If Mr. Blockhus's termination cannot be justified by legitimate reasons supported by evidence, then it give rise to suspicion of discriminatory motives.

United produced no evidence subtansiating that a "Corrective Investigation Committee" reviewed the Lense case, however if this were true this commitiy would have rejected Mr. Blockhus's termination base of the following fact; *(Appellee Brief pg. 1,14, 17)*

**1)** Mr. Blockhus was medically unavailable for the investigation until April 5, 2021. **2)**Mr. Blockhus was awareded FMLA **3)** It was documented that base manager Monique Williams agreed to "recalculate" the Lense case until Mr. Blockhus returned from FMLA leave. **4)**Mr. Blockhus was never interviewed as allowed for other employees. **5)** Not all the facts could have been collected without Mr. Blockhus involved in the investigation. **6)**There was no documentation reflecting an investigation was ever conducted. **7)**Documents Ms. Lense produced were never questioned nor verified. **8)** The origins of the only visible phone number on Ms. Lense's text was never established. These points out significant gaps and inconsistencies in United's termination process, suggesting a lack of thorough investigation and due diligence. Without evidence substantiating the involvement of a Corrective Investigation Committee and adherence to proper procedures, United's termination decision appears arbitrary and unsupported. The failure to interview Mr. Blockhus, verify documents, and establish the origin of key evidence raises serious questions about the validity of the termination. These discrepancies highlight the need for a comprehensive review of United's actions and decisions in this case and Mr. Blockhus should be allowed to return back to his twenty-four year career. If United claims that Mr. Blockhus was not meeting their expectations at the time of his termination, it is their burden to provide evidence supporting this assertion. Simply making the claim without substantiating evidence does not meet the standard required in legal proceedings. United Airlines, as a large conglomerate, wields significant power and influence, which may lead them to believe they can make decisions with impunity, confident that individual employees lack the means to challenge them.

# STATEMENT OF THE CASE

**A.Factual Background**

**I.   United Repetitive false Claims that Mr. Blockhus "*Admitted Guilt*"**

United's repeated claims that Mr. Blockhus "*admitted guilt*" but has not provided a specific quote or example to support this assertion raises questions about the accuracy and validity of their claim.

**II.Blockhus Voice Mail to Ms. Howell**

United claim that in a voice message to Ms. Howell, Mr. Blockhus "*admitted guilt*," but they have failed to provide any reference or quote to substantiate this claim. As a result, United's assertions should be considered untruthful and bias.

"*Hey Kayla this is Derek, I just got the email saying the reason I am being investigated, it's RIDICULOUS! That's an ex girlfriend I use to date who we had a weird relationship and she was like, this is completely I can explain this whole thing like text messages there is a reason,* (**The "reason" was Lenses' retaliation against Blockhus after he notified her that he and a co-worker, Mindy Richard would be reporting her to the company if she did not harassing them)** "*anyways, I am so glad, I'm so relieved that this is what it is"* (**Blockhus is "releived" because he is well aware Lense is trying to create a false case against him in retaliation that she will not be able to prove.)** "*I can't imagine what else it could have been. So anyways basically I threat,* (**"threat" Blockhus is referring to it reporting Lense to the company for harassment, NOT about any text messages as Kayla was attempting to convey in an act of BIAS)** *well she was sending out rumors about me to United* (**Here Blockhus in the very begining informs United of harassment by Lense)***and I threatened to go to HR* (**Here the word "Threat" word is clearified yet Kayla purposly misrepresents this obvouse fact in order to incriminate Blockhus)** "*and that's why she did this"* (**here Blockhus is clearly implying Lense is retaliating against him)** "*I mean I threated to"* (**Again Blockhus here is refering to reporting Lense to HR and NOT her false text messages.)** "*but I would never do that because I do still care about her and because I threatened "*(**Again Blockhus here is refering to reporting Lense to HR and NOT her false text messages.)** "*that's why she did it I have witnesses I have voice recordings of myself messages with her saying that please don't talk and spread rumors about me and another flight attendant and things of that nature and I did mention to her I was going to go to HR Because she was putting things into United those messages between me and her were private on our private lines"* (**Here Blockhus was clearly referring to his voice messages NOT Lenses' fake text)** "*so I don't know how that works with United and there is a huge back story to that, um this is easily fixed, thank you very much."*

### III. Blockhus Retracted Initial Statement

Blockhus' supervisor Kayla Howell advise him that because "**corporate security was involved, United already decided your guilt**" and advised him that if he wanted to "**keep his job**", his only recourse would be to "**take responsibly**""**apology**" and submit a statement to that effect to United management. This explains why Blockhus submitted a statement to the entire management branch. Blockhus realizing this was nothing more than self incrimination, moments later retracted his statement, notified management to disregard any statements and he would send his "*official*" one shortly. However, nowhere in this statement did Blockhus "*admit*" to Ms. Lense's text messages as United attempt to claim with no evidence. Again as a result, United's assertions should be considered untruthful and bias.

### IV. Ms. Lense Threating Text & Email to Blockhus

What United nor the lower court seem to not wants to address are Ms. Lense's threating and disgusting text messages she sent to Mr. Blockhus while he was still an active employee at United. These were place into docket but ignored?. Ms. Lense admitted these came from her phone and email. It's concerning that neither United nor the lower court has addressed the threatening and inappropriate text messages sent by Ms. Lense to Mr. Blockhus during his tenure at United. The fact that these messages were submitted as evidence but seemingly ignored raises questions about the fairness and impartiality of the proceedings. Ignoring relevant evidence undermines the integrity of the legal process and may suggest bias against Mr. Blockhus. Mr. Blockhus was terminated based solely on a false accusation. This should raise several important issues regarding fairness, due process, and workplace policies. This discrepancy in how he was treated by United, seems unfair. This, in addition to Ms. Lense's being reported for (1) Retaliation, (2) Harassment, (3) Vandalism,(4) Posting disparaging statements about United on her Face Book, (5) Threating another employee on a Twitter post, (6) Receiving a two year protection order against her, (7) Violating that two year protection order. Moreover United's claim that Blockhus has failed to introduce any admissible evidence that Lense engaged in similar conduct is puzzling. United claims to simply accept that Ms. Lense said she "*didn't sent them*"*(See Appellant Brief Exhibit 16 pg. 20@4-12. pg. 21@13-15)* United's assertion that Mr. Blockhus did not turn over these text messages before his termination in absentia fails to address the fundamental issue at hand. Mr. Blockhus was not afforded due process or the opportunity to present evidence in his defense prior to his termination. Moreover, the burden of proof rests with United to substantiate their claims, yet they have provided no compelling evidence to support their decision.









Therefore, any failure on Mr. Blockhus's part to produce the text messages prior to his termination is irrelevant in the absence of a fair and impartial review of the evidence. This further underscores the need for a thorough reevaluation of the circumstances surrounding Mr. Blockhus's wrongful termination. Moreover, Mr. Blockhus has cooperated fully by surrendering his phone history, which revealed no connection to the text messages attributed to him by Ms. Lense, who herself admitted to having no recollection of why she received them. Furthermore, when United received the text messages that Ms. Lense sent to Mr. Blockhus, they did nothing. It is unclear what United's counsel hoped to gain with this comment other than proving once again that United has treated Mr. Blockhus differently than Ms. Lense. Consequently, Mr. Blockhus should be allowed to return to his employment were he has worked for over twent-four years. *(Appellee Brief pg.23)*

United cannot justify their bias and discrimination against Mr. Blockhus while failing to address Ms. Lense's admitted ownership of the phone number associated with the threating text messages Mr. Blockhus recieved. United has inexplicably refrained from taking any action against her. This glaring disparity in treatment only serves to further underscore the discriminatory nature of United's actions against Mr. Blockhus.

United claim that *"the district court properly granted United's motion for summary judgment"* is without merit base on the following error in  Judge Genttleman memorandum;

*(Judge Genttleman Memoranda)*

1. Mr. Blockhus first heard Ms. Lense's false rumors in November and December 2020, not in February 2021 as erroneously asserted by the court. United also copied this into their brief.*(mem pg2)*

2. It is evident from the proceedings that both Judge Gentleman and United showed bias by taking Ms. Lense's statements at face value while not extending the same courtesy to Mr. Blockhus. Instead, they made additional efforts to incriminate Mr. Blockhus without proper consideration of his side of the story*(mem pg2)*

3. Judge Gettleman referenced Mr. Blockhus's voice message he left to Ms. Lense without acknowledging the content nor that there was no threat contained within it. *(mem pg2)*

4. Once again, Judge Gettleman did not point out the fact that Mr. Blockhus's voice message was intended to notify Ms. Lense of her harassment and that if it continued she would be reported to the company.*(mem pg 2,3)*

5. His assertion that Ms. Lense "*felt shaken*" was purely speculative. Additionally, Ms. Lense's initial complaint made <u>no reference to text messages</u>, and no screenshots were submitted by Ms. Lense until after she opened her complaint. United also copied this into their brief.*(mem pg 2,3)*

6. Judge Genttleman Posted and referenced text messages as fact, claiming they were from Mr. Blockhus without substantiation or verification. This raises significant concerns about the reliability and integrity of the evidence presented in the proceedings. *(mem pg 2,3)*

7. Judge Genttleman nor United have been able to reference a single instance where Mr. Blockhus "*admitted*" to Ms. Lense's text messages. Stating that "*he now denies he sent them*" is a miscarriage of justice and appears biased against Mr. Blockhus. Judge Genttleman made his claim without anything to substantiate it.*(mem pg 5)*

8. Judge Gettleman made no reference to Mr. Blockhus admitting to sending threatening text messages in his voice message to Ms. Howell. This was evidently due to the fact there were none. *(mem pg 5,6)*

9. Judge Genttleman made the declaration, "*Two days later he wrote to Biero withdrawing his case against Lense effective immediately*" without following up as to why. Both Mr. Blockhus and Mindy Richard were force to retract their complaint against Ms. Lense due to the intimidation and fear cause by Ms. Lense's retaliation against Mr. Blockhus. Mindy Richard testified " ***Because then knowing that Derek was fired, then I was worried that I would get fired so I retracted mine. Yup, I remember this.***" *(mem pg 5,6)(Appellant Brieif Exhibit 21 pg.27@1-8)*

10. Judge Gettleman made no reference to Mr. Blockhus admitting to sending threatening text messages in his retracked first reaction statement. This was evidently due to the fact there were none *(mem pg.6)*

11. Judge Gettleman's statement, "*He never sent a "final statement*" unduly suggesting that Mr. Blockhus earlier statements, he submitted in error, should to be taken as his official statement.*(mem pg.6)*

12. Judge Genttleman's claim that "*He(Blockhus) told the EAP he suffered from alcoholism,*" was purely speculative as there is no documented evidence of this statement was made to the EAP. United also copied this into their brief.*(mem pg.7,8)*

13. Judge Genttleman omitted the fact that Mr. Blockhus suggested to Mrs. Richard to withdraw her complaint against Ms. Lense was only after Mrs. Richard made it known to Mr. Blockhus of her fear that she would be retaliated against as he was and she would lose her job.*(mem pg.8)(Appellant Brieif Exhibit 21 pg.27@1-8)*

14. Judge Genttleman omitted the fact United did not send their directive to "*not contact Ms. Lense*" until Feb. 12, 2021 to Mr. Blockhus were he was already a patient in Lake View Medical. *(mem pg.8)*

15. Judge Genttleman omitted the fact that Ms. Lense called Mr. Blockhus attorney at the time back and spokee to him for over 20 minutes agreeing to withdraw her case against Mr. Blockhus and made it known that "*if she could she would call him back.*"*(mem pg.8)*

16. Bringing up Mr. Blockhus's ex-wife in the context of the legal proceedings, especially if they have been separated for many years, seems unrelated and potentially inappropriate. Mr. Blockhus has been separated from his estranged ex-wife for many years prior to November 2019, when he and Ms. Lense started dating. *(mem pg.8)*

17. He omitted the fact that Mr. Blockhus was already on company approved protected FMLA leave and that United contacting him and requiring him to attend a meeting is a direct violation of his FMLA rights.*(mem pg.8)*

18. He brings up that Mr. Blockhus "*attempt to contacted*" Ms. Lense after receiving the LOl as if this one act can justify United's unlawful termination of Mr. Blockhus.*(mem pg.8)*

19. He stating that "*Neither Howell nor Hester knew that plaintiff would be medically unavailable to attend a Teamsmeeting.*" was factually inaccurate as referenced in both United's internal communications as well as their admissions in defendant's responses and objections to plaintiff's first requests for admissions to defendant; *(mem pg.8,9)(See Appellant Ex.61 pg.4#12, pg.5#16,17, pg.6 #28 pg.7 #30)also (See Ex.10,Ex.38,Ex.44,Ex.52)*

20. His statement that "*Plaintiff was not checking his United email while in rehab*" seems to

overlook a crucial detail: Mr. Blockhus's lacked access to his emails while in rehab.*(mem pg.9)*

21. He agreed at face value with United's feeling that it could not wait for nothing due to their need to end this case quickly due to its "*serious nature*" Ms. Lense herself testified she couldn't even remember what they (the text messages) were about or why she would have recieved them. *(mem pg.9)*

22. He made no reference to the fact United agreed to pause the Lense case until Mr. Blockhus returned from receiving treatment for his very serious disability while on approved FMLA. *(mem pg.9)*

23. He acceptance McCormick "*statement of findings*" that he concluded that Mr. Blockhus "*had sent threating and harassing communications via text and voicemail to Lense*" was without merit. McCormick nor United had substantiated how they came up with their "conclusion" yet judge Gettleman accepted it. *(mem pg.9)*

24. He ignored the fact that United IAD based management, Monique Williams agreed to "*recalculate the 30 day contractual deadline if documentation is submitted to substantiate Mr. Blockhus medical inability to attend a meeting*" The documents were submitted on time. *(mem pg.9)( See Appellant Brief Ex.10)*

25. He makes no mention to the fact that Hester terminated Mr. Blockhus in absentia as at this time he was a patient at Lake View Medical in Jacksonville, Fl. with no contact with the outside world while on approved FMLA. *(mem pg.9)*

26. Mr. Blockhus made the decision to leave his arbitration due to overwhelming bias displayed by the arbitrator, that he felt raised serious concerns about the fairness and impartiality of the arbitration process. In fact in between sessions the arbitrator was seen having inappropriate and personal conversations with United management about fishing trips, kids, and mutual friends. (mem pg.9)

27. His statement, "*After plaintiff completed rehab,*" was inaccurate and misleading Blockhus <u>never</u> completed rehab and his statement suggesting that United never interfered in Mr. Blockhus's treatment or his FMLA status, despite Mr. Blockhus being contacted and later terminated three weeks into his scheduled eight-week treatment. *(mem pg.9)*

Judge Gettleman concluded that basically all of United's assertions about Mr. Blockhus were true and accurate without requiring any verification and accepted them at face value. This raises serious concerns about the fairness and impartiality of the judicial process. Judge Genttleman was expected to evaluate evidence objectively and critically, considering the credibility and reliability of all statements and claims made by parties involved in a case. United's claim that Mr. Blockhus "*admitted*" to sending the text messages submitted by Ms. Lense without providing evidence to support this claim, Judge Gettleman accepted this assertion without question. This suggests a failure to uphold standards of fairness and due process. In fact Judge Gettleman made no reference to the agreement between United and Mr. Blockhus to pause the Lense case until Mr. Blockhus returned from treatment while on FMLA, nor mentioned the threatening text messages Ms. Lense sent to Mr. Blockhus while he still remains employed. Judge Gettleman's Memorandum appears to favor the defendant and does not adequately consider evidence or arguments presented by the nonmovant.

**II.Hester's Termination Letter** *(Frank Hester Termination letter)*

In response to Hester's assertion in his erroneous and purposely deceptive termination letter, that Mr. Blockhus sent text messages to flight attendant Katherine Lense, it is important to note that no substantial proof has been offered to support this claim.

1. Without concrete evidence verifying their origin and authenticity, it is unjust and unfounded to attribute text messages to Mr. Blockhus. In addition to the circumstantial evidence, Blockhus also submitted his phone history to United counsel. Between Oct 2020-Feb 2021 Ms. Lense contacted Blockhus over <u>500 times</u>.

2. Hester's insistence on portraying Mr. Blockhus's voice message to Ms. Lense requesting her to stop harassing him and Mindy Richard or they will report her to the company as inappropriate appears to be driven by ulterior motives rather than genuine concerns about its content. The company's efforts to depict the message as such seem to stem from a desire to bolster their unfounded case against Mr. Blockhus by any means necessary. It is evident that United is attempting to use any available means to discredit Mr. Blockhus and portray him in a negative light, even if it means misrepresenting the nature of the voice message.

3. Hester's failure to conduct a thorough investigation, admitting to reviewing only the evidence pertaining to the complaint made by flight attendant Katherine Lense, raises serious concerns about the fairness and impartiality of the investigation process. This narrow focus suggests a lack of diligence in exploring all relevant factors and evidence that could impact their findings. Hester admittedly never even spoke to Ms. Lense.

4. The only visible phone number on Ms. Lense's text message did not belong to Mr. Blockhus and United made no effort to identify it before wrongfully terminating him. This raises significant questions about the thoroughness and fairness and lack of diligence of the investigation conducted by the company  suggest potentially a rush to judgment by United Airlines.

5. The voicemail left on Ms. Lense's phone was primarily intended to address a potential conflict and suggest resolving the matter through communication rather than involving HR. The statement, "*Just call me, let's get this over with because it's going to get ugly,*" was nothing more than to be intended as a plea to address the issue directly to avoid escalation to involve the company. United selectively chose this statement and gave it their own interpretation to purposely incriminate Mr. Blockhus. Manipulating evidence or selectively presenting information to paint an employee in a negative light undermines the integrity of the investigation process raises serious concerns about the company's commitment to fairness and transparency.

6. There was no evidence Mr. Blockhus was responsible for sending those text and United made no challenge to Ms. Lense to verify the accuracy of her claims made against him.

7. Mr. Blockhus attempted to provided a written statement before the Feb 8th Lol meeting that was wrongly advised by his supervisor, Ms. Howell to Corporate. Mr. Blockhus, still shocked and confused in the matter attempted acknowledging that there might have been a verbal exchange between him and Ms. Lense, but he denies engaging in any sexually harassing behavior or texting. Under Mr. Blockhus's condition he would have said anything to make this absolutely absurd situation that he was unfortunate enough to find himself in to just go away. It should be understandable that he might feel pressured to take responsibility, especially if his job is on the line. Anxiety can cloud judgment and make it difficult to think clearly.

8. The note left on Ms. Lense's car windshield, indicated his desperate plea for Ms. Lense to retract her report due to the severe consequences it could have on his employment. This suggests that Mr. Blockhus was concerned about the potential impact of the allegations on his job security, rather than attempting to harass or intimidate Ms. Lense. Mr. Blockhus was well aware as to why Ms. Lense was creating her false allegations against him and was adamant that she did not need to take such an extreme measure against him as he knows that her false accusations are very serious and were a direct result of his voice message to her indicating he and fellow fight attendant Mindy Richard would report her to the company if she did not stop harassing them.

9. The fact that United Airlines included allegations regarding attempted contact with Ms. Lense in their termination letter without providing a mandate to refrain from such contact suggests a lack of consistency in the company's approach and calls into question the integrity of their investigation and the fairness of their actions and the need to bolster their case.

Failure to provide clear guidance on contact restrictions until after the investigatory period had already begun undermines the integrity of the process

10. Mr. Blockhus adamantly denies sending any threatening text messages, and there is no evidence linking him to such communication. The claim that Mr. Blockhus admitted to threatening Ms. Lense in a voicemail to Supervisor Howell is fabricated and misleading. Those who are making this assertion should be thoroughly scrutinized.

11. In light of these discrepancies and the lack of substantial evidence supporting the Company's claims, it is clear that the investigation conducted was flawed and biased. The Company's attempt to incriminate Mr. Blockhus based on unsubstantiated allegations, coupled with Ms. Howell's misrepresentation of statements, undermines the fairness and integrity of the investigation process. United was required to adhere to FMLA regulations, which protect Mr. Blockhus's rights to take medical leave without fear of termination. Hester testified he based his decision solely on information provided by Ms. Lense without considering other evidence or conducting an impartial investigation, this suggests bias and unfair treatment in the termination process. Mr. Blockhus's termination was based on incomplete or biased information. Hester represented United Airlines when he knowingly participated in violating Mr. Blockhus's FMLA rights by contacting him several times requiring him to attend his meeting and ultimitly terminating him while he was on medical leave dispite the directive to pause until Mr. Blockhus returned from FMLA. This raises serious concerns about United Airlines' adherence to employment laws and its commitment to employee rights and protections.

## SUMMARY OF ARGUMENT

United's reliance on unverified repetitive claims in order to terminate Mr. Blockhus does indeed raise serious concerns about the fairness and legality of their actions. United failing to provide evidence to support their decision, could suggest alternative motives for the termination. The district court erred by concluding that there was evidence that Mr. Blockhus "*admitted guilt*" as United desperately and repeatedly claim with no evidence. Nothing has been put forth by United to support this claim, and it is puzzling why Judge Genttleman simply accepted a claim without evidence, especially when it affects someone's livelihood. Mr. Blockhus deserves clarity as to why Judge Gettelman broke protocol for the United corporation. As the district court seems to not require evidence, let it be known that Supervisor Hester "*admitted guilt*" that United terminated Mr. Blockhus pretextually and discriminated against him. (This statement highlights Mr. Blockhus pointing out Judge Gettleman's puzzling lax approach to aid United's request for summary judgment.)

It clearly appears United brief is almost exclusively relying on case references and repetitive statements rather than substance in their arguments. Without presenting substantive evidence to support them undermines the credibility of United's argument. While case law can provide important legal context and precedent, it must be applied in conjunction with concrete evidence relevant to the specific case at hand or it is useless to the argument. Failure to present such evidence weakens the overall strength of United's argument and may call into question the validity of their claims. United repeating the same claims over and over again, apparently believing if the courts hear them enough, they would believe them as fact. Repeatedly making the same claims without providing new evidence or addressing counterarguments should weaken United's position in the eyes of the court. Courts typically expect parties to present well-supported arguments backed by relevant evidence and legal reasoning. Simply constantly reiterating assertions without substantiation should not sufficient to persuade the court of the validity of United's position.

## I.  STANDARD OF REVIEW

It is unclear why Judge Gettleman's Court failed to review the evidence in the light most favorable to the nonmoving party and additionally omitted important factual evidence that would have precluded summary judgment. United's case was purely speculative and lacked substantive evidence. Evidently, the standard of "beyond a reasonable doubt" was not applied in this case.

## II.  THE DISTRICT COURT DID NOT PROPERLY ANALYZED BLOCKHUS'S AGE AND DISABILITY DISCRIMINATION CLAIMS

### A.  Applicable Legal Standard

The central question in United's argument is, what evidence did they present to substantiate their biased claim that Mr. Blockhus sent the text messages to Ms. Lense? United has failed to identify the origin of the messages or even the year they were sent. Additionally, their repetitive claims that "*he admitted guilt*" remains unsupported. Based on this lack of convincing evidence, a reasonable juror could conclude that United discriminated against Mr. Blockhus and that his termination was pretextual.

### B.  Blockhus Can Meet the *McDonnell Douglas* Test

Blockhus's claims meet the prima facie standard set forth in McDonnell Douglas v. Green. To establish his discrimination claims under McDonnell Douglas, Blockhus must demonstrate: (1) he is a member of a protected class; (2) he met the employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated differently than other employees outside his protected class (McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

All disputed material facts must be viewed in the light most favorable to Mr. Blockhus. Here, based on the facts in the record, Blockhus has established a prima facie case for age and disability discrimination, and United has addmitted to interference with his use of entitled leave under the FMLA. United has failed to show that there are no genuine issues of material fact such that it is entitled to summary judgment. Mr. Blockhus and Ms. Lense shared the same supervisor and performance standards, however it is their differences that was significate in Mr. Blockhus termination. **1)**Mr. Blockhus was 53 at the time, Ms. Lense was 30. **2)**Mr. Blockhus had 24 years with United Ms. Lense had 6 years. **3)** Mr. Blockhus held top paid and was making approximately $68/hour while Ms. Lense was making less then half that. The differences in age, tenure, and pay between Mr. Blockhus and Ms. Lense raise concerns about potential discrimination or disparate treatment in the termination process. If Mr. Blockhus was held to the same performance standards as Ms. Lense but faced harsher consequences despite his longer tenure and higher pay, it could suggest unfair treatment based on age or other factors. Such disparities should be thoroughly investigated to ensure fairness and compliance with antidiscrimination laws. Kim Phillips was involved in both Ms. Lense's complaint as well as Mr. Blockhus's camplint. These false and inaccurate statements made by United counsel are starting to become quite disconcerting. Kim Philips was the investigator in both Ms. Lense's case and Mr. Blockhus retaliation case. The fact United would make such a false and misleading statements further supports Mr. Blockhus claim of unlawful termination. The discrepancy in United's statements regarding the investigator involved in both Ms. Lense's case and Mr. Blockhus's retaliation case raises questions about the accuracy and credibility of United's claims. United continues to provided false or misleading information about crucial aspect of the investigation process, that undermine their defense and support Mr. Blockhus's claim of unlawful termination. This discrepancy should be thoroughly scrutinized to ensure transparency and fairness in the legal proceedings. On or about February 24, 2021, Blockhus filed a retaliation claim with United against Lense. The investigator assigned to investigate Blockhus' retaliation claim was Kim Phillips, the same investigator that declared Blockhus guilty with no evidence of harassing Lense. This was an obvious conflict of interest to the Union and even to local United management. *(See Appellant Brief Exhibit 39 and 46)*

## 2.   **United cannot overcome their nondiscriminatory reasons for terminating Blockhus or demonstrate that itwas not pretextual.**

United's inability to produce evidence substantiating their claims against Mr. Blockhus is deeply concerning. Despite their repeated assertions that Mr. Blockhus "*admitted guilt*," United has failed to provide any concrete evidence to support this claim. Additionally, they have not identified the origin of the text messages allegedly sent by Mr. Blockhus, further undermining their allegations. This lack of evidence raises significant doubts about the validity of United's case and suggests that Mr. Blockhus's termination was both unjustified and conducted without a fair and thorough

investigation combined with United's admission to FMLA violations, clearly indicates that Mr. Blockhus was not only wrongfully terminated but that this termination was conducted with bias and discrimination.

## CONCLUSION

Judge Gettleman's Memorandum cites the legal principle that the movant bears the burden and that all facts should be viewed in the light most favorable to the nonmovant, but the memorandum appears to focus solely on supporting the defendant and viewing facts favorably to the movant, this suggests a departure from the principles of fairness and impartiality. United claimed that Mr. Blockhus "*admitted*" to sending the text messages submitted by Ms. Lense without providing evidence to support this claim, and Judge Gettleman accepted this assertion without question, this suggests a failure to uphold standards of fairness and due process. Mr. Blockhus denied sending the text messages and provided supporting evidence to contradict United's claims. It's crucial for this evidence to be considered and weighed against United's assertions. Aditionally, Judge Gettleman's handling of this case overlooked important agreements, evidence, and legal protections. Based on the above evidence, the awarding of Summary Judgement was shocking and not proper. Ignoring important agreements and evidence that could impact the outcome of the case may indicate bias or an incomplete consideration of the facts. Judge Genttleman had a responsibility to evaluate all relevant evidence and arguments presented by both parties to ensure a fair and just resolution.

For the following reasons, by law, Mr. Blockhus's termination was unlawful and summary judgement was not proper. United has failed to substantiate their claims that Mr. Blockhus admitted guilt, nor have they identified the origins of Ms. Lense's text messages. This lack of evidence undermines their allegations and calls into question the validity of their actions. Given these significant shortcomings, United must reinstate Mr. Blockhus to his former position as a flight attendant. **1)** United failed to produce were exactly did Mr. Blockhus "admit guilt" **2)** United faild to identify the phone number on Ms. Lense's text Message. **3)**United faild to identify the year of Ms. Lense's text messages. **4)** United failed to discipline Ms. Lense for threating text messages to Blockhus.**5)** United admittedly interfered  with Blockhus's FMLA. **6)** There was a directive to pause the Lanse case until Blockhus returned from FMLA. **7)** Lense opened her case minute after Blockhu's voice messsage on Jan 25, 2021. **8)** Lense testified she "*would have never reported Blockhus for anything until Jan 25, 2021"* **9)** Lense testified, her and Blockhus were always on "*friendly terms*" until January 2021.

United's counsel can use all the fancy legal jargon possible, but without supporting evidence, it all means nothing. Mr. Blockhus fervently desires nothing more than to resume his career at United, which was unjustly stripped from him when Ms. Lense was notified that Mr. Blockhus and Mindy Richard would report her to the company if she did not cease her harassment. This perplexing fact, which both United and the distrct court have failed to consider, underscores the injustice of the situation. If United cannot reference where Mr. Blockhus "*admitted*" sending Ms. Lense her text messages or cannot identify the origin of Ms. Lense's text messages, then Mr. Blockhus must be reinstated to his former position at United.

Mr. Blockhus primary desire is to resume the career to which he has devoted over twenty years of his life, demonstrating unwavering commitment and dedication. His passion for his profession is evident, and he is eager to overcome the obstacles that have temporarily sidelined him. With determination and perseverance, Mr. Blockhus remains focused on reclaiming his place in the United family.

Based on the foregoing, this Court should not affirm the district court's decision granting summary judgment in United's favor, as it was evident that there were numerous disputed facts as well as clear injustices against Mr. Blockhus. Mr. Blockhus is not out for enrichment, only justice and to return to his career with United. Despite the formidable resources at United's disposal, every individual, regardless of their standing, deserves fairness and justice under the law. Mr. Blockhus's determination to challenge United's actions exemplifies the principle that no entity, no matter how powerful, is above accountability and scrutiny.

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(B)(i) and CIRCUIT RULE 32(c)

I hereby certify that this reply brief complies with the type-volume limit of Federal Rules of Appellate Procedure 28(a) (10) and 32(g)(1), along with Circuit Rule 32(c), because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 7,000 words as counted by the word-processing software

I further certify that this document complies with the typeface requirements of Federal Rule

of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), along with Circuit Rule 32(b), because it has been prepared using Adobe Pro in 14-point font.

By: /s/ Derek Blockhus Pro se
Derek Blockhus

<u>**CERTIFICATE OF SERVICE**</u>

The foregoing Reply Brief of Plaintiff-Appellant has been electronically filed on May 21, 2024. I certify that I have caused the Brief of Plaintiff-Appellant to be served on the Defendant-Appellee via the CM/ECF system on May 21, 2024.

By: <u>/s/ Derek Blockhus</u>
Derek Blockhus, Pro se