| | |
|---|---|
| **DEREK BLOCKHUS** | ) Case No. 24-1043 |
| **Plaintiff, Appellant** | ) |
| | ) |
| v. | ) Judge Robert W. Gettleman |
| | ) |
| **UNITED AIRLINES, INC.,** | ) |
| | ) |
| | ) Magistrate Jeffrey I. Cummings |
| | ) |
| **Defendant, Appellee** | ) |

Jill S. Vorobiev, Esq. Reed Smith LLP

10 S. Wacker Dr., Suite 4000

Chicago, IL 60606

Tel: (312) 207-1000

jvorobiev@reedsmith.com

# MOTION TO REQUEST TO SETTLE OUT OF COURT

**Re: REQUEST TO SETTLE; Case No. 24-1043**

Dear Jill,

I hope this letter finds you well. I am writing to propose that we settle regarding the ongoing legal dispute between Derek Blockhus v. United Airlines. My intention with this proposal is to resolve this matter amicably and avoid the need for further litigation, which can be costly and time-consuming for both parties.

As you are aware, this dispute arose due to Ms. Lense's immediate reaction to being informed by Mr. Blockhus that he, along with Mindy Richard would report her to the company for harassment. After careful consideration and review of the facts, I believe that a settlement would be in the best interest for all involved.

I. **Reasons to Settle Case No. 24-1043**

**Based on the evidence now in record, a jury will not find United's case credible based on the following reasons;**

1. All circumstantial evidence clearly indicated that Mr. Blockhus did not, nor has ever threatened Ms. Lense. In fact it suggest the opposite, that they were in a close and intimate, supporting relationship until Mr. Blockhus ended things in early December 2020. and

2. That based on the two voice messaged left to Ms. Lense by Mr. Blockhus, it was clear he simply wanted nothing more then to come to an cordially conclusion to Ms. Lense's harassment or she would be reported to the company. and

3. That Ms. Lense opening her case just minutes after being informed by Mr. Blockhus that, she herself, would be reported for harassment. and

4. That it was not until after Ms. Lense opened her case that she then later added unidentified, months old text messages that were not connected to Mr. Blockhus phone nor even exhibited a year. Ms. Lense would not be found credible. and

5. That the only visible phone number on Ms. Lenses text does not belong to Mr. Blockhus and it will be examined why United never identified it before terminating Mr. Blockhus in the most bias and cruel manor. and

6. That Mr. Blockhus not only surrendered his phone history but his SIM card as well, were there was no connection to Ms. Lense's text messages she claimed were from him. and

7. That Ms. Lense, despite her claims, contacted Mr. Blockhus, based on his phone history, a total of over <u>500</u> times after the fact, from Oct 2020 to February 2021. and

8. That after watching video evidence from Mr. Blockhus home movies and car dash camera and listening to their conversations, that were from immediately following the date of the alleged text messages were supposedly sent until early December 2020. and

9. That after listening to the recorded phone conversations with Ms. Lense that were from immediately following the date of the alleged text messages were supposedly sent, through early December 2020 particularly about planning romantic trips to Cancun Mexico together, Ms. Lense will not be found credible. and

10. That after reading the threating text and email messages Ms. Lense sent to Mr. Blockhus starting in late November 2020, <u>United did</u>

nothing and she remains employed, further supporting that United's discrimination against Mr. Blockhus was factual. and

11. That after seeing security footage evidence of Ms. Lense slashing the tires of the vehicle belonging to Mr. Blockhus, United did nothing and she remains employed, further supporting that United's discrimination against Mr. Blockhus was factual. and

12. That after being made aware the Mr. Blockhus was force to request and was awarded a <u>two year protection order</u> against Ms. Lense for harassment, United did nothing and she remains employed, further supporting that United's discrimination against Mr. Blockhus was factual. and

13. That after seeing Ms. Lenses' disparaging remarks about United on her Face Book that even included a third party comment suggesting she take it down, United did nothing and she remains employed, further supporting that United's discrimination against Mr. Blockhus was factual. and

14. That after seeing Ms. Lenses' threats to a fellow employee on her Twitter page United did nothing and she remains employed, further supporting that United's discrimination against Mr. Blockhus was factual. and

15. That after being informed that United discouraged Mr. Blockhus from his entitled leave under the FMLA by illegally limiting his time to file further supporting that United's discrimination against Mr. Blockhus was factual and United interfered in his FMLA rights . and

16. That United <u>admitted</u> to interfering with Mr. Blockhus entitled leave under the FMLA when they continually contacted him and required him to attend their meeting or be "disciplined up to termination" further supports United's unlawful interference with Mr. Blockhus's entitled leave under the FMLA . and

17. That after seeing evidence that United "agreed" to postpone the Lense case until Mr. Blockhus returned from his entitled leave under the FMLA, but then simply terminated him anyway without cause in the most bias, cruel manor by a junior supervisor who has since been placed back as a flight attendant and is no longer management . and

18. That the callous means on how United terminated Mr. Blockhus just three weeks into his eight week treatment for a very serious disability, sight unseen in absentia. Then stranding him with no insurance and no means to fly back to his home state of Virginia.

19. That after seeing that United was and is incapable to specify were exactly they claim Mr. Blockhus "*admitted*" guilt the jury will not find United's case not credible. and

20. That after seeing recorded video of Ms. Lense herself claiming United Airline practices age discrimination against their employees. and

21. That after seeing clear evidence from Mr. Blockhus' supervisor's private Facebook account were she is clearly an activist and bias, specifically against people of Mr. Blockhus' demographic, posting the claim *"You have stolen more than we could ever loot"*. Additionally accusing her *"non black"* co-workers and past class mates as *"racist"*. https://www.facebook.com/kayhow and

22. That after hearing Ms. Lenses own sworn testimony stating the following;

**Based on Ms. Lenses' own testimony her only motivation for her complaint was nothing more than to protect her employment with United by any means.**

*"The purpose of my complaint filed on January 25th was to protect myself of any false accusations and threats about my employment with United"*

*"Before January 25th, no, I did not intended to report him to United for any kind of harassment or anything"*

*"I didn't think anything of it until he brought the Company into it. I don't want him to lose his job."*

*"The voicemail on January 25, yes, it was threatening about my job and I was getting ready to return to work from furlough. I had a lot of stuff already*

*building up and so I just -- I felt threatened and I made a decision to report it, yes"*

*"I didn't want anybody in trouble, I was simply trying to protect my job"*

*"I was simply trying to protect my job"*

*"Make it clear – I don't feel threatened for my life or anything like that but <u>because my job was mentioned</u> I am simply just protecting myself. Personally I know the report that is out there that is purposely doing that."*

*"My biggest issue was that he threatened my job"*

*"I didn't think anything of it until he brought the company into it"*

*"I felt like I wanted to protect myself, went to company and told the company I was being accused of a hostile work environment . Previous message left on my phone also threatening my job that I didn't think I could go to the company because I wasn't in the company at that time "*

**That Ms. Lense maintains, she and Mr. Blockhus were <u>always</u> on friendly terms**

*"We were friends on Oct 11, 2020"*

*"We remained friend until January 2021"*

*"We were still communicating as friends, we were still friends"*

*"Yes I agree Blockhus and I were on friendly terms on Oct 13, 2020"*

*"We communicated as friends in November 2020"*

*"As of Dec 14, 2020 a friendly relationship with Blockhus"*

*"he was very, like, supportive for me, like with me, sorry to me"*

" Yes I wanted to go to Cancun with him after Oct 11, 2020"

"He tried, like, helping me looking for jobs"

"He tried to, like I mentioned before, he tried to help, like do something nice for me, to take me on a trip"

**Ms. Lense testified she was never asked to substantiate her accusations.**

"I was never asked to provide a comprehensive list of a call log had made or received over any period of time"

"I never provided United the complete history of my cell phone"

**Ms. Lense admitted that she in fact would contact (harass) Blockhus regarding her "suspicions" about Mr. Blockhus relationship with Mindy Richard and told it with others.**

"I had conversations with him and in the heat of the moment, I could have said, your are spending to much time with her (Mindy)"

"Just that he needed to be careful because he's been hanging out so much with her (Mindy) lately and he needs to watch out"

"No. I had the conversation with him on the phone back in Dec 2020"

"Yes I told Mr. Blockhus that I thought he was having some kind of romantic relationship with Ms. Richards"

"I suspected, yes, that's why I told him that he needed to be careful"

"Probably in one of our phone conversations I said they hanging out often."

"I said I think you've been hanging out way too often with this person"

*"I only had a conversation with Derek and just girlfriends outside of work that I shared that, that I thought they might -- I was suspecting stuff."*

*"I spoke with him about it, he mentioned a friend of his, and I said he'd been spending a lot of time with them."*

**That Ms. Lense could not remember if her and Blockhus were intimate after the dates of the text messages she submitted in her case against Blockhus.**

*"I don't remember"*

*"I really don't remember if it was before or after"*

*"I don't remember if it was after -- like if we were intimate."*

*"I do not remember if we were intimate at that time."*

*"Yes we had a trip planed to Cancun"*

**That Lense could not come up with a reason nor could remember any argument that she would receive threating text from Blockhus.**

*"I can't remember for sure, but I do have like messages from him, but I don't remember exactly what it was all about."*

*"I don't remember exact the argument, what it led to"*

*"There's nothing prior to them"*

*"No, I do not recall what led up to these messages."*

Ms. Lense recieved a two year protection order awarded against her for harassing Blockhus and vandalizing his property that she later violated . When asked if she had ever contacted Blockhus since the protection order her reply was;

**Question (Counsel)** *"Have you had any contact with Mr. Blockhus since the protection order was entered telling you not to?"*

**Answer (Lense)** *"I'm sorry, but I really don't feel comfortable answering, talking about this"*

That after witness Mindy Richard testimony were she stated the following;

*"Derek wanted to address this issue with Ms. Lense privately, without going to HR"*

*"Derek told her on January 25th, that he & I would both be filing claims against her for spreading false, damaging, rumors amongst our workgroup"*.

*"Ms. Lense then proceeded to file a claim against Derek in retaliation"*

*"After seeing the extremes Ms. Lense took, in creating even more false accusations against Derek. I felt intimidated and in fear of her retaliating against me also, so, I withdrew my claim against Ms. Lense."*

*"Derek was trying to protect my husband and I from embarrassing, false rumors, and in the end is at risk of losing his job."*

## II. Conclusion

Reaching a settlement in this case will significantly relieve the courts by reducing the burden on judicial resources, saving time and expense for all parties involved, and promoting a more efficient resolution of the dispute. A settlement would prevent prolonged litigation, freeing up court schedules for other cases and ensuring that justice can be delivered more swiftly across the board. Additionally, settlements often allow for more flexible and mutually agreeable solutions, which can lead to a more satisfactory outcome for both parties. This approach not only serves the interests of the involved parties but also contributes to the overall efficiency and effectiveness of the judicial system.

As it is clear base on the evidence now in record that United made little to no effort to investigate Ms. Lense's claim and made their decision to terminate Mr. Blockhus solely base on bias and discrimination of his age and tenure and that Ms. Lense was in fact the harasser. Please consider this settlement offer and provide your response within 14 days or prior to oral argument. I am hopeful that we can come to a mutual agreement and settle this matter without further legal action. If you are open to discussing this proposal further, I am available at your earliest convenience to have a meeting or a phone call to discuss any adjustments or additional terms that may be necessary.

Thank you for your attention to this matter. I look forward to your positive response and hope that we can resolve this dispute in an amicable manner.

Yours sincerely,

*Derek Blockhus*

Derek Blockhus Pro se

14689 Lee Hwy #257

Gainesville, Va. 20156

Derek7768@gmail.com

(703)606-1644